UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MATTHEW ROPPOLO, on behalf of himself and others similarly situated, § § § | | |
| Plaintiff § | | |
| § | | Civil Action No. |
| v. § | | 2:19-cv-262 |
| § | | |
| LANNETTE LINTHICUM, in her official capacity as the medical director of the TEXAS DEPARTMENT OF CRIMINAL JUSTICE, and BEN RAIMER, CYNTHIA JUMPER, RODNEY BURROW, F. PARKER HUDSON III, ERIN WYRICK, JOHN BURRUSS, PRESTON JOHNSON, JR., and KELLY GARCIA, in their official capacities as the members of the CORRECTIONAL MANAGED HEALTH CARE COMMITTEE, and OWEN MURRAY, in his official capacity as the director of the UNIVERSITY OF TEXAS MEDICAL BRANCH CORRECTIONAL MANAGED CARE program § § § § § § § § § § § § § § § § § | | |
| Defendants § | | |

**PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Matthew Roppolo brings this 42 U.S.C. § 1983 and Americans with Disabilities Act/Rehabilitation Act class action suit for injunctive and declaratory relief against the members of the Correctional Managed Health Care Committee, the Texas Department of Criminal Justice, and the University of Texas Medical Branch to stop Defendants from intentionally treating patients with Hepatitis C incorrectly, as Defendants callously deny Plaintiff and thousands of others similarly situated to him correct medical treatment while they are imprisoned by the State of Texas.

I.     **Parties**

A.  *Plaintiffs*

1. Matthew Roppolo is a prisoner of the Texas Department of Criminal Justice. He is imprisoned at the TDCJ McConnell Unit located in Bee County, Texas, and is infected with the Hepatitis C virus.

2. Mr. Roppolo is being intentionally mistreated by TDCJ and the medical provider for the McConnell Unit, the University of Texas Medical Branch, because of policies promulgated by the Correctional Managed Healthcare Committee.

B.  *Defendants*

3. Defendants are members of the Correctional Managed Healthcare Committee (CMHCC), and the medical director of the University of Texas Medical Branch, which provides medical treatment to inmates in the Texas Department of Criminal Justice, including Mr. Roppolo. CMHCC makes policies governing the medical treatment of prisoners in TDCJ custody. Each of the below individual Defendants are sued in their official capacities for injunctive and declaratory relief only.

4. Lannette Linthicum is the director of TDCJ's Health Services Division. As such, she is also a voting member of CMHCC. She is a medical doctor. She is sued in both official capacities – as the TDCJ medical director and as a member of the CMHCC. She resides in Huntsville, Texas, and may be served with process at 2 Financial Plaza, Huntsville, TX 77340. *Service is requested*.

5. Owen Murray is the director of the University of Texas Medical Branch's Correctional Managed Care division, which provides medical treatment to TDCJ inmates in the eastern half of the state, including at the McConnell Unit where Mr. Roppolo resides.

He is a medical doctor. He resides in Galveston, Texas, and may be served with process at 301 University Blvd., Galveston, TX 77555. *Service is requested.*

6. Ben Raimer is the representative of UTMB on the CMHCC. He is a medical doctor. He resides in Galveston, Texas, and may be served with process at 301 University Blvd., Galveston, TX 77555. *Service is requested.*

7. Cynthia Jumper is the representative of Texas Tech University Health Science Center on the CMHCC. She is a medical doctor. She resides in Lubbock, Texas, and may be served with process at 602 Indiana Ave., Lubbock, TX 79415. *Service is requested.*

8. Rodney Burrow is a member of the CMHCC. He is a medical doctor. He resides in Mt. Pleasant, Texas, and may be served with process at 1610 S. Jefferson Ave., Mt. Pleasant, TX 75455. *Service is requested.*

9. F. Parker Hudson, III is a member of the CMHCC. He is a medical doctor. He resides in Austin, Texas, and may be served with process at 601 E. 15th St., Austin, TX 78701. *Service is requested.*

