UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MATTHEW ROPPOLO, on behalf of himself and others similarly situated, | § § § | |
| Plaintiff | § § | |
| | § | Civil Action No. |
| v. | § | 2:19-cv-262 |
| | § | |
| LANNETTE LINTHICUM, in her official capacity as the medical director of the TEXAS DEPARTMENT OF CRIMINAL JUSTICE, and BEN RAIMER, CYNTHIA JUMPER, RODNEY BURROW, F. PARKER HUDSON III, ERIN WYRICK, JOHN BURRUSS, PRESTON JOHNSON, JR., and KELLY GARCIA, in their official capacities as the members of the CORRECTIONAL MANAGED HEALTH CARE COMMITTEE, and OWEN MURRAY, in his official capacity as the director of the UNIVERSITY OF TEXAS MEDICAL BRANCH CORRECTIONAL MANAGED CARE program | § § § § § § § § § § § § § § § § § § | |
| Defendants | § | |

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Plaintiff moves to certify a class and two subclasses in this 42 U.S.C. § 1983 suit for injunctive and declaratory relief arising out of TDCJ, UTMB, and the Texas Correctional Managed Health Care Committee's dangerous decision to withhold necessary—and potentially lifesaving—medication from certain inmates infected with the Hepatitis C Virus (HCV) purely as a cost-saving measure. This motion also seeks to certify a subclass in the suit for injunctive and declaratory relief under the Americans with Disabilities Act and the Rehabilitation Act.

1

## I.    FACTUAL BACKGROUND

HCV is a widespread disease, especially inside the Texas prison system—where upwards of 30%[1] of the roughly 145,000[2] TDCJ inmates are afflicted. More than three quarters of people infected with HCV will develop a chronic infection, meaning an infection that is not defeated by the body's natural immune system in the first 6 months.[3] Most people infected with HCV, absent treatment, will remain infected for life.[4] Ten to twenty percent of people infected with HCV will develop cirrhosis over 20 to 30 years, three to six percent will suffer liver failure, and one to five percent will contract liver cancer.[5] Cirrhosis, commonly caused by HCV, typically has painful complications, including itching, nausea, jaundice, bruising, fluid retention and swelling, confusion, and fatigue.[6] Cirrhosis is permanent scarring and damage to the liver that is mostly

---

[1] Ex. 13, Dr. Owen Murray, D.O., *House Appropriations Committee and House Corrections Joint Hearing on Correctional Health Care* (May 29, 2014), p. 30, *available at* https://capitol.texas.gov/tlodocs/83R/handouts/C0132014052910001/9bab0dbf-838a-447e-9b80-f70b2d7e3a50.PDF; *see also* Dr. Murray's testimony to the Texas House of Representatives Committee on Appropriations (May 29, 2014) at 50:00, *available at* https://house.texas.gov/video-audio/committee-broadcasts/83/ (Dr. Murray's testimony citing the statistic); Ex. 8, AASLD & IDSA, *HCV Testing and Linkage to Cure*, HCV GUIDANCE (May 24, 2018), p. 15 *available at* https://www.hcvguidelines.org/evaluate/when-whom (reporting that, nationwide, about 29% of prisoners have HCV).

[2] In its last annual statistical report, TDCJ listed the total incarcerated population as 145,341 on August 31, 2017. Ex. 4, TDCJ Fiscal Year 2017 Statistical Report, p. 17 (retrieved Feb. 5, 2019), *available at* https://www.tdcj.texas.gov/documents/Statistical_Report_FY2017.pdf.

[3] Ex. 10, Centers for Disease Control and Prevention, *Hepatitis C Questions and Answers for the Public* (Nov. 2, 2018), p. 2, *available at* https://www.cdc.gov/hepatitis/hcv/cfaq.htm.

[4] Ex. 12, Centers for Disease Control and Prevention, *Hepatitis C* (2015), *available at* https://www.cdc.gov/hepatitis/HCV/PDFs/HepCGeneralFactSheet.pdf.

[5] Ex. 10, Centers for Disease Control and Prevention, *Hepatitis C Questions and Answers for the Public* (Nov. 2, 2018), p. 5, *available at* https://www.cdc.gov/hepatitis/hcv/cfaq.htm.

[6] Ex. 15, National Institute of Diabetes and Digestive and Kidney Diseases, *Symptoms and Causes of Cirrhosis* (March 2018), *available at* https://www.niddk.nih.gov/health-information/liver-

irreversible, absent a liver transplant, and can be fatal as it can lead to complications such as infection, bleeding, liver cancer, liver failure, and fluid accumulation.[7] HCV causes half of all liver cancer cases in the United States.[8] More than 17,000 people in the United States die per year due to liver disease or other complications that arise from HCV.[9]

By 2014, a medicinal HCV cure—which has minimal side effects and cures over 90%[10] of patients—became standard for all chronic HCV patients in the United States: Direct-Acting Antiviral (DAA) drugs. DAA treatment is associated with a 70% reduction in the risk of liver cancer and a 90% reduction in the risk of liver-related death,[11] on top of dramatic improvements in quality of life, compared to the now-obsolete, previous treatment plans for HCV. Because DAA medications have been proven to be so safe and reliable, and because they are more effective when

---

disease/cirrhosis/symptoms-causes.

[7] Ex. 11, National Institute of Diabetes and Digestive and Kidney Diseases, *Definition & Facts for Cirrhosis* (March 2018), *available at* https://www.niddk.nih.gov/health-information/liver-disease/cirrhosis/definition-facts.

[8] Ex. 16, Centers for Disease Control and Prevention, *Viral Hepatitis and Liver Cancer* (March 2016), *available at* https://www.cdc.gov/nchhstp/newsroom/docs/factsheets/viral-hep-liver-cancer.pdf.

[9] Ex. 1, Declaration of Dr. Stacey Trooskin, p. 3, Section II.1; Ex. 11, Centers for Disease Control and Prevention, *Hepatitis C Questions and Answers for the Public* (Nov. 2, 2018), *available at* https://www.cdc.gov/hepatitis/hcv/cfaq.htm.

[10] Ex. 1, Declaration of Dr. Stacey Trooskin, p. 6, Section IV.2; Ex. 11, Centers for Disease Control and Prevention, *Hepatitis C Questions and Answers for the Public* (Nov. 2, 2018), *available at* https://www.cdc.gov/hepatitis/hcv/cfaq.htm.

[11] Ex. 8, AASLD & IDSA, *When and in Whom to Initiate HCV Therapy*, HCV GUIDANCE, p. 26 (May 24, 2018), *available at* https://www.hcvguidelines.org/evaluate/when-whom.

treatment begins early, the standard for medical care is to provide DAA treatment to anyone diagnosed with chronic HCV.[12]

Inside prison, however, Texas agencies have decided to deliberately wait until an inmate with HCV has suffered irreversible liver damage *before* curing their HCV infection. Specifically, the Texas Correctional Managed Health Care Committee directs prison medical staff to refer an inmate for evaluation for DAA therapy *only* if the patient also has cirrhosis or an APRI score above 0.5, and routinely rejects any referred patients with an APRI below that threshold.[13] APRI is the AST/Platelet Ratio Index, calculated by a mathematical formula based upon three blood level test results associated with liver health.[14] The Defendants' policy is contrary to the standard of care and does not even achieve the Defendants' apparent goal of waiting for liver damage, as the APRI is an imprecise test and is not sensitive enough to rule out fibrosis (scarring of the liver).[15] To the contrary, as shown by the scientific literature, an APRI score of 0.5 will miss the diagnosis of liver

---

[12] Ex. 1, Declaration of Dr. Stacey Trooskin, p. 7, Section V.1; Ex. 9, AASLD & IDSA, *When and in Whom to Initiate HCV Therapy*, HCV GUIDANCE, p. 25 (May 24, 2018), *available at* https://www.hcvguidelines.org/evaluate/when-whom.