10. Erin Wyrick is a member of the CMHCC. She is a licensed professional counselor. She resides in Amarillo, Texas, and may be served with process at 9300 S. Georgia St., Amarillo, TX 79118. *Service is requested.*

11. John Burruss is a member of the CMHCC. He is a psychiatrist. He resides in Dallas, Texas, and may be served with process at 1345 River Bend Dr., Suite 200, Dallas, TX 75247. *Service is requested.*

12. Preston Johnson, Jr. is a member of the CMHCC. He resides in Sugar Land, Texas, and may be served with process at 1806 Avenue J, Huntsville, TX 77340. *Service is requested.*

13. Kelly Garcia is a member of the CMHCC. She resides in Austin, Texas, and may be served with process at 4900 N. Lamar Blvd., Austin, TX 78751. *Service is requested.*

14. The Texas Department of Criminal Justice is the state prison system, an agency of the State of Texas. At all relevant times, it operated the McConnell Unit, a public facility with programs and services prisoners with disabilities were otherwise qualified for. TDCJ is a recipient of federal funds. TDCJ may be served through its executive director, Bryan Collier, at 861 B IH 45 North, Huntsville, TX 77320. *Service is requested.*

15. The University of Texas Medical Branch is a component of the University of Texas system located in Galveston, Texas. UTMB's high-ranking policymakers reside and work in Galveston. Through UTMB's Correctional Managed Care program, UTMB partners with TDCJ to provide health care to 80 percent of TDCJ prisoners, including Mr. Roppolo and the other prisoners at the McConnell Unit. UTMB is a recipient of federal funds. UTMB may be served through its interim president, Ben Raimer, at 301 University Blvd., Galveston, TX 77555. *Service is requested.*

16. Upon information and belief, CMHCC receives federal funds.

## II.     Jurisdiction and Venue

17. As this case is brought pursuant to 42 U.S.C. §§ 1983 & 1988, the Americans with Disabilities Act (42 U.S.C. § 12101) and the Rehabilitation Act (29 U.S.C. § 701), this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

18. This Court has general personal jurisdiction over Defendants as Defendants reside and/or are employed within the Southern District of Texas.

19. Venue is proper in the Corpus Christi Division as relevant events occurred within Bee County, Texas, which is located within this Division.

### III.     Factual Background

*A.     The Hepatitis C Virus Attacks and Destroys the Liver*

20. The Hepatitis C virus is a chronic infectious disease that, once contracted, can last a person's entire life. If untreated, it can irrevocably damages patients' livers, and, ultimately, can be fatal.

21. The liver is an essential organ, which, among many other critical functions, processes nutrients, filters toxins from the blood, prevents disease, and facilitates necessary metabolic processes in the body.

22. A healthy liver is critical to the operation of several major bodily functions, including the digestive system, endocrine system, immune system, and circulatory system.

23. Hepatitis C causes inflammation of the liver, that, if untreated, causes physical and mental pain, liver scarring, diminished liver function, liver failure, and liver cancer, as well as adverse effects on other organ systems. For patients with liver failure, the only remaining option is a liver transplant.

24. Liver transplants are painful, carry significant risks of complications, and are nearly impossible for prisoners to obtain. Liver transplants have lower recovery rates than treatment with direct-acting antiviral (DAA) drugs, and are extremely expensive (costing, according to CMHCC, over $200,000 per patient).

25. Hepatitis C is the leading cause of cirrhosis of the liver (scarring of liver tissue), and liver cancer.

26. Cirrhosis of the liver can cause symptoms such as swelling, increased likelihood of bruising, jaundice, itching, nausea, and problems with concentration and memory.

27. Even before Hepatitis C causes liver fibrosis, however, the infection itself and associated inflammation of the liver causes substantial extrahepatic symptoms (symptoms impacting organs other than the liver) in a significant number of patients, including autoimmune disorders, diabetes, hematologic diseases including lymphoma, kidney disease, and skin conditions.

28. In 2013, the Hepatitis C virus killed more people than sixty other infectious diseases combined – including HIV/AIDS, pneumococcal disease, and tuberculosis.