[13] Ex. 2, Correctional Managed Health Care Infection Control Manual, *Hepatitis C Policy* (May 2015), pp. 4–5; *see also* Ex. 9, Correctional Managed Care, Formulary, *Chronic Hepatitis C Evaluation and Treatment Pathway* (24th Ed., 2018), p. 1.

[14] Ex. 9, Correctional Managed Care, Formulary, *Chronic Hepatitis C Evaluation and Treatment Pathway* (24th Ed., 2018), p. 2.

[15] Ex. 8, AASLD & IDSA, *When and in Whom to Initiate HCV Therapy*, HCV GUIDANCE, p. 33 (May 24, 2018), *available at* https://www.hcvguidelines.org/evaluate/when-whom; *see also Postawko v. Missouri Dep't of Corrections*, 910 F.3d 1030, 1034–35 (8th Cir. 2018) ("While a high APRI score (above 2.0) reliably indicates the presence of cirrhosis or severe fibrosis, a low APRI does not provide conclusive evidence in the other direction").

fibrosis in 19% of the individuals who have fibrosis, because they will have APRI scores of less than 0.5.[16]

As a result of the Defendants' cruel rationing of this necessary medicine, Texas inmates suffer from HCV for years where an identical patient in the civilian world would be treated and likely cured in months. In the summer of 2018, out of an estimated 18,399 inmates with chronic HCV in TDCJ, only 4,554 were even considered priority candidates for antiviral DAA therapy.[17] As a result, thousands of inmates are at risk of liver scarring, as well as a substantially increased risk of liver cancer.[18] Many more have other liver damage. Yet others are suffering from or at risk serious extrahepatic (non-liver-related) symptoms including depression, fatigue, sore muscles, joint pain, kidney injury, diabetes, various cancers certain skin conditions, and other serious complications of Hepatitis C.[19] Population-level data suggests that this policy decision not only damages inmates' livers by design, but also kills inmates, as Texas prisoners with liver disease continue to die in disproportionate numbers compared to the general population. For example, TDCJ has experienced an average of more than 23.3 deaths per year per 100,000 inmates on hand

---

[16] Ex. 1, Declaration of Dr. Stacey Trooskin, pp. 17–18, Section VII.1.b.

[17] Ex. 14, Hepatitis C Policy and Program (Presented to CMHCC June 20, 2018), p. 15, *available at* https://www.tdcj.texas.gov/divisions/cmhc/docs/cmhcc_meetings/2018-06-20_CMHCC_Agenda.pdf.

[18] Ex. 1, Declaration of Dr. Stacey Trooskin, pp. 19–20, Section VII.1.d & pp. 10–11, Section V.4.

[19] Ex. 1, Declaration of Dr. Stacey Trooskin, pp. 3–4, Section II.1 & pp. 10–11, Section V.4.

due to liver cancer over the last three years.[20] This is more than double the rate of liver cancer death per person in Texas in 2015.[21]

This policy inflicts ongoing harm on Plaintiff, the putative class of all inmates with HCV who Defendants do not provide DAA treatment, and the putative subclasses.

## II.   ISSUES PRESENTED

The named Plaintiff is Michael Roppolo. Mr. Roppolo seeks injunctive and declaratory relief on behalf of himself and thousands of others who are similarly situated. Plaintiff hereby moves this Court to certify the proposed class and subclasses as follows:

**(1) The General Class:** All current and future inmates incarcerated in the Texas Department of Criminal Justice who have been diagnosed, or will be diagnosed, with chronic Hepatitis C, and who are subjected to TDCJ and the Texas Correctional Managed Health Care Committee's policy and practice of failing to provide direct-acting antiviral treatment to all inmates diagnosed with chronic Hepatitis C, and who are not receiving treatment with direct-acting antiviral drugs.

**Plaintiff Roppolo is similarly situated to the General Class.**

**(2) The Disability Subclass:** All current and future inmates incarcerated in the Texas Department of Criminal Justice who have been diagnosed, or will be diagnosed, with chronic Hepatitis C, and who are subjected to TDCJ and the Texas Correctional Managed Health Care Committee's policy and practice of failing to provide direct-acting antiviral treatment to all inmates diagnosed with chronic Hepatitis C, who are not receiving treatment with direct-acting antiviral drugs, and who are at increased risk of liver-related

---

[20] *See* Ex. 14, Hepatitis C Policy and Program (Presented to CMHCC June 20, 2018), p. 11, *available at* https://www.tdcj.texas.gov/divisions/cmhc/docs/cmhcc_meetings/2018-06-20_CMHCC_Agenda.pdf (43 liver cancer deaths in TDCJ in 2015, 29 in 2016, and 31 in 2017); Ex. 4, TDCJ Fiscal Year 2017 Statistical Report, p. 8 (retrieved Feb. 5, 2019), *available at* https://www.tdcj.texas.gov/documents/Statistical_Report_FY2017.pdf (145,341 inmates in TDCJ in 2017); Ex. 5, TDCJ Fiscal Year 2016 Statistical Report, p. vi (retrieved Feb. 6, 2019), *available at* https://www.tdcj.texas.gov/documents/Statistical_Report_FY2016.pdf (147,053 inmates in TDCJ in 2016); Ex. 6, TDCJ Fiscal Year 2015 Statistical Report, p. vi (retrieved Feb. 6, 2019), *available at* https://www.tdcj.texas.gov/documents/Statistical_Report_FY2015.pdf (148,146 inmates in TDCJ in 2015).

[21] Ex. 7, Texas Cancer Registry, Texas Department of State Health Services, *Liver and Intrahepatic Bile Duct Cancer in Texas*, (Nov. 2018), p. 8, *available at* https://www.dshs.texas.gov/tcr/data/cancersites/Liver-Cancer-in-Texas-Web-Report.pdf.

illness, injury, or death due to their disability or any medical treatment necessary to treat their disability.

**Plaintiff Roppolo is similarly situated to the Disability Subclass.**

III.   STANDARD FOR CLASS CERTIFICATION

Rule 23 of the Federal Rules of Civil Procedure governs motions for class certification and sets forth four prerequisites for class certification. A party must show that: 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact that are common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. PROC. 23(a). Once all four prerequisites are met, the party must additionally satisfy one of the requirements set forth in Rule 23(b). *Yates v. Collier*, 868 F.3d 354, 366 (5th Cir. 2017). The burden of proof to establish that the proposed class satisfied Rule 23 falls on the party seeking class certification. *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832 (5th Cir. 2012). Plaintiffs assert that this case satisfies Rule 23(b)(2) and therefore must show that the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. PROC. 23(b)(2).

The Court must perform a "rigorous analysis" to determine whether to certify a class, and that will entail some overlap with the merits of plaintiffs' claims. *Yates v. Collier*, 868 F.3d 354, 362 (5th Cir. 2017) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011)). The Court need not, and should not, however, require the plaintiffs to establish their claims at the class certification stage. *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that

they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied").