29. In TDCJ, Hepatitis C is the third leading cause of death. Most TDCJ prisoners who die of complications from liver disease are infected with Hepatitis C.

30. Each day without treatment of Hepatitis C increases the likelihood of developing cirrhosis, fibrosis, liver cancer, the need for a liver transplant, complications from the disease, and death from liver failure.

31. As such, Hepatitis C infection causes serious health effects and poses ongoing significant health risks.

32. Hepatitis C is a serious medical need, and requires treatment.

33. Indeed, in the vast majority of cases, Hepatitis C can be cured with correct treatment.

34. Incredibly, Defendants deny the correct treatment to Mr. Roppolo, and thousands of other TDCJ prisoners like him.

B.  *Numerous TDCJ Prisoners Suffer from Hepatitis C*

35. The prevalence of Hepatitis C in prison systems is much higher than in the general population. It is estimated between 16% and 41% of prisoners in the United States suffer from chronic Hepatitis C infection.

36. Indeed, hepatologists recognize that incarceration itself is a significant risk factor for contracting Hepatitis C.

37. In testimony to a committee of the Texas Legislature in March of 2014, Dr. Murray testified that approximately 30% of TDCJ prisoners suffer from chronic Hepatitis C infection.

38. As TDCJ has a total prisoner population of approximately 145,000, Dr. Murray's testimony means that approximately 29,000 TDCJ prisoners are chronically infected with Hepatitis C.

39. More recently, a June 2018 CMHCC presentation estimated that over 18,000 TDCJ inmates have been diagnosed with chronic Hepatitis C.

40. If the high-end of the national estimates are correct, however, TDCJ may have as many as approximately 59,000 prisoners chronically infected with Hepatitis C.

C.  *The Standard of Care for Hepatitis C Infections*

41. For many years, there was no truly effective treatment for Hepatitis C. Until recently, the standard of care was treatment with interferon and ribavirin medications, which had very low cure rates, and carried significant side effects which prevented many patients from completing the treatment.

42. Beginning in or around 2011, however, new direct action antiviral (DAA) drugs came to market, and were approved by the Food and Drug Administration for the treatment

7

of Hepatitis C. All CMHCC members were aware of these new, highly effective, treatments.

43. Additional, highly-effective oral DAA drugs were approved by the FDA and came to market in 2013 and 2014.

44. Unlike the old, ineffective treatments, DAA drugs have cure rates well over 90%, and little to no meaningful side effects.

45. DAA drugs are now the standard of care for treatment of Hepatitis C.

46. Virtually no other medications are contraindicated to DAA drugs.

47. The effectiveness of DAA drugs has led to skyrocketing cure rates of Hepatitis C infection among people who are not incarcerated.

48. Even the Defendants admit that DAA drugs are now the standard of care in treating Hepatitis C.

49. In fact, Dr. Murray, while testifying before the Texas Legislature in 2014, admitted that DAA treatments were "excellent drugs" that "ha[ve] become the standard of care."

50. Any competent doctor practicing medicine in 2019 would acknowledge as much, just as Dr. Murray testified in 2014.

51. At CMHCC meetings, the standard of care for Hepatitis C treatment is regularly discussed, and the CMHCC members are well aware that the community standard of care for treatment of Hepatitis C requires treatment of all people diagnosed with Hepatitis C with DAA drugs.

52. At a CMHCC meeting in 2013, Dr. Harold Berenzweig, a former CMHCC member, told the committee members that new DAA treatments were "the standard of care for treatment of patients."

53. At the same CMHCC meeting, the then-TTUHSC representative, Dr. Denise DeShields, also told committee members that DAA treatment was the "community standard of care."

54. Dr. Linthicum told her fellow CMHCC members that it was the committee's responsibility "as physicians" to "do the right thing by our patients. We practice medicine consistent with the public safety and welfare and if there is a national guideline that sets the standard of care, that's what we do. … We have to, as physicians, do the right thing." She further commented, "I have an ethical obligation to practice medicine in this state consistent with the public safety and welfare and so I think we go forward with a policy that meets the standard of care," and to do otherwise would be practicing "substandard medicine." Dr. Linthicum told the committee that, if the committee did not approve DAA drug treatments, it would risk the wrath of "a federal judge."