At the certification stage, Rule 23 is satisfied when the party seeking certification shows that a particular "contention is 'common' to all the class members, is 'central' to the validity of their claims, and is 'capable' of classwide resolution." *In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014). However, "[t]here is no need to resolve the merits of the common contention at the Rule 23 stage or to attempt prematurely the determination of its truth or falsity." *Id.* Thus, at the certification stage, Plaintiffs need not prove that their contention is correct, but merely that the question can be answered on a class-wide basis. *Postawko v. Missouri Dep't of Corrections*, 910 F.3d 1030 (8th Cir. 2018) (affirming class certification for inmates with chronic Hepatitis C); *Hoffer v. Jones*, 323 F.R.D. 694, 700 (N.D. Fla. 2017) (certifying class of inmates with chronic Hepatitis C); *Hilton v. Wright*, 235 F.R.D. 40, 54–55 (N.D. N.Y. 2006) (same). *See also Yates v. Collier*, 868 F.3d 354, 362-63 (5th Cir. 2017) (challenge to dangerously hot prison conditions in TDCJ appropriate for class-wide resolution).

## IV.   NUMEROSITY: THE CLASS AND SUBCLASS MEET THE RULE 23(A)(1) NUMEROSITY REQUIREMENT

Rule 23(a)(1) requires that the proposed class is "so numerous that joinder of all members is impracticable." FED. R. CIV. PROC. 23(a)(1). The key question in this analysis is "whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. Unit A July 1981). These other relevant factors include, for example, "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir. 2013). Additionally, courts often consider the multiplicity of actions and judicial economy. *Id.* (citations excluded). Although the number of

members in a proposed class is not determinative of whether joinder is "impracticable," the Fifth Circuit has held that a class of 100 to 150 members is "within the range that generally satisfies the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (suggesting that a class of more than 40 members "should raise a presumption that joinder is impracticable"). Moreover, in the prison context, where a prison population is "constantly in flux," "the fact that the class includes unknown future members" "weighs in favor of certification." *See Jones v. Gusman*, 296 F.R.D. 416, 465 (E.D. La. 2013) (*citing Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000)).

Here, the proposed General Class is currently over (at least) 18,000 members.[22] All inmates are subjected to the same rationing of medication, and it harms everyone who should be getting medication—everyone with chronic HCV—who is not getting it. Further, there is a constant flux of inmates into and out of the TDCJ system as inmates complete their sentence (or earn parole) and are replaced with new prisoners. *See Jones*, 296 F.R.D. at 465 (the fact that the class of prisoners if constantly in flux weighs in favor of certification). Joinder of all potential plaintiffs, therefore, would be "impracticable" because of the large number of current, inadequately treated inmates in TDCJ with chronic HCV, the inclusion of future inmates, and the constant flux of inmates into and out of TDCJ. In addition, joinder would result in grossly inefficient resolution of a single issue, and would be contrary to judicial economy.

Similarly, the Disability Subclass is likely numerous. Chronic HCV creates a significant risk of liver damage, and other health effects that will substantially impair bodily function.[23] Just

---

[22] Ex. 14, Hepatitis C Policy and Program (Presented to CMHCC June 20, 2018), p. 15, *available at* https://www.tdcj.texas.gov/divisions/cmhc/docs/cmhcc_meetings/2018-06-20_CMHCC_Agenda.pdf (stating 18,399 inmates have chronic HCV).

[23] Ex. 1, Declaration of Dr. Stacey Trooskin, pp. 19–20, Section VII.1.d & pp. 10–11, Section V.4.;

as the general class, the subclass is in constant flux due to factors such as inmates moving into and

out of TDCJ, inmates being newly diagnosed with conditions that qualify them as disabled and

changes in medication that impact whether an inmate is within the subclass.

Likewise, all of the individuals in the proposed subclass are subjected to the same rationing

of medications.

Moreover, the subclass includes unknown future members as well—making joinder

"impracticable," if not impossible. *See Jones*, 296 F.R.D. at 465.

Accordingly, the proposed General Class and subclass easily meet the numerosity

requirement. *See* FED. R. CIV. PROC. 23(a)(1).

## V.  COMMONALITY: THE CLASS AND SUBCLASSES MEET THE RULE 23(A)(2) COMMONALITY REQUIREMENT

Rule 23(a)(2) requires that the proposed class members have at least one factual or legal

issue in common. FED. R. CIV. PROC. 23(a)(2). Several federal courts have found commonality in

nearly identical cases. *See Postawko v. Missouri Dep't of Corrections*, 910 F.3d 1030, 1038 (8th

Cir. 2018) (affirming class certification for inmates with chronic Hepatitis C); *Hoffer v. Jones*, 323

F.R.D. 694, 700 (N.D. Fla. 2017) (certifying class of inmates with chronic Hepatitis C); *Hilton v.

Wright*, 235 F.R.D. 40, 54–55 (N.D. N.Y. 2006) (same). Commonality requires that the class

members' "claims must depend upon a common contention," and that common contention "must

be of such a nature that it is capable of classwide resolution'—which means that determination of

its truth or falsity will resolve an issue that is central to the validity of each one of the claims in

one stroke." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011). Thus, "what matters to

class certification" is the capacity "to generate common *answers* apt to drive the resolution of the

---

Ex. 10, Centers for Disease Control and Prevention, *Hepatitis C Questions and Answers for the Public* (Nov. 2, 2018), *available at* https://www.cdc.gov/hepatitis/hcv/cfaq.htm.

litigation." *Yates v. Collier*, 868 F.3d 354, 361 (5th Cir. 2017) (*citing Wal-Mart Stores*, 564 U.S. at 350) (italics in original). "These common answers may indeed relate to the injurious effects experienced by the class members, but they may also relate to the defendant's injurious conduct. 'Even a single common question will do.'" *In re Deepwater Horizon*, 739 F.3d at 811 (*citing M.D. ex rel. Stuckenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012)). *See also Yates v. Collier*, 868 F.3d 354, 365 n. 6 (5th Cir. 2017).

"Commonality requires a common policy or practice, possibly an implicit one, that is the alleged source of the harm to class members, and that there are common questions of law or fact that will be dispositive of the class members' claim." *M.D. v. Perry*, 294 F.R.D. 7, 28–29 (S.D. Tex. 2013). This practice or policy may be action or inaction. *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d at 847-848.

Courts in Texas and around the country have found that commonality is satisfied where a lawsuit challenges a system-wide policy or practice that affects all of the class members, including in numerous prison cases challenging conditions of confinement. *See, e.g.*, *Yates v. Collier*, 868 F.3d 354, 361 (5th Cir. 2017); (un-air-conditioned prison dormitories in the Texas summer); *Gates v. Cook*, 376 F.3d 323, 339 (5th Cir. 2004) (hot, dark, and filthy cells and a lack of laundry detergent); *Parsons v. Ryan*, 754 F.3d 657, 662 (9th Cir. 2014) (inadequate medical care and nutrition, and overuse of isolation cells); *Hernandez v. County of Monterey*, 305 F.R.D. 132, 153-8 (N.D. Ca. 2015) (same); *Scott v. Clarke*, 61 F.Supp.3d 569, 589 (W.D. Va. 2014) (inadequate medical care); *Jones v. Gusman*, 296 F.R.D. 416, 466 (E.D. La. 2013) (safety issues, inadequate medical care, and lack of Spanish language services); *Hughes v. Judd*, No. 8:12-cv-568-T-23MAP, 2013 WL 1821077 (M.D. Fla. Mar. 27, 2013) *adopted by*, 2013 WL 1810806 (M.D. Fla. April 30, 2013) (overuse of pepper spray); *Butler v. Suffolk County*, 289 F.R.D. 80 (E.D. N.Y. 2013) (filth,

plumbing problems, and overcrowding); *Henderson v. Thomas*, 289 F.R.D. 506 (M.D. Ala. 2012)

(segregation of inmates with HIV); *Olson v. Brown*, 284 F.R.D. 398 (N.D. Ind. 2012) (mishandling

grievances and searching inmates' attorney correspondence); *Rosas v. Baca*, No. CV 12-00428

DDP (SHx), 2012 WL 2061694 (C.D. Ca. June 7, 2012) (excessive force).