55. In other words, Dr. Linthicum – and the rest of the CMHCC – knows that it is deliberately indifferent to inmates' serious medical needs when prison systems intentionally refuse to treat Hepatitis C patients with DAA drugs, and that failing to provide DAA treatments would intentionally treat inmates with Hepatitis C incorrectly.

56. At a CMHCC meeting in 2015, the committee members were expressly told that national guidelines now require that "everyone who contracts the disease is treated" with DAA drugs.

57. Yet the Defendants continue to intentionally treat Hepatitis C patients incorrectly, by ignoring these well-established treatment guidelines, and rationing care rather than treating every Hepatitis C patient in TDCJ custody (as the standard of care requires).

58. TDCJ officials claim they provide incarcerated patients the same standard of care patients would receive in the community. Dr. Linthicum has testified that "there's not a different standard of care in prison versus the community," that "TDCJ does, in fact, operate [its healthcare system] to community standards," and that "we operate our healthcare system according to community standards of care and national standards of care."

59. Likewise, in other litigation, UTMB's corporate representative, Dr. Glenda Adams, testified that UTMB is obligated to follow and "meet community standards of care" when serving its prisoner patients, and that UTMB providers should be held to the same standards as providers in the community.

60. But this is not true for treatment of Hepatitis C. Instead, TDCJ, UTMB, and CMHCC purposely expose Hepatitis C patients with a serious medical need to a substantial risk of serious harm and ignore the well-established standards of care, and thus are intentionally treating patients incorrectly.

61. TDCJ, UTMB, and CMHCC also violate the standard of care with respect to diagnostic testing to determine the presence of a chronic HCV infection. Standard of care in this regard is to first perform an antibody test to determine if a person has been exposed to the HCV virus. However, a person with a positive antibody test may not have a chronic infection – some small number of patients naturally clear the virus. Therefore, to determine whether a person has chronic infection, a viral load test or "PCR test" must be performed to determine the presence and amount of the virus in the blood. The viral load test should be performed as soon as possible after the antibody test shows positive, as it is important

for the patient's health to determine immediately whether the person has chronic HCV infection and, if so, to begin treatment.

62. TDCJ, UTMB, and CMHCC violate the standard of care with respect to diagnostic testing for HCV infection because, on information and belief, they frequently fail to do viral load testing immediately after a positive antibody test, and instead delay many months before performing viral load testing on an inmate with a positive antibody test. This policy delays diagnosis of chronic HCV infection, delays necessary treatment, and subjects inmates to health risks described above. By denying inmates this diagnostic testing, TDCJ, UTMB, and CMHCC are intentionally treating patients incorrectly.

63. HCV patients do not experience a uniform linear progression of the disease – in some patients, the disease will worsen and progress rapidly, and thus delays in diagnosis and/or treatment pose substantial health risks.

C. *CMHCC, TDCJ and UTMB Policies Deny Required Hepatitis C Treatments to TDCJ Prisoners*

64. Though the standard of care for Hepatitis C requires treatment of all patients with DAA drugs, CMHCC, TDCJ, and UTMB policies deny this safe and extremely effective treatment to TDCJ prisoners.

65. Instead, CMHCC, TDCJ, and UTMB policies only allow TDCJ prisoners to be considered for DAA treatment after testing demonstrates they are already suffering from damage to their liver.

66. The AST to platelet ratio index (APRI) uses blood testing in lieu of a biopsy as an indirect measure of scarring of the liver.

67. According to CMHCC, TDCJ, and UTMB's policies, as a general rule only prisoners with an APRI of over 0.5 will even be considered for treatment of Hepatitis C

11

(including DAA treatment). Liver fibrosis is ranked on the METAVIR scale ranging from F0, indicating no fibrosis, to F4, indicating cirrhosis. An APRI score of .5 correlates with a METAVIR level of F2. Thus, Defendants' policy requires a patient to suffer *some* liver damage before being considered for treatment.