In a nearly identical Eighth Circuit case, the court of appeals upheld certification of the

following class:

> All those individuals in the custody of [Missouri Department of Corrections]
> [prisons], now or in the future, who have been, or will be, diagnosed with chronic
> HCV, as that term is defined medically, but who are not provided treatment with
> direct acting antiviral drugs.

*Postawko v. Missouri Dep't of Corr.*, 910 F.3d 1030, 1036 (8th Cir. 2018). The class in that case

brought § 1983, ADA, and Rehabilitation Act claims for injunctive relief. *Id.* at 1033. The court

held that the prisoners with chronic HCV "share the common question of whether the [prison's]

policy or custom of withholding treatment with DAA drugs from individuals who have been or

will be diagnosed with chronic HCV constitutes deliberate indifference to a serious medical need."

*Postawko v. Missouri Dep't of Corr.*, 910 F.3d at 1038 (8th Cir. 2018). Reasoning that "the

question asked by each class member is susceptible to common resolution," the Eighth Circuit

found commonality. *Id.* at 1038–1039. This case presents a practically identical putative class, and

should similarly be certified.

In the Fifth Circuit's *Yates* opinion, the court similarly affirmed certification, finding

commonality for inmates living in an un-air-conditioned prison seeking injunctive relief. *Yates v.*
*Collier*, 868 F.3d 354, 361 (5th Cir. 2017). Just like the Eighth Circuit, the Fifth Circuit explicitly

rejected Defendants' argument that individuals' differing medical conditions (and thus risk of heat-

related injury) foreclosed class certification, holding that the district court's finding that "TDCJ's

heat-mitigation measures are ineffective to reduce the heat-related risk of serious harm below the

constitutional baseline" for all inmates was sufficient to show commonality. *Id.* at 365. The same is true here, where Defendants are intentionally treating *all* putative class members incorrectly.

In the Ninth Circuit's *Parsons* opinion, the court affirmed certification and found commonality for a class of inmates seeking injunctive relief from inadequate prison medical care policies. *Parsons,* 754 F.3d at 675-684. In a similar vein, the court held that "although a presently existing risk may ultimately result in different future harm for different inmates—ranging from no harm at all to death—every inmate suffers exactly the same constitutional injury when he is exposed to a single statewide [prison] policy or practice that creates a substantial risk of serious harm." *Id.* at 678. From a class certification perspective, the policy of providing inadequate medical care in *Parsons* is identical to providing incorrect medical care for Hepatitis C here. Accordingly, the *Parsons* court found numerous common contentions, despite the variety of outcomes and medical risk for each inmate in the class, and affirmed class certification. *Id.*

In another nearly identical HCV case, *Hoffer v. Jones*, the district court certified the following class:

> all current and future prisoners in [Florida Department of Corrections] custody who have been diagnosed, or will be diagnosed, with chronic hepatitis C virus (HCV).

*Hoffer*, 323 F.R.D. at 697. Just as in this case, the class in *Hoffer* brought Eighth Amendment, Americans with Disabilities Act, and Rehabilitation Act claims because they were denied treatment for HCV. *Id.*; *see also Hoffer v. Jones*, 290 F.Supp.3d 1292, 1298 (N.D. Fl. 2017) (granting preliminary injunction and explaining that the claims arise from denial of DAA medications). On the commonality issue, the court held that "one common question of fact is what the appropriate standard of care is for a person with chronic HCV"—an essential common question also present here. *Hoffer*, 323 F.R.D. at 697. The court considered that although each inmate suffers from individualized conditions, a change in the prison's policies and practices presented a

class-wide issue. *Id.* at 698.

## A.  Plaintiffs' Claims Easily Satisfy the Commonality Standard

Because the commonality analysis focuses on whether there is at least one common contention throughout the class to find an answer that will drive the litigation, courts must consider the nature of the claims. Here, the General Class claims that the rationing policy to which Defendants subject the class constitutes an unconstitutional condition of confinement in violation of the Eighth Amendment, and a denial of adequate medical care. The Disability Subclass additionally claims that Defendants violate the ADA and Rehabilitation Act.[24]

### 1.  *Common Questions Exist as to Violations of the Eighth Amendment*

To demonstrate that withholding medications from prisoners violates the Eighth Amendment, an inmate must show (1) that the denial of medication poses an unreasonable risk of harm to his health or that prison officials are intentionally treating them incorrectly;[25] and (2) that prison officials have been deliberately indifferent to that risk. *See, e.g., Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015) (finding that the excessive heat in a Louisiana prison violated inmates'

---

[24] The members of the Disability Subclass also assert a conditions-of-confinement claim as members of the General Class; however, only the Disability Subclass asserts additional ADA and Rehabilitation Act claims.

[25] When an inmate alleges that the defendant failed to prevent harm, "the inmate must show that he is incarcerated under conditions posing a 'substantial risk of harm.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). *See also Blackmon v. Garza*, 484 Fed. Appx. 866, 869 (5th Cir. 2012) (exposure to high indoor heat index). Because many inmates bring Eighth Amendment claims alleging a failure to prevent harm, courts often state that the first prong requires a "substantial risk of harm," though such a showing is not required. *Farmer*, 511 U.S. at 834; *Gates v. Collier*, 501 F.2d 1291, 1306 (5th Cir. 1974) (holding that corporal punishment such as stripping inmates of their clothes and turning a fan on the inmates while they were naked and wet constituted cruel and unusual punishment); *see also Waters v. Zamora*, 481 Fed. Appx. 359, 2012 WL 4320196, *1 (9th Cir. September 21, 2012); *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001). Regardless, however, the Class and Subclasses in this case allege both that the withholding of lifesaving medications to inmates with chronic HCV is "so serious as to deprive prisoners of the minimal civilized measure of life's necessities" and that it poses "a substantial risk of harm."

constitutional rights); *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015). The Eighth Circuit recently affirmed that this exact question appropriately underpins class certification. *Postawko v. Missouri Dep't of Corr.*, 910 F.3d 1030, 1036 (8th Cir. 2018).

Here, the Eighth Amendment claims of the class easily satisfy the commonality requirement of Rule 23(a)(2) for the same reasons the Eighth Circuit affirmed in *Postawko*. The class contends that continued refusal to provide DAA therapy to inmates with chronic HCV amounts to an unconstitutional condition of confinement and an intentional denial of medical care in violation of the Eighth Amendment. The class contends that the policy foreclosing appropriate medical treatment with DAA medications is a condition of confinement and an intentional denial of medical care that poses a substantial risk of serious harm to their health. *See Postawko*, 910 F.3d at 1038. Further, the class contends that Defendants are deliberately indifferent to inmate health and safety because Defendants intentionally treat the class incorrectly, and know of but fail to adequately remedy the substantial risk of harm posed by withholding necessary medicine. *Id.* at 1038–1039. As the Fifth Circuit held in *Yates*, the "truth or falsity" of these two contentions "will resolve an issue that is central to the validity of each one of the claims in one stroke"—whether Defendants' conduct is unconstitutional. 868 F.3d at 361, *quoting Wal-Mart*, 564 U.S. at 350. As in *Yates*, the common answers will drive the resolution of this litigation. *See id*. A listing of common questions of fact and law subsumed by the two prongs of the Eighth Amendment analysis appears below.