68. The community standard of care, however, requires *all* patients with Hepatitis C, regardless of APRI or METAVIR score, be provided DAA drugs.

69. APRI scores alone are not sufficiently sensitive, moreover, to rule out significant liver disease. In fact, using an APRI score of 0.5 as a threshold for treatment will fail to identify 19% of patients with very significant liver fibrosis.

70. Likewise, even when a patient has a sufficiently high APRI score, CMHCC, TDCJ, and UTMB's policies still do not mandate treatment – just a referral to another doctor, who consistently fails to provide treatment with DAA drugs in direct violation of the community standards of care. This also violates the standard of care, as all patients, and certainly those whose liver has already been damaged, require treatment with DAA drugs.

71. Thus, numerous TDCJ prisoners, including Mr. Roppolo, are intentionally denied DAA treatment for Hepatitis C, in violation of the standard of care, due to CMHCC's policies.

72. Defendants, acting as the CMHCC, voted unanimously to approve this treatment policy that intentionally denies correct care to inmates like Mr. Roppolo and thousands of others.

D.     *CMHCC and UTMB Policies Deny DAA Treatment to Plaintiff Matthew Roppolo*

73. Plaintiff Matthew Roppolo is imprisoned at the McConnell Unit, in Beeville, Texas.

74. UTMB, Dr. Murray's agency, provides medical care to prisoners at the McConnell Unit, pursuant to its contract with TDCJ.

75. Mr. Roppolo was diagnosed with Hepatitis C in the 1990s. His APRI score has been elevated for years, and was in excess of 0.7 on testing done intermittently from late 2016 to early 2018. His APRI was above 0.5 on his most recent available test done in September 2018.

76. Mr. Roppolo's APRI scores indicate, in reasonable probability, that he suffers from liver fibrosis (scarring).

77. Mr. Roppolo attempted Interferon treatment for his Hepatitis C in 2014 or 2015, but was unable to tolerate it.

78. Starting in 2017, Mr. Roppolo has specifically requested DAA treatment from prison medical staff, but has not been treated.

79. When Mr. Roppolo filed Step 1 and Step 2 grievances seeking care, the responses indicated that he would merely continue to be monitored. That was almost two years ago.

80. Mr. Roppolo does not have any medical conditions that would contraindicate treatment with DAA drugs.

81. Mr. Roppolo's medical records, during visits in 2018, note the following with respect to Hepatitis C: "the nature of the infection and the course of the disease was discussed with the patient including the possibility of developing liver cirrhosis and subsequent liver cancer."

82. Despite medical staff recognizing and counseling Mr. Roppolo regarding the grave health risks posed by his Hepatitis C infection, Defendants have deliberately withheld DAA treatment to him, in known violation of the standard of care.

83. Mr. Roppolo has exhausted all administrative remedies.

84. Mr. Roppolo's "projected release date" is December 1, 2045.

85. Thus, solely due to CMHCC, TDCJ, and UTMB's policies, Defendants deny Mr. Roppolo the DAA treatment for Hepatitis C required by the standard of care, and by doing so have acted with deliberate indifference to his serious medical needs as well as an ongoing substantial risk of serious risks to his health.

## IV. Causes of Action

*A.  42 U.S.C. § 1983 – Cruel and Unusual Punishment*

86. Defendants, acting jointly as the CMHCC, TDCJ, and UTMB, violate the Eighth Amendment rights of prisoners like Mr. Roppolo by denying them treatment with DAA drugs for Hepatitis C.

87. The Eighth Amendment's protections against cruel and unusual punishment require that prison officials provide medical treatment to inmates when prisoners suffer from serious medical needs.

88. The Eighth Amendment also prohibits prison physicians from intentionally treating patients incorrectly. Defendants intentionally provide patients with Hepatitis C incorrect medical treatment by rationing care and denying treatment to prisoners who should be treated according to the standard of care.