### 2. *Common Questions Exist as to Violations of the ADA and Rehabilitation Act.*

A claim under the ADA and Rehabilitation Act requires that a plaintiff prove (1) that he is a qualified individual within the meaning of the act; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such

exclusion, denial of benefits, or discrimination is by reason of his disability. *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 428 (5th Cir. 1997).[26]

When a person has a qualifying disability, the ADA and Rehabilitation Act require public entities to provide a "reasonable accommodation" to assist the person in accessing public programs and services. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004). TDCJ's failure to accommodate a prisoner is "discrimination" under the Rehabilitation Act and ADA. This Court held in *McCoy v. Texas Department of Criminal Justice*:

> In the prison context … failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of an accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners.

2006 WL 2331055, *7 (S.D. Tex. Aug. 9, 2006) (Jack, J.). *See also U.S. v. Georgia*, 546 U.S. 151 (2006); *Martone v. Livingston*, No. 4:13-cv-3369, 2014 WL 3534696, *16 (S.D. Tex. July 16, 2014) (Ellison, J.). Thus, the ADA and Rehabilitation Act protects inmates with disabilities, like the Plaintiffs.

In fact, the Fifth Circuit has expressly found the commonality requirement satisfied in certifying classes of prisoners asserting ADA and Rehabilitation Act claims. *Yates v. Collier*, 868 F.3d 354, 366 (5th Cir. 2017) (common questions included failure to accommodate disabilities that impact the ability to withstand extreme heat); *Hernandez v. County of Monterey*, 305 F.R.D. 132, 158 (N.D. Ca. 2015) (common questions included failure to accommodate disabilities);

---

[26] Courts interpret the Americans with Disabilities Act and Rehabilitation Act under the same body of law. *See*, *e.g.*, *Bennett-Nelson v. Louisiana Board of Regents*, 431 F.3d 448, 455 (5th Cir. 2005). The Rehabilitation Act adds only the requirement that the entity also receive federal funding. *See* 42 U.S.C. § 12133 ("The remedies, procedures, and rights set forth in section 505 of the Rehabilitation Act of 1973 shall be the remedies, procedures and rights this title provides to any person alleging discrimination on the basis of disability in violation of [Title II of the ADA]"); 29 U.S.C. § 794(a) (2006).

*Bumgarner v. N.C. D.O.C.*, 276 F.R.D. 452, 456 (E.D. N.C. 2011) (same); *Clarke v. Lane*, 267

F.R.D. 180, 196 (E.D. Pa. 2010) (same). As the Court noted in *Bumgarner*: "In a lawsuit wherein

individuals with varying disabilities challenge policies and practices that affect all of the putative

class members, factual differences regarding their disabilities does not defeat commonality."

*Bumgarner*, 276 F.R.D. at 456.

Again, the Fifth Circuit expressly affirmed class certification for a subclass asserting ADA

and Rehabilitation Act claims in the prison context. *Yates,* 868 F.3d at 366. There, the Fifth Circuit

found that in addition to sharing the same common question identified for the general class, the

disability subclass had the "additional common contention that TDCJ officials failed to provide

reasonable accommodations to inmates suffering from disabilities that may impact their ability to

withstand extreme heat." *Id.* Differences in underlying medical conditions and disabilities did not

defeat class certification for the disability subclass asserting claims under the ADA and

Rehabilitation Act. *Id*. Similarly, the disability subclass in this case presents a common question:

whether Defendants failed to provide reasonable accommodations for their disability in light of

Defendants' refusal to provide DAA medications.

Both *Hoffer v. Jones* and *Postawko v. Missouri Department of Corrections* were ADA and

Rehabilitation Act cases on the exact same issue in Florida and Missouri, respectively, and the

courts in those cases found commonality and certified a class of inmates with chronic HCV. *Hoffer*,

323 F.R.D. 694, 697–698, 700 (N.D. Fl. 2017); *Postawko*. 910 F.3d 1030, 1033 (8th Cir. 2018).

### 3.   *The Common Questions of Law or Fact*

Here, the common questions of the proposed **General Class** are:

1)  Does withholding direct-acting antiviral medications from the members of the class violate the standard of care?

2)  Does withholding direct-acting antiviral medications from the members of the class pose a substantial risk of serious harm to the health of the class members?

3)    Is chronic HCV a serious medical need?

4)    Does denying and delaying treatment with DAA medications intentionally treat prisoners incorrectly, pursuant to the applicable standard of care?

5)    Does withholding direct-acting antiviral medications from the members of the class constitute deliberate indifference to a serious medical need?

6)    What are Defendants policies and practices relating to direct-acting antiviral medications?

7)    Do Defendants deliberately delay treatment and deny direct-acting antiviral medications for chronic HCV patients?

8)    Are the Defendants deliberately indifferent to the health risks posed by withholding direct-acting antiviral medications from the class members?

9)    What measures are feasible and appropriate to adequately reduce the health risk to the class members?

10)   Will the class members face similar (or worse) health risks in the future?

11)   Does exposing all prisoners to untreated, chronic HCV violate the Eighth Amendment?

12)   Are the members of the General Class entitled to declaratory and injunctive relief?

Further, the additional common questions of the **Disability Subclass** are:

1)    Are the members of the Disability Subclass a) persons with a diagnosis of a disability that substantially limits one or more of their major life activities; and b) *either* are a person with a disability that increases the risk of liver disease-related illness, injury, or death *or* a person who receives any medical treatment necessary to treat their disability that increases the risk of liver disease-related illness, injury, or death?

2)    Do Defendants provide reasonable accommodations to prisoners from whom it withholds direct-acting antiviral medications whose disabilities or treatment for their disabilities increase their risk of liver disease-related illness, injury, or death?

3)    Are Defendants immune from claims for injunctive and declaratory relief brought under the ADA or Rehabilitation Act?

4)      Are the members of the Disability Subclass entitled to declaratory and injunctive relief?

The Court can answer each of these common questions with "one stroke" and the common answers will drive the resolution of this litigation. *Yates*, 868 F.3d at 361 (citing *Wal-Mart*, 564 U.S. at 350). Commonality is not defeated simply because some class members may be more prone to liver-disease-related illnesses than others or because some have previously suffered cirrhosis or cancer illnesses while others have not. *Yates*, 868 F.3d at 363. All of the class members—as current and future inmates incarcerated by TDCJ—experience (or will experience) the unconstitutional policy of withholding direct-acting antiviral medications. All of the class members are subject to Defendants' policy and practice of withholding direct-acting antiviral medications. Denying this medicine either deprives the inmates of one of the minimal civilized measures of life's necessities under the Eighth Amendment, or it does not. Denying this medication either intentionally treats prisoners' serious medical needs incorrectly, or it does not. Further, the Defendants are either deliberately indifferent—by knowing the serious risks of harm posed by withholding the medicine and failing to take reasonable measures to reduce those risks—or they are not. With respect to the Disability Subclass specifically, either the Defendants reasonably accommodate those with disabilities or they do not. All of these questions and answers will be common to all those in the class and the subclasses.