89. Untreated Hepatitis C is a serious medical need that places Mr. Roppolo and thousands like him at a substantial risk of serious health effects. In fact, Defendants' policies require Mr. Roppolo and numerous other patients to suffer liver scarring and the ongoing risk of serious extrahepatic symptoms before UTMB doctors will even consider treating him.

90. And even after APRI test values indicating that Mr. Roppolo suffers from significant liver scarring, and medical staff counseling him on the grave health risks of his HCV infection, Defendants still refuse to provide him and numerous others with the DAA treatment required by the standard of care. Thus, Defendants are intentionally treating Mr. Roppolo and thousands of other patients incorrectly.

91. Defendants, through the policies of CMHCC, TDCJ, and UTMB, are deliberately indifferent to Mr. Roppolo and thousands of others' serious medical needs, in violation of the Eighth Amendment (as secured against the States through the Fourteenth Amendment).

*B. ADA and Rehabilitation Act*

92. Defendants intentionally discriminate against prisoners, like Mr. Roppolo, who suffer from Hepatitis C by denying them the reasonable accommodation of necessary medical treatment.

93. Failing to provide reasonable accommodations is illegal discrimination under the Acts, entitling a plaintiff to injunctive and declaratory relief.

94. Title II of the ADA and the Rehabilitation Act require public entities, like TDCJ, UTMB, and the CMHCC, to reasonably accommodate people with disabilities in all programs and services for which people with disabilities are otherwise qualified. Because failing to provide medical care to inmates also violates the Eighth Amendment, TDCJ, UTMB, and CMHCC's immunity from suit is waived by Congress' power to enforce the Fourteenth Amendment.

95. The Rehabilitation Act also requires federal funds recipients to reasonably accommodate persons with disabilities in their programs and services. As TDCJ, UTMB,

and CMHCC are each federal funds recipients, their sovereign immunity from suit is waived by Congress' spending power under the Rehabilitation Act.

96. The McConnell Unit is a facility, and its operation comprises a program and service, for ADA and Rehabilitation Act purposes.

97. Medical treatment is a program or service that TDCJ, UTMB, and CMHCC provide to prisoners for purposes of the ADA and Rehabilitation Act.

98. Mr. Roppolo is a qualified individual with a disability under the meaning of both the ADA and the Rehabilitation Act. As with numerous other Hepatitis C patients, Mr. Roppolo' Hepatitis C impairs the operation of his digestive, endocrine, circulatory, and immune systems, and the liver is a major bodily organ impaired by Hepatitis C.

99. TDCJ, UTMB, and CMHCC know that Mr. Roppolo and thousands of others suffering from Hepatitis C are qualified individuals with a disability. TDCJ, UTMB, and CMHCC know that individuals with Hepatitis C require treatment with DAA drugs, but deny this reasonable accommodation to Mr. Roppolo and numerous other patients.

## V. Class Action

100.    Pursuant to Federal Rule of Civil Procedure 23(b)(2), Plaintiffs seek to certify a class defined as: "All current and future prisoners in TDCJ custody who have been diagnosed, or who will be diagnosed, with chronic Hepatitis C and who are not already being treated with direct acting antiviral medications."

101.    Upon information and belief, Defendants have the ability to identify all such similarly situated class members, though medical and other existing records in Defendants' possession.

102.    The proposed class satisfies the requirements of Rule 23(a):

16

a. *Numerosity*: The class is so numerous that joinder of all members is impracticable. According to Defendants' estimates, the class is composed of *at least* 18,000 patients.

b. *Commonality*: There are questions of law and fact common to the class, including, but not limited to:

   i. Whether Hepatitis C is a serious medical need?

   ii. Whether Defendants' policy results in Hepatitis C patients being intentionally treated incorrectly?

   iii. Whether Defendants' policy and practice of not providing Hepatitis C treatment to all class members constituted deliberate indifference to a serious medical need, in violation of the Eighth Amendment?

   iv. Whether treatment with DAA medications is the standard of care for treatment of Hepatitis C?

   v. Whether an intentional decision to not provide treatment in accord with the standard of care intentionally denies patients correct medical treatment?