**B.  Commonality Is Not Defeated by Individual Differences in Medical Conditions**

Every patient with chronic HCV infection needs to be treated with DAA medications.[27] Thus, every prisoner with chronic HCV in TDCJ custody who is denied DAA treatment, regardless of individual medical circumstances, is exposed to an increased risk of harm because Defendants

---

[27] Ex. 1, Declaration of Dr. Stacey Trooskin, pp. 7–9, Sections V.1 & V.2.

withhold DAA medications. Therefore, the same common questions apply to all class members despite differences in medical conditions. *Yates*, 868 F.3d at 363.

In *Yates*, the Fifth Circuit specifically addressed this issue, and affirmed this Court's finding that differences in underlying medical conditions did not defeat the commonality requirement for class certification in a case challenging prison conditions related to extremely high indoor temperatures. *Yates*, 868 F.3d at 362–66. In that case, the defendants argued that due to a population that is diverse in age and health, the court could not decide the substantial risk of serious harm question "in one stroke." *Id*. at 362–63. But in *Yates*, the Fifth Circuit held that the question was whether extremely high temperatures posed a substantial risk of harm to *all* inmates, even the young and healthy. *Id*. at 363–65. That the sick and disabled were at an even greater risk did not defeat the commonality of the general risk to everyone. *Id.* at 365–66. Further, the disability subclass had the "additional common contention…that TDCJ officials failed to provide reasonable accommodations to inmates suffering from disabilities that may impact…their ability to withstand extreme heat." *Id.* at 366. While acknowledging that "no two individuals have the exact same risk," the Fifth Circuit affirmed that differences in underlying medical conditions "does not destroy commonality." *Id*. at 363 (punctuation omitted). Here, this is not even a close call, because *all* HCV patients, regardless of the disease's progression or the patient's underlying health, require treatment with DAA medications.[28]

Relying upon this reasoning in *Yates*, the Eighth Circuit affirmed certification in *Postawko* despite the defendants' argument regarding individualized medication conditions. 910 F.3d at 1038 (8th Cir. 2018). The prison system defendants in *Postawko* specifically argued that "the unique medical condition of each member of the class means that resolving their claims will require a

---

[28] Ex. 1, Declaration of Dr. Stacey Trooskin, pp. 7–9, Sections V.1 & V.2.

20

'highly individualized' inquiry"—but the Eighth Circuit rejected this, reasoning that it "misunderstands the nature of the class's claims." *Id.* "Here the physical symptoms eventually suffered by each class member may vary, but the question asked by each class member is susceptible to common resolution." *Id.* at 1038. As the district court in that case held, the prisoners in that case were "not merely aggregating many claims of individual mistreatment. Instead, they are alleging that the policies and practices in place for HCV treatment generally expose all inmates with chronic HCV to a substantial risk of serious harm in violation of the Eighth Amendment." *Postawko v. Missouri Dep't of Corrections*, No. 2:16-cv-04219, 2017 WL 3185155, *8 (W.D. Mo. 2017). The Plaintiffs make the same allegations here, and deserve the same class treatment.

Accordingly, this putative class, which is almost identical to those certified in *Postawko* and *Hoffer*, has likewise shown that this case presents common questions subject to class-wide resolution.

## VI.   TYPICALITY: THE CLASS AND SUBCLASS MEET THE TYPICALITY REQUIREMENT IN RULE 23(A)(3).

Typicality focuses on whether the "class representative's claims have the same essential characteristics of those of the putative class." *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001), *abrogated on other grounds by M.D. ex rel Stukenberg v. Perry*, 675 F.3d 832 (5th Cir. 2012), *abrogation recognized In re Rodriguez*, 695 F.3d 360, 367 n.9 (5th Cir. 2012). "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Id.* Usually, once a party satisfies the commonality requirement, satisfaction of the typicality requirement "will follow as a matter of course." *M.D. v. Perry*, 294 F.R.D. 7, 29 (S.D. Tex. 2013). Plaintiff's claims are typical of class members.

### A. The Named Plaintiff and Class Members Have Claims That Share the Same Essential Characteristics: A Health Risk from Defendants' Withholding DAA Medications Despite their Chronic HCV

Here, the named plaintiff's claims share the same essential characteristics as those of the other class members. All suffer the risk of liver-disease-related injury, liver cancer, and extrahepatic health effects because Defendants withhold DAA medication from them, and seek an injunction requiring a policy change to match the standard of care that would benefit every class member. *See Postawko*, 910 F.3d at 1039 (8th Cir. 2018); *Hoffer*, 323 F.R.D. at 697.

First, Roppolo has diagnosed chronic HCV, as do all other members of the General Class, has no medical conditions that would contraindicate DAA therapy, does not require a liver transplant, and does not have a short life expectancy.[29]  Like all other members of the class, Mr. Roppolo is denied DAA therapy as a result of Defendants' policy and practice of rationing that medication.

### B. Individual Differences in Medical Conditions Do Not Defeat Typicality

As with commonality, individual differences in medical conditions will not defeat a finding of typicality. In its *Parsons* opinion, decided after *Wal-Mart*, the Ninth Circuit affirmed certification of a prisoner class seeking an injunction to remedy Eighth Amendment violations from inadequate access to medical care. The Court made short shrift of the State's argument that typicality should be defeated by individual differences in prisoner medical conditions and health care treatment:

> It does not matter that the named plaintiffs may have in the past suffered varying injuries or that they may currently have different health care needs; Rule 23(a)(3) requires only that their claims be "typical" of the class, not that they be identically positioned to each other or to every class member.

---

[29] Ex. 1, Declaration of Dr. Stacey Trooskin, pp. 22–23, Section VIII.

*Parsons v. Ryan*, 754 F.3d 657, 685–6 (9th Cir. 2014). *See also Cole v. Livingston*, No. 4:14-cv-1698, 2016 WL 3258345, *8 (S.D. Tex. June 14, 2016) *aff'd sub nom at Yates*, 868 F.3d 354.[30]

Nearly identical putative classes showed typicality in *Postawko* and *Hoffer*. In *Postawko*, the court noted that "the potential for minor 'factual variations; does not undermine the district court's conclusion that the violation allegedly suffered by the Named Plaintiffs is typical of that suffered by the class as a whole." *Postawko v. Missouri Dep't of Corr.*, 910 F.3d 1030, 1039 (8th Cir. 2018). Likewise, the court in *Hoffer* found that "Plaintiffs' claims are based on the same legal theories as the class's claims, and Plaintiffs are not in a markedly different factual position than other class members." *Hoffer v. Jones*, 323 F.R.D. 694, 699 (N.D. Fla. 2017). The minor differences between individual class members in this case are irrelevant, because this case only seeks injunctive relief. *Postawko*, 910 F.3d at 1039; *Hoffer*, 323 F.R.D. at 699.

Indeed, courts have even found typicality when certifying class actions under the far more stringent standard of Rule 23(b)(3), which requires an additional showing that common issues predominate (but that Plaintiffs do not seek here). *See, e.g., Klein v. O'Neal, Inc.*, 222 F.R.D. 564, 568 (N.D. Tex. 2004) (Buchmeyer, J.). In *Klein*, the Court certified a product liability injury class action under Rule 23(b)(3) and specifically rejected the defendants' argument that the individual details of each plaintiff's injuries and damages precluded a finding of typicality or a finding that common issues predominated:

> Typicality exists when the class representatives' claims arise from the same event or course of conduct and are based on the same legal or remedial theories as those of the class. Individual variations among class members' claims with respect to individual causation, medical history, general health, extent of injury, or damages, do not defeat typicality, provided that the claims arise from the same events or course of conduct and are based on the same legal theories.

---

[30] In *Cole/Yates*, TDCJ did not challenge the district court's typicality determination on appeal.