   vi. Whether chronic Hepatitis C infection is a disability for purposes of the ADA and Rehabilitation Act?

   vii. Whether providing DAA treatment for Hepatitis C is a reasonable accommodation under the ADA and Rehabilitation Act?

   viii. Whether Defendants are intentionally discriminating against Hepatitis C patients by denying them treatment with DAA medications?

    c. *Typicality*: The claims or defenses of the class representative, Mr. Roppolo, are typical of the claims or defenses of the remainder of the class. The class representative has been diagnosed with chronic Hepatitic C, but has been intentionally treated incorrectly, and suffers from the same type of complications and substantial risk of harm that the remainder of the class members suffer from.

    d. *Adequacy*: The class representative and class counsel will fairly and adequately protect the interests of the class. The class representative is committed to obtaining declaratory and injunctive relief that will benefit himself as well as the class by ending Defendants' unconstitutional policies and practices. The class representative's interests are consistent with, and not antagonistic to, the interests of the class. The class representative has a strong personal interest in the outcome of this case, and has no conflicts with other class members. Mr. Roppolo and the class are represented by experienced counsel who have extensive experience in civil rights litigation against the Defendants. Class counsel has been hailed by this Court as "experienced in class action litigation and civil rights work," and "highly skilled" in light of "extraordinary results" class counsel obtained for another class of TDCJ prisoners.

103.    The requirements of Rule 23(b)(2) are satisfied, as the party opposing the class has acted and refused to act on grounds generally applicable to the class so that final declaratory and injunctive relief would be appropriate for the class as a whole. Only

injunctive relief will end the policy and practice of intentionally treating patients chronically infected with Hepatitis C incorrectly.

## VI. Injunctive and Declaratory Relief

104.  Mr. Roppolo and the putative class seek injunctive and declaratory relief pursuant to 42 U.S.C. § 1983, the ADA, and the Rehabilitation Act against Defendants, to require TDCJ, UTMB, and the CMHCC to provide him and other class members necessary medical treatment with DAA drugs.

105.  Without permanent injunctive relief, Defendants will continue to deny Mr. Roppolo and other class members necessary medical treatment, disregarding the medical standard of care as well as federal and state law mandates, endangering their life and health.

106.  Mr. Roppolo and the class have no plain, adequate, or complete remedy at law to address the wrongs described herein.

107.  Mr. Roppolo and the class ask that the Court enjoin Defendants to require Defendants to provide them with DAA drug treatment for their chronic Hepatitis C.

108.  Mr. Roppolo and the class do not seek damages in this action.

## VI. Attorneys' Fees

109.  Pursuant to 42 U.S.C. § 1988, and 42 U.S.C. § 12205, Mr. Roppolo and the class are entitled to recover attorneys' fees, litigation expenses (including expert witness fees), and court costs should he become a prevailing party.

## VII. Prayer for Relief

Therefore, Plaintiff respectfully requests that the Court award the following relief:

A.  Certify the class of TDCJ prisoners chronically infected with Hepatitis C who are not receiving treatment with DAA drugs;

B. Remedy ongoing violations of the law and the Constitution by granting declaratory and injunctive relief, as set out in this complaint, on behalf of Mr. Roppolo and the class;

C. Permanently enjoin Defendants to require them to provide Mr. Roppolo and the class with DAA drug treatments;

D. Find that Plaintiffs are the prevailing party in this case, and award them attorneys' fees, court costs, expert costs, and litigation expenses;

E. Grant such other and further relief as appears reasonable and just, to which Mr. Roppolo and the class may be entitled.

Date: September 19, 2019.

Respectfully submitted,

Edwards Law
The Haehnel Building
1101 East 11th Street
Austin, Texas 78702
  Tel. 512-623-7727
  Fax. 512-623-7729

By   /s/ Jeff Edwards
JEFF EDWARDS
State Bar No. 24014406
Attorney-in-Charge
Scott Medlock
State Bar No. 24044783
Matthew Singley
State Bar No. 00794642
David James
State Bar No. 24092572
Federal ID No. 2496580

PLAINTIFF'S ATTORNEYS