* * *

> Common questions predominate over questions affecting individual class members. While there may be variations in the amounts of damages, each class member was injured by a singular course of action by Defendants. Individual damage amounts may involve proof of the individual circumstances of each class member, but many of the same facts will apply to each class member's damage claims, and the elements of damages for each individual plaintiff will involve proof of common questions.

*Id.* at 567-8.

Similarly, in evaluating class certification for a class of plaintiffs who suffered physical injury from oil refinery emissions, a Louisiana District Court rejected the defendant's argument that a finding of typicality could be defeated by the individual variances in the medical conditions of the named plaintiffs and class members. *Nola v. Exxon Mobil Corp.*, 2015 WL 2338336, at *5 (M.D. La. May 13, 2015).

These holdings are consistent with the well-established principle that a finding of typicality does not require a showing that all class members have suffered (or will suffer) the same injury. *See, e.g.*, *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), *cert. denied*, 506 U.S. 1051 (1993) ("[W]e have not previously interpreted Rule 23(a)(3) to require all class members suffer the same injury as the named class representative. Instead, we look to the defendant's conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3).") Indeed, if an identical injury (or risk of injury) were required, courts could never certify a class involving defective medical devices or toxic prescription drugs, among many other common consumer class actions.

Here, the typicality requirement has been satisfied. All class members, including the named Plaintiffs, seek the same relief based on the same legal theory to remedy the same risk arising from the same conduct: denial of DAA medications, despite diagnosed chronic HCV, pursuant to Defendants' policy and practice.

### C.  Plaintiff's ADA and Rehabilitation Act Claims Satisfy the Typicality Requirement

Roppolo is a person with disabilities under the meaning of the ADA and Rehabilitation Act, and his claims are typical of the class's and subclass's claims because the basis of their claims are that they have a disability and that the Defendants failed to accommodate the disability. *See, e.g.*, *Cole v. Livingston*, No. 4:14-cv-1698, 2016 WL 3258345, *8 (S.D. Tex. June 14, 2016) *aff'd sub nom at Yates*, 868 F.3d 354; *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 187 (3d Cir. 2010) (collecting similar holdings in the 7th, 8th, and 11th Circuits and holding that a medication's side effect can be a "physical impairment," and can therefore create a disability, if the medication is "required in the 'prudent judgment of the medical profession'"); *Luedecke v. Tenet Healthcare Corp.*, No. 3:14-CV-1582-B, 2015 WL 3867793, at *4 (N.D. Tex. June 23, 2015) (holding that a disability was pleaded for chronic pain caused by a variety of disorders because the pain restricted mobility, flexibility, thinking, sleeping, and other activities); *Martin v. St. Luke's Episcopal Hosp.*, No. CIV.A. H-13-0718, 2014 WL 4810303, at *7 (S.D. Tex. Sept. 23, 2014) (denying a motion for summary judgment because plaintiff had shown a dispute of fact as to whether her high blood pressure amounted to a disability); 28 C.F.R. § 36.104(iii) ("The phrase physical or mental impairment includes, but is not limited to . . . cancer, heart disease, diabetes, . . . emotional illness, . . . tuberculosis, drug addiction, and alcoholism . . . .").

Courts regularly find the typicality requirement satisfied in certifying classes of prisoners asserting Rehabilitation Act claims. *Cole v. Livingston*, No. 4:14-CV-1698, 2016 WL 3258345, at *8 (S.D. Tex. June 14, 2016), *aff'd sub nom Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017); *Hernandez v. County of Monterey*, 305 F.R.D. 132, 158 (N.D. Ca. 2015); *Bumgarner v. N.C. D.O.C.*, 276 F.R.D. 452, 457 (E.D. N.C. 2011). In certifying an ADA prisoner class, the *Bumgarner* court held as follows:

> Turning to the Rule 23(a)(3) typicality requirement, this requirement is met where the claim "arises from the same event or course of conduct which gives rise to the claims of other class members and is based on the same legal theory." *See Haywood,* 109 F.R.D. at 578. The focus on the inquiry for this requirement is whether the plaintiffs and each member of the class "have an interest in prevailing on similar legal claims." *Id.* Here, the claims of the class representatives and the proposed class all arise from the same operative facts in that they all suffer the same injury as a result of [the prison]'s policies and procedures . . . .

*Bumgarner*, 276 F.R.D. at 457.

The same is true of the disability class here. *See Cole*, 2016 WL 3258345, *8, *aff'd sub nom at Yates*, 868 F.3d 354.

## VII.   THE CLASS AND SUBCLASSES MEET THE ADEQUACY OF REPRESENTATION REQUIREMENT IN RULE 23(A)(4).

In assessing Rule 23(a)(4)'s adequacy requirement, courts consider "[1] the zeal and competence of the representatives' counsel and…[2] the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Stirman v. Exxon Corp*., 280 F.3d 554, 563 (5th Cir. 2002) (punctuation omitted). In analyzing the second factor related to the representatives' role in the litigation, the focus is on whether there are "intraclass conflicts" between the class representatives and others in the class. *In re Heartland Payment Systems, Inc. v. Customer Data Sec. Breach Litigation*, 851 F. Supp. 2d 1040, 1056 (S.D. Tex. 2012) (J. Rosenthal). A class representative must "possess the same interest and suffer the same injury as the class members." *Id.* This "injury and interest" requirement is a much more important factor than the representative's willingness or ability to control litigation because often "individual class members cannot plausibly be expected to have significant involvement." *Id.*

Here, the adequacy requirement is easily met. Plaintiffs' counsel from Edwards Law Group have significant experience litigating cases against Defendants relating to TDCJ, UTMB, and

26

CMHCC policies, including wrongful death cases in the Northern, Western, Eastern, and Southern Districts of Texas.[31] Counsel from Edwards Law Group were found adequate to represent the class in *Cole/Yates*, where they zealously advocated for their clients and achieved "extraordinary results" for a class of prisoners. *See Cole*, 2016 WL 3258345, *8, *aff'd sub nom at Yates*, 868 F.3d 354; and *Cole v. Collier*, No. 4:14-cv-1698, 2018 WL 2766028, *2–3, 6 & 11 (S.D. Tex. June 8, 2018) (describing settlement achieved, and citing Edwards Law's "substantial experience litigating civil rights and other complex cases," and that Edwards Law was "unstinting in their efforts and unsparing in their financial commitments," and "creative and articulate advocates for the rights of Class members"). This court lauded the attorneys at Edwards Law as "highly skilled," and praised their work on behalf of prisoners as "sav[ing] lives, redress[ing] illness, reduc[ing] misery, achiev[ing] constitutionality, and do[ing] justice." *Cole v. Collier*, No. 4:14-cv-1698, 2018 WL 2766028, *16 (S.D. Tex. June 8, 2018). In addition to their work on the *Cole/Yates* class action, counsel from Edwards Law have extensively litigated related cases, and been successful class counsel on other cases. *See Opperman v. Kong Tech., Inc.*, No. 13-CV-00453-JST, Doc. 925 (N.D. Cal. Mar. 27, 2018) (entering judgment and awarding attorneys' fees to Edwards Law Group as class counsel in multi-party privacy class action).[32]

Additionally, there are no conflicts among the classes, and the class representatives will be as active as they can be as prisoners.

## VIII. THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(B)(2).

Rule 23(b)(2) authorizes a class action where "the party opposing the class has acted or

---

[31] *Hinojosa v. Livingston*, 2:13-CV-319 (S.D. Tex); *Webb v. Livingston*, No. 6:13-cv-711 (E.D. Tex); *McCollum, et al. v. Livingston,* 3:12-cv-02037 (N.D. Tex.); *Martone v. Livingston, et al*, No. 4:13-cv-03369 (S.D. Tex.).

[32] *See generally* Ex. 17, Declaration of J. Edwards.

refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. PROC. 23(b)(2). Plaintiffs meet the requirements of Rule 23(b)(2). As the Supreme Court explained in *Wal-Mart*, the key question is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 131 S.Ct. at 2557; *Yates*, 868 F.3d at 366-67.

Plaintiffs' claims for injunctive relief based on allegedly unconstitutional conditions of confinement and policies that intentionally provide incorrect medical care are the quintessential type of claims that Rule 23(b)(2) was meant to address. *Yates*, 868 F.3d at 368 ("All inmates … are subject to the *same* policy on climate control …, all have the *same* heat-mitigation measures available to them …, and all are (allegedly) harmed in essentially the *same* way …. Thus, the same action/inaction by [TDCJ is] the source of any injury for the entire general class and subclasses") (emphasis in original). *See also Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) (Rule 23(b)(2) was designed to permit prosecution of civil rights actions); A. Conte and H. Newberg, NEWBERG ON CLASS ACTIONS § 25.20 (5th ed. 2011) (same). As discussed above, the Plaintiff's claims—that the Defendants' policy and practice of refusing DAA medications—apply to all class and subclass members. The proposed injunction meets the specificity requirement of Rule 65(d) because it would be tethered to an objective diagnosis and an existing standard of care that is widely applied by medical providers throughout the United States, and would not be abstract. *See Postawko*, 910 F.3d at 1036, 1040 (upholding 23(b)(2) class certification where proposed injunction would prohibit "delaying or denying DAA drug treatment to class members for any nonmedical reason"). In addition, the proposed remedies in this case do not involve or require the

tailoring of remedies to particular class members—barring a medical complication, all the putative class members require the same medical treatment with the same type of drug. Rather, the conditions of confinement and policies prescribing incorrect treatment affect all of the class as a whole, and the proposed injunction addressing the Defendants' policies on DAA medications would prescribe "a standard of conduct applicable to all class members."

*Postawko* and *Hoffer* were nearly identical Rule 23(b)(2) classes of inmates with chronic HCV seeking injunctive relief so that prisons would adopt HCV practices that comported with the standard of care by providing DAA medications to all inmates with chronic HCV. *See Postawko*, 910 F.3d at 1039–1040; *Hoffer v. Jones*, 323 F.R.D. 694, 699 (N.D. Fl. 2017). Both courts concluded that the policy was suitable to class-wide injunctive relief under Rule 23(b)(2). *Id.* The Fifth Circuit affirmed certification of a Rule 23(b)(2) class, using the same reasoning, that aimed to change a policy of housing inmates without air conditioning during the summer. *See Yates*, 868 F.3d at 368.

Other courts have similarly classified 23(b)(2) classes in other unconstitutional conditions of confinement cases. In *Parsons v. Ryan*, 754 F.3d 657, 662 (9th Cir. 2014), the Ninth Circuit affirmed certification of an injunctive class challenging the adequacy of prisoner medical care, as the harm arose from generally applicable health care policies and practices. In *Hughes v. Judd*, 2013 WL 1821077 (M.D. Fla. Mar. 27, 2013), *adopted by,* -- F.Supp.2d --, 2013 WL 1810806 (M.D. Fla. April 30, 2013), the district court certified a class of juvenile inmates challenging jail policies and practices relating to mental health care and punitive use of isolation. Even though plaintiffs were diagnosed with different mental health conditions, the court found that they were seeking to enjoin the same allegedly unconstitutional policies and practices, and therefore certified the class and sub-classes with respect to each of plaintiffs' claims. 2013 WL 1821077, at *23-24.

In each case, these courts concluded that the resolution of class members' claims hinged on defendants' standardized conduct, which could be enjoined or declared unlawful only as to all of the class members or as to none of them. *See e.g. Butler v. Suffolk County*, 289 F.R.D. 80 (E.D.N.Y. 2013) (certifying class and facility-wide sub-classes of county jail inmates challenging policies and practices); *Henderson v. Thomas*, 289 F.R.D. 506 (M.D. Ala. 2012) (certifying class of HIV positive inmates challenging prison policies of segregation, discriminatory treatment based on disability, and disparate punishment); *Olson v. Brown*, 284 F.R.D. 398 (N.D. Ind. 2012) (certifying class of inmates challenging jail policies of inadequate grievance procedures, inadequate law library access, and mail opening and delivery procedures); *Rosas v. Baca*, 2012 WL 2061694 (C.D.Ca. June 7, 2012) (certifying class of inmates subject to jail policies and practices regarding deputy-on-inmate and inmate-on-inmate violence).

Just like these cases, Plaintiffs are challenging a policy that is applied to the entire TDCJ system and results in a widespread practice of withholding medication from over 18,000 people who should be receiving it. This policy and practice, and seeking injunctive relief to fix it, is plainly "respecting the class as a whole" and should be certified. FED. R. CIV. P. 23(b)(2).

## IX.    THE COURT SHOULD APPOINT THE PROPOSED CLASS COUNSEL PURSUANT TO RULE 23(G).

Federal Rule of Civil Procedure 23(g) requires that the court appoint class counsel for any class that is certified. FED. R. CIV. PROC. 23(g)(1). Class counsel must "fairly and adequately represent the interests of the class." FED. R. CIV. PROC. 23(g)(1)(B). The factors to be considered in appointment of class counsel include: 1) "the work counsel has done in identifying or investigating potential claims in this action;" 2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" 3) "counsel's knowledge of the applicable law;" and 4) "the resources that counsel will commit to representing the class."

FED. R. CIV. PROC. 23(g)(1)(A).

Each of the undersigned attorneys satisfies these four requirements. First, Plaintiff's counsel have been interviewing plaintiff and class members, performing relevant legal research and drafting, and working together to investigate the facts and legal claims herein. Second, Plaintiff's counsel, Edwards Law Group, has extensive experience in precisely this type of claim (as described at *supra* pp. 26–27). Third, Plaintiff's counsel have significant experience in litigating civil rights actions for prisoners and other institutionalized persons.[33] Fourth, Plaintiffs' counsel has and will continue to contribute significant resources to the representation of this class, individually and jointly. *Id.* Plaintiff's counsel have built strong and effective relationships with the named plaintiff and numerous class members. *Id.* Counsel has already retained highly qualified experts and are prepared to undertake the necessary litigation expenses on behalf of the proposed class. *Id. See also* Ex. 1, Decl. of Dr. Trooskin. Therefore, plaintiffs' counsel satisfies the four criteria in Rule 23(g), and they respectfully request appointment as class counsel.

## X.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court certify the proposed class and sub-class pursuant to Federal Rule of Civil Procedure 23.

---

[33] Ex 17, Declaration of Jeff Edwards, pp. 5–13.

Respectfully submitted,

EDWARDS LAW GROUP
The Haehnel Building
1101 East 11th Street
Austin, TX 78702
       Tel.    512-623-7727
       Fax.    512-623-7729

By     /s/ Jeff Edwards
JEFF EDWARDS
State Bar No. 24014406
Attorney-in-Charge
Scott Medlock
State Bar No. 24044783
Michael Singley
State Bar No. 00794642
David James
State Bar No. 24092572
Federal ID No. 2496580

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Southern District of Texas.

By     /s/ Jeff Edwards
JEFF EDWARDS