**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | |
|---|---|
| **MATHEW ROPPOLO AND DA-NA ALLEN,** | |
|      ***Plaintiffs***, | |
| | **C.A. No. 2:19-CV-00262** |
| **v.** | |
| **DR. LANNETTE LINTHICUM, ET AL.,** | |
|      ***Defendants***. | |

**DEFENDANTS' MOTION TO DISMISS [DKT. NO. 35]**

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General For
Civil Litigation

SHANNA E. MOLINARE
Division Chief
Law Enforcement Defense Division

*/s/ Eric A. Hudson*
ERIC A. HUDSON*
Assistant Attorney General
Texas State Bar No. 24059977
Southern District ID No. 1000759
eric.hudson@oag.texas.gov

COURTNEY BROOKE CORBELLO*
Assistant Attorney General
Texas State Bar No. 24097533
Southern District ID No. 3089117
*courtney.corbello@oag.texas.gov*

AMY L. PRASAD*
Assistant Attorney General
Texas State Bar No. 24037295
Southern District No. 563045
*Amy.Prasad@oag.texas.gov*

TRENT PEROYEA*
Assistant Attorney General
Texas State Bar No. 24098245
Southern District No. 3134657
*trent.peroyea@oag.texas.gov*

**\*ATTORNEY OF RECORD – COUNSEL FOR DEFENDANTS**

TABLE OF CONTENTS

Table of Authorities .................................................................................................... iv

Glossary of Terms....................................................................................................... xii

Statement of the Case ...................................................................................................5

    I.     HCV Policy B-14.13.3 provides a baseline for the individualized treatment decisions of prison medical providers. ........................................................................................5

        A.   The CMHCC serves a statutorily-defined role.............................................................5

        B.   HCV Policy B-14.13.3 prescribes continued screening, monitoring, and treatment of offenders on an individualized basis. ..............................................................5

        C.   HCV Policy B-14.13.3 outlines the testing and continued monitoring of HCV-positive offenders. ............................................................................................................ 6

    II.    Procedural Background. ............................................................................................. 8

Argument and Authorities ............................................................................................ 8

    I.     Standard of review...................................................................................................... 8

        A.     Federal Rule of Civil Procedure 12(b)(1) ............................................................. 8

        B.     Federal Rule of Civil Procedure 12(b)(6) ............................................................. 9

    II.    Because Plaintiff Roppolo has received and completed his DAA treatment, his claims are moot.......................................................................................................................10

    III.   *Ex Parte Young* Does Not Abrogate Individual, Official-Capacity Defendants' Eleventh Amendment Immunity Where Plaintiffs Fail to Identify a Federal Right that is Being Continuously Violated. ................................................................................12

    IV.   Because the CMHCC cannot redress Plaintiffs' purported injuries, this Court lacks standing over Plaintiffs' claims against the CMHCC; alternatively, the CMHCC is not a jural entity with the capacity to sue and be sued.....................................................14

        A.   This Court lacks standing over Defendants that cannot redress Plaintiffs' purported injuries. ............................................................................................................14

B.    The CMHCC and its officials lack the capacity to sue or be sued. ...........................16

V.    Plaintiffs have failed to state a claim under the Eighth Amendment, the ADA or the RA.................................................................................................................................17

A.    The Amendments to the United States Constitution are not medical malpractice statutes. ...........................................................................................................................18

B.    Similarly, Plaintiffs' attempts to federalize medical malpractice under the ADA and RA should be rejected; alternatively, the ADA and RA claims asserted fail because Plaintiffs failed to include sufficient factual matter to state a plausible claim. ..........20

1.    Plaintiffs' complaint lacks facts sufficient to demonstrate a qualifying disability under either the ADA or the RA.......................................................................21

2.    Mandating a preferred treatment regime is not a reasonable accommodation. . 24

3.    Plaintiffs do not point to any practical effect of exclusion they are experiencing so as to prove intentional discrimination.................................................................27

Conclusion .................................................................................................................... 29

Notice of Electronic Filing........................................................................................... 30

Certificate of Service.................................................................................................... 30

## TABLE OF AUTHORITIES

### <u>Cases</u>

*Alabama v. Pugh*,
   438 U.S. 781 (1978) ................................................................................................ 4

*Allen v. Johnson*,
194 Fed. Appx. 204 (5th Cir. 2006)……………………………………………………...19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................ 9

*Back v. Texas Dep't of Criminal Justice Institutional Div*.,
   684 Fed. Appx. 356 (5th Cir. 2017) ...................................................................... 28

*Ball v. LeBlanc*,
   792 F.3d 584 (5th Cir. 2015)..................................................................................23

*Barrie v. Nueces Cnty. Dist. Attorney's Office*,
   753 Fed. Appx. 260, 2018 WL 5095824 (5th Cir. Oct. 17, 2018) ........................16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................ 9

*Bell v. Wolfish*,
   441 U.S. 520 (1979) ..............................................................................................16

*Bragdon v. Abbott*,
   524 U.S. 624 (1998) ..............................................................................................22

*Bryant v. Madigan*,
   84 F.3d 246 (7th Cir. 1996) ...................................................................... 20, 26

*Burger v. Bloomberg*,
   418 F.3d 882 (8th Cir. 2005) ................................................................................ 20

*Burling v. Jones*,
  CV H-16-0868, 2017 WL 384364 (S.D. Tex. Jan. 24, 2017) ................................................... 20

*Cadena v. El Paso County*,
  *EP16CV00209FMRFC, 2018 WL 835210 (W.D. Tex. Feb. 12, 2018)* .........................................19

*Crow v. Mbugua*,
  CV H-17-1923, 2018 WL 5847410 (S.D. Tex. Nov. 8, 2018) ................................................... 20

*Darby v. Pasadena Police Dep't*,
  939 F.2d 311 (5th Cir. 1991) ................................................................................................ 16, 17

*Davidson v. Texas Dep't of Criminal Justice*,
  91 F. App'x 963, 2004 WL 542206 (5th Cir. 2004) ................................................................21

*Duncan v. Univ. of Texas Health Sci. Ctr. at Houston*,
  469 Fed. Appx. 364 (5th Cir. 2012) ......................................................................................... 22

*Ex parte Young*,
  209 U.S. 123 (1908) ...............................................................................................12, 13, 14

*Fitzgerald v. Corr. Corp. of Am.*,
  403 F.3d 1134 (10th Cir. 2005) ...............................................................................................3, 26

*Flaming v. UTMB*, No. H-15-2222,
  CV H-15-2222, 2016 WL 727941 (S.D. Tex. Feb. 24, 2016)................................................... 20

*Garrett v. Thaler*,
  560 Fed. Appx. 375 (5th Cir. 2014) .........................................................................................21

*Garza v. City of Donna*, 7:16-CV-00558,
  CV 7:16-CV-00558, 2017 WL 2861456 (S.D. Tex. July 5, 2017)................................................25

*Gates v. Cook*,
   376 F.3d 323 (5th Cir. 2004) .......................................................................... 15, 16

*Gibson v. Collier*,
   920 F.3d 212 (5th Cir.2019) ........................................................................ passim

*Gobert v. Caldwell*,
   463 F.3d 339 (5th Cir. 2006) ........................................................................2, 19, 20

*Grumbles v. Livingston*,
   706 F. App'x 818 (5th Cir. 2017)...................................................................... 2, 20

*Grzan v. Charter Hosp. of Northwest Indiana*,
   104 F.3d 116 (7th Cir. 1997).................................................................................. 20

*Guthrie v. Niak*,
   CV H-12-1761, 2017 U.S. Dist. LEXIS 28181, *38 (S.D. Tex. Feb. 28, 2017)…………………...25

*Hale v. King*,
   642 F.3d 492 (5th Cir. 2011)..............................................................................23, 24

*Hall v. Tex. Comm'n on Law Enf't.*,
   685 F. App'x 337 (5th Cir. 2017) ........................................................................ 13

*Hay v. Thaler*,
   470 F. App'x 411, 2012 WL 2086453 (5th Cir. 2012) ....................................21

*Hendrix v. Lloyd Aschberger, P.A.*,
   689 F. App'x 250 (5th Cir. 2017) ...................................................................... 2, 20

*Hood v. Collier*,
   CV 3:18-CV-0295, 2019 WL 3412440 (S.D. Tex. July 29, 2019)............................ 20

*Hooks v. Landmark Indus., Inc.*,
   797 F.3d 309 (5th Cir. 2015) .................................................................................. 8

*Inclusive Cmty. Project, Inc. v. Lincoln Prop. Co.*,
    920 F.3d 890 (5th Cir. 2019) ............................................................................... 6

*Jin Choi v. Univ. of Texas Health Sci. Ctr. at San Antonio*,
    633 Fed. Appx. 214 (5th Cir. 2015) ..................................................................25

*Kiman v. N.H. Dep't of Corr.*,
    451 F.3d 274 (1st Cir. 2006) ............................................................................ 20

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004) ..........................................................................................10

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010) ............................................................................ 9

*Marshall v. LeBlanc*,
    CV 18-13569, 2019 WL 2090844 (E.D. La. Mar. 6, 2019) ....................................2, 19

*Massachusetts v. EPA*,
    549 U.S. 497 (2007)..........................................................................................10

*McCarthy ex rel. Travis v. Hawkins*,
    381 F.3d 407 (5th Cir. 2004) ............................................................................ 4

*Meyers ex rel. Benzing v. Texas*,
    410 F.3d 236 (5th Cir. 2005) ..............................................................................3

*Miraglia v. Bd. of Supervisors of Louisiana State Museum*,
    901 F.3d 565 (5th Cir. 2018) ........................................................................... 28

*Moss v. Harris County Constable Precinct One*,
    851 F.3d 413 (5th Cir. 2017) ........................................................................... 22

*Neely v. PSEG Texas, Ltd. P'ship*,
   735 F.3d 242 (5th Cir. 2013) ................................................................................. 22

*Norton v. Dimazana*,
   122 F.3d 286 (5th Cir. 1997) ............................................................................... 1, 18

*Nottingham v. Richardson*,
   499 Fed. Appx. 368 .................................................................................. 13, 20, 25

*Oaxaca v. Roscoe*,
   641 F.2d 386 (5th Cir. 1981) ................................................................................... 9

*Okpalobi v. Foster*,
   244 F.3d 405 (5th Cir. 2001) ........................................................................... 15, 16

*Oliver v. Scott*,
   276 F.3d 736 (5th Cir. 2002) ................................................................................. 12

*Olmstead v. L.C. ex rel. Zimring*,
   527 U.S. 581 (1999) ............................................................................................... 27

*Plotkin v. IP Axess Inc.*,
   407 F.3d 690 (5th Cir. 2005) ................................................................................... 9

*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001) ................................................................................... 8

*Renne v. Geary*,
   501 U.S. 312 (1991) ............................................................................................... 10

*Rivera v. Lawson*, 2:18-CV-19,
   CV 2:18-CV-19, 2019 WL 4602957 (S.D. Tex. Apr. 12, 2019) ................................. 26

*Rowan Court Subdivision 2013 Ltd. P'ship v. Louisiana Hous. Corp.*,
   749 Fed. Appx. 234 (5th Cir. 2018) ....................................................................... 13

*Roy v. Lawson*, 2:17-CV-9,
    CV 2:17-CV-9, 2018 WL 1054198 (S.D. Tex. Feb. 26, 2018) .................................... 26

*Salinas v. Tex. Workforce Comm'n*,
    573 F. App'x 370 (5th Cir. 2014) (per curiam....................................................13, 15

*Schiavo ex rel. Schindler v. Schiavo*,
    403 F.3d 1289 (11th Cir. 2005) ............................................................................25

*Sullivan v. Leor Energy, LLC*,
    600 F.3d 542 (5th Cir. 2010) ................................................................................ 9

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ............................................................................................15

*Tennessee v. Lane*,
    541 U.S. 509 (2004) ........................................................................................... 28

*Toyota Motor Mfg., Ky. v. Williams*,
    534 U.S. 184 (2002) ........................................................................................... 24

*Vasquez v. Morgan*,
    CV H-18-3978, 2019 WL 2393428 (S.D. Tex. June 6, 2019) .................................... 20

*Verizon Maryland, Inc. v. Pub. Serv. Com'n of Maryland*,
    535 U.S. 635 (2002) ............................................................................................13

*Voisin's Oyster House v. Guidry*,
    799 F.2d 183 (5th Cir. 1986) ..................................................................................3

*Walls v. Texas Dept. of Criminal Justice*,
270 Fed. Appx. 358, 359 (5th Cir. 2008)…………………………………………………27

*Warth v. Seldin*,
    422 U.S. 490 (1975) ...................................................................................10

*Watters v. Montgomery Cty. Emergency Commc'n Dist.*,
    129 F.3d 610 (5th Cir. 1997) ....................................................................... 22

*Whiting v. Kelly*,
    255 Fed. Appx. 896, 899 (5th Cir. 2007)…………………………………………………19

*Withers v. Roger Soloway, M.D.*,
    CV 3:17-CV-0119, 2018 WL 8801417 (S.D. Tex. Aug. 27, 2018) ............................................... 2

*Woods v. Tex. Dep't of Criminal Justice*, No. CC-06-222,
    CV CC-06-222, 2008 WL 189562 (S.D. Tex. Jan. 18, 2008)...............................................21, 27

*Yarls v. Bunton*,
    905 F.3d 905 (5th Cir. 2018) ...........................................................10, 11, 12

*Ynclan v. Dep't of Air Force*,
    943 F.2d 1388 (5th Cir. 1991) ....................................................................... 9

## Statutes

42 U.S.C. § 12102(1)(A) .............................................................................21

42 U.S.C. § 12102(1)(B)-(C) .........................................................................21

42 U.S.C. § 12112(b)(5)(A)..........................................................................25

42 U.S.C. § 12132 .....................................................................................24

Article III of the United States Constitution ........................................................ 9

TEX. AGRIC. CODE § 58.022(2)........................................................................17

TEX. AGRIC. CODE § 60.060(a)........................................................................17

TEX. BUS. ORGS. CODE § 101.605(1)................................................................17

TEX. EDUC. CODE § 22.08-App.(b) ................................................................17

TEX. EDUC. CODE § 45.152(b) ....................................................................17

TEX. GOV'T CODE § 81.014 ........................................................................17

TEX. GOV'T CODE § 501.131 .......................................................................15

TEX. GOV'T CODE § 501.133 ...................................................................5, 14

TEX. GOV'T CODE § 501.141 ...................................................................5, 14

TEX. GOV'T CODE § 501.142 ...................................................................5, 14

TEX. GOV'T CODE § 501.146 ...................................................................5, 15

TEX. GOV'T CODE § 501.147 ...................................................................5, 17

TEX. GOV'T CODE § 501.147(b)(5) ...............................................................17

TEX. GOV'T CODE § 501.131-156 ................................................................17

TEX. GOV'T CODE § 1232.067(3) .................................................................17

TEX. LOC. GOV'T CODE § 327.161 ...............................................................17

## Rules

Federal Rule of Civil Procedure 12(b)(1) .................................................. ii, 8

Federal Rule of Civil Procedure 12(b)(6)............................................ ii, 3, 9, 16

Federal Rule of Civil Procedure 9(a) .........................................................16

## Regulations

28 C.F.R. §35.130................................................................................ 24

## GLOSSARY OF TERMS

1. ADA – Americans with Disabilities Act

2. APRI – Asparte Aminotransferase to Platelet Ratio Index is considered a simple and noninvasive method to roughly analyze the risk of hepatic fibrosis or in general advanced liver damage

3. CMHC – Correctional Managed Healthcare; Program that provides comprehensive health care services to adult offenders incarcerated in Texas prison and state jail facilities.

4. CMHCC – Correctional Managed Healthcare Committee

5. DAA – Direct-acting Antiviral drugs are combinations of drugs designed to treat HCV

6. Defendants – All named parties listed in ¶¶ 6-18 of Plaintiffs' *Third Amended Complaint*

7. HCV – Hepatitis C

8. METAVIR – The METAVIR score is a tool used to evaluate the severity of fibrosis seen on a liver biopsy sample from a person who has Hepatitis C

9. Plaintiffs – Matthew Roppolo, Da-Na Allen, Johnny Cook, and Victor Valdez

10. RA – Rehabilitation Act

11. TDCJ – Texas Department of Criminal Justice

12. TTUHSC - Texas Tech University Health Sciences Center

13. UTMB – The University of Texas Medical Branch at Galveston

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | |
|---|---|
| MATHEW ROPPOLO AND DA-NA ALLEN,<br>          *Plaintiffs*,<br><br>v.<br><br>DR. LANNETTE LINTHICUM, ET AL.,<br>          *Defendants*. | C.A. No. 2:19-CV-00262 |

**DEFENDANTS' MOTION TO DISMISS [DKT. NO. 35]**

**To The Honorable United States District Court Judge Nelva G. Ramos—**

Plaintiffs' suit turns on disagreements over whether Defendants' current HCV treatment policies (prioritization of treatment related to disease progression) should automatically trigger delivery of DAA medication the moment an inmate is diagnosed with HCV. Plaintiffs' lawsuit, thus, is nothing more than an impermissible attempt to constitutionalize and federalize a meritless medical malpractice claim travelling under the pretense that Defendants did not and do not treat Plaintiffs' HCV correctly. Plaintiffs' requested relief makes that clear. *See* Dkt. No. 35 at Section VII. Prayer for Relief, ¶ C.  (explaining that Plaintiffs want this Court to "[p]ermanently enjoin Defendants to require them to provide [Plaintiffs and a putative class] with a complete course of DAA drug treatments").

But the Fifth Circuit teaches that "[d]isagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir.2019) (quoting *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)). Plaintiffs incant the conclusory language of medical indifference by repeatedly suggesting they are being treated

incorrectly, but their claims are undercut by the fact that (a) Plaintiff Roppolo—a man who has lived with HCV since the 1990s[1]—*see* Dkt. No. 35 at ¶ 97—recently completed his course of DAA treatment, and (b) Plaintiffs Valdez, Cook, and Allen's current complaint is that they want DAA medication now, not the monitoring and prioritizing they currently receive.

Notably, Plaintiffs do not claim that a universal consensus of medical opinion rejects the kind of monitoring and prioritizing practices currently followed in the Texas prison system. *See Gibson*, 920 F.3d 221 (rejecting a claim of deliberate indifference where plaintiff could not show "consensus in the medical community about the necessity and efficacy of a particular course of treatment"). Instead, Plaintiffs disagree with the standard of care. But the standard of care does not dictate the outcome here.

"Standard of care" is not dispositive to deliberate indifference claims under the Eighth Amendment. *See, e.g.*, *Gobert v. Caldwell*, 463 F.3d 339, 349 (5th Cir. 2006) (explaining that "deliberate indifference exists wholly independent of an optimal standard of care"); *see also Marshall v. LeBlanc*, CV 18-13569, 2019 WL 2090844, at *3 (E.D. La. Mar. 6, 2019) (dismissing plaintiff's claim of deliberate indifference for denial of DAA medication because it amounted to a claim of medical malpractice, not deliberate indifference). That explains why the Fifth Circuit has recently upheld HCV treatment policies in the Texas prison system in the face of disagreement over decisions to continuously prioritize and treat rather than immediately provide DAA

---

[1] Plaintiff Roppolo's own diagnosis date in "the 1990s" and initial treatment in 2015 [Dkt. No. 35 at ¶97] demonstrates both that HCV is often a slow-moving disease susceptible to monitoring for decades and that Defendants offer DAA treatments to Texas offenders. That the infection can lay dormant for decades is borne out in the case law. *See, e.g.*, *Withers v. Roger Soloway, M.D.*, CV 3:17-CV-0119, 2018 WL 8801417, at *1 (S.D. Tex. Aug. 27, 2018) ("HCV can lie dormant for decades before the manifestation of any symptoms.").

medication. *See, e.g.*, *Grumbles v. Livingston*, 706 F. App'x 818, 819-20 (5th Cir. 2017); *Hendrix v. Lloyd Aschberger, P.A.*, 689 F. App'x 250, 250 (5th Cir. 2017).

Plaintiffs' ADA and RA claims fail for a similar reason: the ADA and RA are not federal medical malpractice statutes. *See, e.g.*, *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005).  Here, the named Plaintiffs do not demonstrate intentional discrimination as compared to others or seek an accommodation; rather, they seek their preferred medication over the treatment they currently receive.

Even if Plaintiffs' claims could survive a Rule 12(b)(6) challenge (they cannot), the claims also present jurisdictional defects. Namely, Plaintiff Roppolo has received the very medication that he seeks in this litigation, a fact that he concedes. *See* Dkt. No. 35 at ¶¶ 106-107.  Accordingly, Plaintiff Roppolo's claims against Defendants are moot.

Plaintiffs Valdez, Cook, and Allen, on the other hand, stand in Plaintiff Roppolo's stead, but like Plaintiff Roppolo, Plaintiffs Valdez, Cook, and Allen cannot explain how or why they have chosen to sue a constellation of apex-level state actors and entities for the sake of a case seeking only injunctive relief that directs specific medical treatment.

For example, Plaintiffs name both TDCJ and UTMB as parties to their § 1983 claims. That is improper because TDCJ and UTMB are not persons under § 1983 subject to suit over a claim of Eleventh Amendment immunity.[2] *See Voisin's Oyster House v. Guidry*, 799 F.2d 183, 188 (5th Cir. 1986). Presumably that is why Plaintiffs included official-capacity defendants: to invoke the *Ex parte Young* exception to Eleventh Amendment immunity. Assuming that is true, TDCJ and

---

[2] *Cf. Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 240-41 (5th Cir. 2005) ("'Eleventh Amendment immunity' is a misnomer, however, because that immunity is really an aspect of the Supreme Court's concept of state sovereign immunity and is neither derived from nor limited by the Eleventh Amendment.").

UTMB are entitled to Eleventh Amendment immunity, and all claims arising under § 1983 against them should be dismissed.

Similarly, the various members of the CMHCC sued in their official capacities represent a non-jural entity under state law. As such, neither the CMHCC nor its representatives are amenable to suit.

Further, Defendants recognize that *Ex parte Young*-style claims, if properly pleaded, can arise against official-capacity representatives under the ADA and RA—*see, e.g.*, *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 413 (5th Cir. 2004)—but retaining state agencies and official-capacity representatives is both redundant and unnecessary to this litigation. Further, the point of the *Ex parte Young* fiction is to permit a plaintiff to identify a person with a causal connection to a claim so that if a court entertains injunctive relief, the court can direct the person responsible for a violation to abide by the court's order. Here, Plaintiffs' kitchen-sink approach to pleading is an abuse of the *Ex parte Young* fiction.

To be sure, Plaintiffs cannot reasonably argue that, if successful in this case, 12 separate, apex-level defendants will be responsible for delivering a specific medical treatment to offenders at the unit level, or that those same defendants can adopt a one-size-fits-all approach to DAA treatment that otherwise overrides medical judgment. Even if this Court disagrees that this case should be dismissed in full, at a minimum, the Court should hold the Plaintiffs to their burden of identifying and naming only proper official-capacity representatives whose roles bear some relationship to the relief requested in this case. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (dismissing state entities from a suit seeking injunctive relief after explaining that "the question of a State's Eleventh Amendment immunity is not merely academic.").

Because Plaintiffs failed to state a claim under either the United States Constitution or any federal statute, this Court should follow the lead of numerous other district courts and the Fifth Circuit and decline Plaintiffs' invitation to step in and regulate medical decisions concerning HCV treatment.

STATEMENT OF THE CASE

I.  **HCV Policy B-14.13.3[3] provides a baseline for the individualized treatment decisions of prison medical providers.**

A.  **The CMHCC serves a statutorily-defined role.**

The CMHCC is a statutorily-created committee made up of members employed by TDCJ, UTMB, TTUHSC, employees of various Texas medical schools, and members of the public who are appointed by the governor. TEX. GOV'T CODE § 501.133. Members serve without compensation. *Id*. at § 501.141. The expenditures of the CMHCC come from TDCJ's budget, which is appropriated by the legislature. *Id*. at § 501.142. The role of the CMHCC is to "develop and approve a managed health care plan for all persons confined by the department[4] that: (1) specifies the types and general level of care to be provided to persons confined by the department; and (2) ensures continued access to needed care in the correctional health care system." *Id*. at § 501.146. The authority to contract for medical care lies exclusively with TDCJ, not CMHCC. *Id*. at § 501.147.

B.  **HCV Policy B-14.13.3 prescribes continued screening, monitoring, and treatment of offenders on an individualized basis.**

---

[3]  CORRECTIONAL MANAGED HEALTHCARE INFECTION CONTROL MANUAL, https://www.tdcj.texas.gov/divisions/cmhc/docs/cmhc_infection_control_policy_manual/B-14.13.03.pdf (last visited Feb. 7, 2020).

[4]  "Department" in this instance refers to the Texas Department of Criminal Justice. Government Code 491.001(a)(3).

The CMHCC coordinates standing and ad hoc joint committees to establish guidelines designed to "help gather necessary information for a provider to make appropriate clinical decisions about the management of each patient."[5] But the CMHCC anticipates that "[a]ll offenders with chronic [HCV] will be followed in chronic care clinic."

The CMHCC HCV Policy B-14.13.3 recommends that healthcare providers examine all offenders for known risk factors of HCV. Risk factors include—

- ➢ Injection drug use;
- ➢ Sharing personal items contaminated with blood, such as razors or toothbrushes;
- ➢ Unprotected sex; and,
- ➢ Unregulated tattooing.

HCV Policy B-14.13.3 further provides that offenders be tested for HCV once every 12 months at their request, and that such requests do not need to disclose any high-risk behaviors to qualify for testing.

### C. HCV Policy B-14.13.3 outlines the testing and continued monitoring of HCV-positive offenders.

Prevention through education and discouraging high-risk behavior is recommended, and high-risk behavior, such as needle sharing, should result in HCV testing of the individuals identified.

---

[5] The HCV guidelines on the diagnosis and treatment of HCV is available online. *See* HEPATITIS C POLICY, https://www.tdcj.texas.gov/divisions/cmhc/docs/cmhc_infection_control_policy_manual/B-14.13.03.pdf (last visited Nov. 18, 2019). The policy is referred to throughout the amended complaint and is central to the Plaintiffs' claims. Accordingly, the policy is appropriate extrinsic evidence for this Court to consider in this pleading-stage challenge, without transforming this pleading into a motion for summary judgment. *See Inclusive Cmty. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019). The information and quotes in this section derive from the policy found at the foregoing hyperlink.

Testing for HCV consists of two sequences. First, offenders are tested for HCV antibodies. If a test yields a positive result, further testing is performed to check for HCV RNA, a marker for HCV viremia. If HCV RNA is not present, then an inmate is not currently infected.

Inmates who are infected, however, receive baseline evaluations and management, which includes taking a targeting history, performing physical examinations looking for signs of advanced liver disease, and receiving a litany of baseline laboratory tests, as outlined by the Hepatitis C Policy.

Following the baseline testing, the infected offenders "must be enrolled in chronic care clinic and seen at least once every 12 months." Annual evaluations include examinations for signs or symptoms of liver disease, laboratory testing, and treating or addressing any other conditions or life-style choices known to accelerate liver fibrosis.

HCV Policy B-14.13.3 suggests that any inmate with an APRI of greater than 0.5 "be considered for referral to a designated HCV clinic or provider to be evaluated for possible treatment of HCV." HCV Policy B-14.13.3 cautions, however, that "[a]lmost all offenders with an APRI score over 0.5 should be referred" for further treatment "but the decision *must be individualized*." Even if further treatment is not initially recommended, "the offender should be followed in chronic care clinic and evaluated periodically to determine if treatment should be reconsidered."

For those offenders with an APRI score below the 0.5, HCV Policy B-14.13.3 provides that "provider may consider referral if they believe the patient may be a candidate for treatment." HCV Policy B-14.13.3 lists clinical considerations including patient history and conditions among the factors for providers to consider.

## II.      Procedural Background.

Plaintiff Matthew Roppolo filed this lawsuit on September 11, 2019, and amended to include class allegations shortly thereafter. *See* Dkt. Nos. 1, 3. Defendants have been served, and the Court has granted an extension of time to file this responsive pleading—*see* Dkt. No. 10—and also entered a briefing schedule for the pending class certification motion. *See* Dkt. No. 15.

After the entry of the briefing schedule, Plaintiff Roppolo amended his suit again to include another plaintiff, Mr. Allen, as a party to the litigation. Dkt. No. 18. Plaintiffs have amended their complaint for a third time to add Plaintiffs Cook and Valdez as parties to this litigation.[6] Dkt. No. 35. Plaintiffs' live pleading contains two claims. First, Plaintiffs contend that Defendants acted with deliberate indifference by not giving Plaintiffs their preferred medication, a medical deliberate indifference claim arising under the Eighth Amendment to the United States Constitution; and, secondly, Plaintiffs assert claims of intentional discrimination and failure to provide reasonable accommodations in the form of preferred medical treatments under the ADA/RA. *See* Dkt. No. 35.

### ARGUMENT AND AUTHORITIES

## I.      STANDARD OF REVIEW

### A.  Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). When the court lacks the statutory or constitutional power to adjudicate a case, the case is properly dismissed for lack of subject-matter jurisdiction. *See Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015). The burden of proof for a

---

[6] Plaintiffs have also substituted in Philip Keiser and Dee Budgewater in the place of their official capacity claims against Ben Raimer and Kelly Garcia, respectively. *Compare* Dkt. No. 18 at ¶¶ 7, 14 *with* Dkt. No. 35 at ¶ 9, 16.

Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

"A motion to dismiss for lack of subject matter jurisdiction may be decided by the district court on one of three bases: the complaint alone, the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ynclan v. Dep't of Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991). When the motion challenges the facts on which jurisdiction depends, the Court has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve the disputed jurisdictional facts. *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. 1981).

### B. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the Court must accept all factual allegations as true, the Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Ashcroft*, 556 U.S. at 679.

When reviewing a motion to dismiss for failure to state a claim, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star*

9

*Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010).

## II.   BECAUSE PLAINTIFF ROPPOLO HAS RECEIVED AND COMPLETED HIS DAA TREATMENT, HIS CLAIMS ARE MOOT.

The Supreme Court has developed standing doctrines to effectuate the case or controversy requirement established under Article III of the United States Constitution. Standing asks simply whether "a litigant is entitled to have a federal court resolve his grievance." *Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004). "This inquiry involves 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). The Supreme Court has concisely stated that this "irreducible constitutional minimum of standing" requires a litigant to "demonstrate that [he or she] has suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury." *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007). Here, the burden of establishing standing falls on Plaintiff Roppolo, the party seeking to invoke federal jurisdiction. *Renne v. Geary*, 501 U.S. 312, 316 (1991).

Standing, of course, must be maintained throughout the life of a case. *See Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Id.* In fact, "[no] matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Id.*

10

As noted in the introduction and throughout Plaintiffs' live pleading, this case turns on a disagreement over medical treatment and seeks prospective relief in the form of a specific medical treatment—DAA drugs. *See* Dkt. No. 35 at ¶ 170. But Plaintiff Roppolo got what he wanted and concedes as much in his live pleading. *See* Dkt. No. 35 at ¶ 106 (". . . Defendants [began providing] Mr. Roppolo with DAA treatment . . . about October 30, 2019."). Further, Plaintiffs assert that, "Mr. Roppolo's treatment with DAA drugs is currently ongoing and has not been completed." *See* Dkt. No. 35 at ¶ 107. But as of, January 21, 2020, Mr. Roppolo completed his DAA treatment. *See* Exhibit A. Roppolo was seen by a provider in the Hepatitis clinic on October 30, 2019 and it was ordered that he receive a 12-week prescription of the DAA drug, Epclusa[7]. *See* Exhibit B at 1.

On October 30, 2019, Roppolo signed the consent paperwork. *See* Exhibit C. He started treatment on October 30, 2019. *See* Exhibit B at 1. He then completed his DAA treatment on January 21, 2020. *See* Exhibit A. A follow-up appointment was also scheduled with Ms. Pickthall five weeks from the date of the completed treatment. *See* Exhibit A. Thus, Roppolo received the very thing he has sued to get. Not only has he been given treatment with DAA drugs, but he has completed his treatment with DAA drugs.

Granted, Plaintiff Roppolo suggests that his treatment began only after filing his lawsuit, but that is immaterial to the mootness analysis. Defendants recognize that, generally, defendants cannot moot a case simply by ending unlawful conduct once sued. *See Yarls*, 905 F.3d at 910. If this were allowed, "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.* Put plainly, the Fifth Circuit teaches that "[d]efendant-induced mootness is viewed

---

[7] "Epclusa" is the brand name under which DAA medications – Sofosbuvir and velpatasvir - is sold. *See Epclusa, What is Epclusa?* https://www.epclusa.com/what-is-epclusa/ (last visited Oct. 28, 2019).

with caution." *Id.* However, that normal skepticism does not apply to governmental actors like Defendants in this case. *Yarls*, 905 F.3d at 910. (explaining that the Fifth Circuit "[is] justified in treating a voluntary governmental cessation of possibly wrongful conduct with some solicitude.").

Rather, the Fifth Circuit recently explained in *Yarls* that "[a]*bsent evidence to the contrary*, [courts] are to presume public spiritedness[.]" *Id.* (emphasis added). In fact, "[g]overnment officials 'in their sovereign capacity and in exercise of their official duties are accorded a *presumption* of good faith because they are public servants, not self-interested private parties." *Id.* at 911. (emphasis added). Yet even without this presumption of good faith afforded to the government Defendants, it would be impossible now for the Defendants to take away the only relief that Plaintiff Roppolo is seeking because he has received and completed his DAA treatment at this point in time. Accordingly, this Court should recognize that Plaintiff Roppolo's claims against Defendants became moot with the start and completion of his DAA treatment and dismiss him from this suit.

### III. *EX PARTE YOUNG* DOES NOT ABROGATE INDIVIDUAL, OFFICIAL-CAPACITY DEFENDANTS' ELEVENTH AMENDMENT IMMUNITY WHERE PLAINTIFFS FAIL TO IDENTIFY A FEDERAL RIGHT THAT IS BEING CONTINUOUSLY VIOLATED.

On its face, the Eleventh Amendment bars "any suit in law or equity, commenced or prosecuted against one of the United States." However, in *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court announced an exception to Eleventh Amendment immunity for claims for injunctive relief against individual state officials in their official capacities. In order to qualify under *Ex parte Young*, such an action must seek prospective relief against an individual in their official capacity to end a continuing violation of federal law. Individual officials may only be liable for

implementing a policy that is "a repudiation of constitutional rights" and "the moving force of the constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).

Plaintiffs fail to identify a federal law that each Defendant is continuously violating. As stated below, there is no federal law that entitles Plaintiffs to what their complaint states they are being deprived of—one particular medication—whether their claims are brought under the ADA, the RA, or § 1983. *See Nottingham v. Richardson*, 499 Fed. Appx. at 377 ("[t]he ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners.'"); *Gibson*, 920 F.3d at 220 ("Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs."). As there is no valid federal law alleged in Plaintiffs' complaint, they are not entitled to the benefits of the *Ex parte Young* exception in bringing suit against the individual Defendants in their official capacities.

To be clear, Defendants are not asking this Court to engage in a consideration of the merits of Plaintiffs' amended complaint in order to determine whether the *Young* exception applies. Instead, this Court need only stay consistent with jurisprudence on the matter and engage in a "'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law." *Verizon Maryland, Inc. v. Pub. Serv. Com'n of Maryland*, 535 U.S. 635, 636 (2002). Under such an inquiry, "an allegation of an ongoing violation of federal law will be sufficient to warrant the *Ex parte Young* exception," however, "[a] bare assertion of a violation of federal law is not enough..." *Rowan Court Subdivision 2013 Ltd. P'ship v. Louisiana Hous. Corp.*, 749 Fed. Appx. 234, 237 n. 11 (5th Cir. 2018). The Fifth Circuit requires at least a "colorable constitutional claim" in order for *Ex Parte Young* to permit litigation to proceed. *See Hall v. Tex. Comm'n on Law Enf't.*, 685 F. App'x 337, 341 (5th Cir. 2017) (per curiam) (concluding that *Ex parte Young* exception did not apply

because plaintiff failed to raise "a colorable constitutional claim" in alleging that failure to secure employment violated his right to petition under the First Amendment); *see also Salinas v. Tex. Workforce Comm'n*, 573 F. App'x 370, 372 (5th Cir. 2014) (per curiam) ("Conclusory statements are insufficient to plead a claim, and they do not establish jurisdiction under the *Ex Parte Young* exception.").

Here, it is clear based on a "straightforward inquiry" into Plaintiffs' amended complaint that no colorable federal claim exists. This Court need not consider the facts or circumstances of Plaintiffs' Hepatitis C conditions, CMHC policies concerning Hepatitis C, or any other aspects of the case that could be considered a part of a "merits" inquiry. Rather, whether Plaintiffs have alleged a violation of federal law for *Young* to apply can be determined merely by answering whether Plaintiffs' complaint regarding the type of medical treatment they are and are not receiving violates the Eighth Amendment, the ADA, or the RA. Because that answer is "no," *Young* is inapplicable.

IV. **BECAUSE THE CMHCC CANNOT REDRESS PLAINTIFFS' PURPORTED INJURIES, THIS COURT LACKS STANDING OVER PLAINTIFFS' CLAIMS AGAINST THE CMHCC; ALTERNATIVELY, THE CMHCC IS NOT A JURAL ENTITY WITH THE CAPACITY TO SUE AND BE SUED.**

   **A. This Court lacks standing over Defendants that cannot redress Plaintiffs' purported injuries.**

The CMHCC is a statutorily-created committee made up of members employed by TDCJ, UTMB, TTUHSC, employees of various Texas medical schools, and members of the public who are appointed by the governor. TEX. GOV'T CODE § 501.133. Members serve without compensation. *Id.* at § 501.141. The expenditures of the CMHCC come from TDCJ's budget, which is appropriated by the legislature. *Id.* at § 501.142. The role of the CMHCC is to "develop and approve a managed health care plan for all persons confined by the department that: (1)

specifies the types and general level of care to be provided to persons confined by the department; and (2) ensures continued access to needed care in the correctional health care system." *Id*. at § 501.146.

The CMHCC and its officials have no authority to order, or otherwise obtain funding for, DAA medication to be given to all offenders with Hepatitis C at the McConnell Unit. *Id*. Nor does CMHCC or its officials have authority to direct individualized treatment decisions. *Id*. (describing the role of CMHCC in developing a state-wide health care plan for all incarcerated felons). If the Court grants Plaintiffs' request for an injunction, the CMHCC will not have the authority to implement it. *See Summers v. Earth Island Inst*., 555 U.S. 488 (2009) (to have Article III standing to seek injunctive relief, a plaintiff must show that it is likely that a favorable judicial decision will redress the injury). Because the CMHCC lacks authority to implement changes that could be directed by this Court's equitable power, this Court lacks jurisdiction over the CMHCC and its members. *See Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001) (explaining that state officials cannot be enjoined to act in any way that is beyond their state-granted authority).

While the CMHCC does have a role in the coordination of statewide policy development[8], an injunction in this case could not extend so far as to direct CMHCC to create or change a policy. Recent Fifth Circuit case law makes the point.

In *Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004), the Mississippi prison system appealed an injunction that, among other mandates, directed the prison to put a general preventative maintenance schedule and program into a written policy. *Id*. at 336. The Fifth Circuit observed

---

[8] *See, e.g.* CMHCC Responsibilities, https://www.tdcj.texas.gov/divisions/cmhc/index.html (last visited on November 21, 2019).

that although "federal courts can certainly enter injunctions to prevent Eighth Amendment violations, they are not to micromanage state prisons." *Id* (citing *Bell v. Wolfish*, 441 U.S. 520, 562 (1979)). The Fifth Circuit vacated the portion of the *Gates* injunction that ordered the prison to put a written policy in place, stating that while the district court could enjoin or mandate conduct, it could not order the agency to write a policy. *Id*. at 338-39.

So too here.

The alleged continuing violations that Plaintiffs complain of cannot be redressed by an injunction against the CMHCC or its officials, Philip Keiser, Cynthia Jumper, Rodney Burrow, F. Parker Hudson III, Erin Wyrick, John Burruss, Preston Johnson, Jr., and Dee Budgewater. The requested injunction would not affect the conduct of CMHCC or its officials. Instead, it would require the CMHCC to write an amended policy. Because such relief is beyond the ken of federal courts, Plaintiffs failed to establish the element of redressability as to CMHCC, which is a necessary element to establish a case or controversy. *Okpalobi*, 244 F.3d at 425-27.

## B.  The CMHCC and its officials lack the capacity to sue or be sued.

A plaintiff may not bring a civil rights action against a servient political agency or department unless that agency or department enjoys a separate and distinct legal existence. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991); *see also Barrie v. Nueces Cnty. Dist. Attorney's Office*, 753 Fed. Appx. 260, 2018 WL 5095824 (5th Cir. Oct. 17, 2018). In *Darby*, the Fifth Circuit held that "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." 939 F.2d at 313. The *Darby* court noted that the "touchstone under Texas law is whether the sued servient entity has been granted the capacity 'to sue and to be sued.'" *Id*.

16

Nowhere in the enabling statute does the legislature grant the CMHCC the power to sue or be sued. TEX. GOV'T CODE § 501.131-.156. Nor does the statute indicate that the CMHCC is to "enjoy a separate legal existence" from TDCJ. *Darby*, 939 F.2d at 313. When the legislature's intent is to create a jural entity with the capacity to sue or be sued, it does so explicitly. *See*, *e.g.*, TEX. GOV'T CODE § 81.014 ("The state bar may sue and be sued in its own name."; TEX. LOC. GOV'T CODE § 327.161 ("A zoo board may sue and be sued."); TEX. EDUC. CODE § 45.152(b) (stating that an athletic statement authority "may sue and be sued.").[9]

Texas Government Code § 501.147 empowers only TDCJ with the authority to contract. TEX. GOV'T CODE § 501.147(b)(5) (mandating that TDCJ shall "contract with any entity to fully implement the managed health care plan"). Because there is no explicit legislative action to confer the power to sue or be sued upon the CMHCC, the CMHCC Defendants cannot be sued. Plaintiffs' claims against the CMHCC Defendants should be dismissed pursuant to Federal Rules of Civil Procedure 9(a) and 12(b)(6).

## V.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER THE EIGHTH AMENDMENT, THE ADA OR THE RA.

As noted at the outset, this case asks this Court to settle a disagreement over medical opinion. Specifically, the Defendants' treatment of HCV (prioritization of treatment related to disease progression) does not automatically trigger immediate delivery of DAA medication upon an inmate's diagnosis. Plaintiffs argue it should. Plaintiffs have not alleged, nor can they, in good

---

[9] Other examples of statutes explicitly authorizing entities the power to sue and be sued include: TEX. AGRIC. CODE § 58.022(2) (creating the Agricultural Finance Authority and including the power "to sue and be sued"); TEX. AGRIC. CODE § 60.060(a) ("The [agricultural development] district may sue and be sued."; TEX. BUS. ORGS. CODE § 101.605(1) ("A series established under this subchapter has the power and capacity in the series' own name to: (1) sue and be sued; (2) contract."); TEX. EDUC. CODE § 22.08-App.(b) ("The trustees or common consolidated school district may sue and be sued, plead or be impleaded, in any court of Texas of proper jurisdiction."); TEX. GOV'T CODE § 1232.067(3) (specifying that the Board of the Texas Public Finance Authority "may sue and be sued").

faith, claim there is such a dispute, that Defendants are refusing to treat HCV patients with DAA medication. The heart of this dispute concerns only the timing of DAA medications, not an argument over whether DAA medication is the medication of choice for HCV. As a result, Plaintiffs' case, fairly read, presents a disagreement with medical decisions, a claim not cognizable under the Eighth Amendment.

Additionally, neither the ADA nor RA provide an avenue to seek relief for allegations amounting to medical malpractice, a claim sounding in tort law. Because Plaintiffs' claims do not assert a constitutional violation or a claim sounding in federal law, they have failed to state a plausible claim for relief.

### A. The Amendments to the United States Constitution are not medical malpractice statutes.

It is black-letter law that "[d]isagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Gibson*, 920 F.3d at 220 (quoting *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). To repeat, (a) Plaintiff Roppolo—a man who has lived with HCV since the 1990s—*see* Dkt. No. 35 at ¶ 97—received DAA medication, and (b) Plaintiffs Allen's, Valdez's, and Cook's current complaint is that they want DAA medication now, not the monitoring, testing and prioritizing they currently receive.

Plaintiff Allen, specifically, contends that his APRI score is 0.278 as of January 2019, a score falling below the 0.5 or greater APRI score that CMHCC policy recommends as a marker for referral for DAA medication. Dkt. No. 35 at ¶ 113. Additionally, Plaintiff Cook states his APRI score was .293 on his most recent available test in August 2019. *Id*. at ¶ 123. Plaintiff Valdez had an APRI score of .648 in his last test done on May 2019. *Id*. at ¶ 135. However, Plaintiffs do not claim that a universal consensus of medical opinion rejects the kind of monitoring, treating, and

prioritizing practices currently followed in the Texas prison system. *See Gibson*, 920 F.3d 221 (rejecting a claim of deliberate indifference where plaintiff could not show "consensus in the medical community about the necessity and efficacy of a particular course of treatment"). Instead, Plaintiffs argue over the standard of care. But the standard of care does not dictate the outcome here.

"Standard of care" is a concept applicable to medical malpractice claims, not deliberate indifference claims under the Eighth Amendment. *See, e.g.*, *Gobert*, 463 F.3d at 349 (explaining that "deliberate indifference exists wholly independent of an optimal standard of care"); *see also Marshall*, CV 18-13569, 2019 WL 2090844, at *3 (dismissing plaintiff's claim of deliberate indifference for denial of DAA medication because it amounted to a claim of medical malpractice, not deliberate indifference). Put plainly, even taking Plaintiffs' claims concerning the standard of care as true for purposes of evaluating this motion, recent federal cases illustrate the point that alleging a provider failed to follow a standard of care does not transform an Eighth Amendment claim from implausible to plausible. *See id*; *see also Allen v. Johnson*, 194 Fed. Appx. 204, 205 (5th Cir. 2006) (explaining that, although several Texas offenders "argue[d] that the defendants have failed to comply with the accepted standard of care...[they] fail to show that the defendants have been deliberately indifferent, however, because *their disagreement with their specific courses of treatment* is insufficient to establish deliberate indifference."); *see also Whiting v. Kelly*, 255 Fed. Appx. 896, 899 (5th Cir. 2007) ("[The offenders] contend that the policy created and adopted by the Texas Department of Criminal Justice does not comport with the accepted standard of care for treatment of HCV. Although they clearly believe that they should undergo additional testing and drug therapies, such disagreement does not give rise to a constitutional claim.").

Finally, the Fifth Circuit and courts in the Southern District of Texas have addressed CMHCC policies in several recent decisions and determined that claims materially indistinguishable from Plaintiffs' claims in this suit failed to demonstrate a constitutional violation. *See Grumbles*, 706 F. App'x at 819–20; *Hendrix*, 689 F. App'x 250; *see also Hood v. Collier*, CV 3:18-0295, 2019 WL 3412440 (S.D. Tex. July 29, 2019); *Vasquez v. Morgan*, CV H-18-3978, 2019 WL 2393428 (S.D. Tex. June 6, 2019); *Crow v. Mbugua*, CV H-17-1923, 2018 WL 5847410 (S.D. Tex. Nov. 8, 2018); *Burling v. Jones*, CV H–16–0868, 2017 WL 384364 (S.D. Tex. Jan. 24, 2017). Under Fifth Circuit standards, Plaintiffs' disagreement with the decision to monitor rather than provide DAA medication, based on the results of medical testing, is plainly insufficient to state an Eighth Amendment violation. *See Gobert*, 463 F.3d at 346.

**B.   Similarly, Plaintiffs' attempts to federalize medical malpractice under the ADA and RA should be rejected; alternatively, the ADA and RA claims asserted fail because Plaintiffs failed to include sufficient factual matter to state a plausible claim.**

Allegations of insufficient medical care, negligent medical care, or an insufficient medical program are not cognizable claims under the ADA.

- *Flaming v. UTMB*, CV H-15-2222, 2016 WL 727941, at \*9-10 (S.D. Tex. Feb. 24, 2016) (citing *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) ("The ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners.'"));

- *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)) (as to ADA); *see also Burger v. Bloomberg*, 418 F.3d 882, 882 (8th Cir. 2005) (medical treatment decisions are not a basis for Rehabilitation Act or ADA claims);

- *Grzan v. Charter Hosp. of Northwest Indiana*, 104 F.3d 116, 121, 123 (7th Cir. 1997) (as to RA); *see also Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 284 (1st Cir. 2006) (emphasizing that "courts have differentiated ADA claims based on negligent medical care from those based on discriminatory medical care").

20

To state a viable claim under the ADA and RA, plaintiffs must allege facts showing exclusion from a service, program, or activity, and they must show their exclusion from such was based solely upon their disability. *See Davidson v. Texas Dep't of Criminal Justice*, 91 F. App'x 963, 965-66, 2004 WL 542206, *2 (5th Cir. 2004) (affirming dismissal of a prisoner's ADA claim because he failed to allege or show that he was adversely treated solely by reason of a disability); *Hay v. Thaler*, 470 F. App'x 411, 418, 2012 WL 2086453, *4 (5th Cir. 2012) (same).

Plaintiffs' claims directly involve medical treatment decisions and, therefore, are not bases for ADA or RA claims. The mere fact that Plaintiffs disagree with the treatment provided is not sufficient to state a claim under the ADA or RA, as these statutes are not violated by an alleged failure to provide a desired course of medical treatment to disabled prisoners. *See, e.g., Woods v. Tex. Dep't of Criminal Justice*, CV CC-06-222, 2008 WL 189562, at *14 (S.D. Tex. Jan. 18, 2008). Further, Plaintiffs do not plead sufficient facts showing they have been excluded from a service, program, or activity, or that they have been intentionally discriminated against or adversely treated solely by reason of their alleged disability.

### 1. Plaintiffs' complaint lacks facts sufficient to demonstrate a qualifying disability under either the ADA or the RA.

To have a qualifying disability within the meaning of the ADA, a plaintiff must demonstrate "a physical or mental impairment that *substantially* limits one or more of the major life activities of such individual.[10]" 42 U.S.C. § 12102(1)(A) (emphasis added). In analyzing a plaintiff's ADA claim, this Court requires "an individualized determination of disability based on whether the condition substantially limits an individual in a major life activity." *Garrett v. Thaler*, 560 Fed.

---

[10] The statute also finds a qualifying disability where the plaintiff demonstrates (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1)(B)-(C). Plaintiffs do not assert they have a qualifying disability on either of these bases. Dkt. No. 35 at ¶¶ 155-162.

Appx. 375, 383 (5th Cir. 2014). In other words, "a physical impairment, standing alone, is not necessarily a disability protected by the ADA." *Watters v. Montgomery Cty. Emergency Commc'n Dist.*, 129 F.3d 610 (5th Cir. 1997). A plaintiff maintains the burden to show that they are qualified under the ADA. *Moss v. Harris County Constable Precinct One*, 851 F.3d 413, 419 (5th Cir. 2017). Using the required individualized analysis, whether a plaintiff has a disability "is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." *Id.*

"Even under the ADA as amended by the ADAAA, to prevail on a claim of disability discrimination under the ADA, a party must prove that he has a disability." *Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013) (internal citations omitted) (emphasis in the original). The Fifth Circuit continues to acknowledge that "Congress has directed that [this Court] engage in a case-by-case analysis" of the plaintiff-specific facts and circumstances when evaluating the qualifying disability prong. *Duncan v. Univ. of Texas Health Sci. Ctr. at Houston*, 469 Fed. Appx. 364, 369 (5th Cir. 2012); *see also Neely*, 735 F.3d at 245 ("though the ADAAA makes it easier to prove a disability, it does not absolve a party from proving one") (emphasis in the original). Thus, whether a person has a disability under the ADA has been, and continues to be, an individualized inquiry. *See Duncan*, 469 F. App'x at 369 (emphasis added); *see also Bragdon v. Abbott*, 524 U.S. 624, 641–642 (1998) (declining to consider whether HIV is a *per se* disability under the ADA).

Plaintiffs' third amended complaint lacks the facts necessary for this Court to conclude they are suffering from any physical impairments that substantially impair their major life activities. Neither Roppolo's nor Allen's factual sections regarding their HCV medical history contain any assertions as to how HCV has affected them or what life activities have been impaired. Dkt. No. 35

at ¶¶ 95-120. Cook states only that he feels a "loss of appetite, fatigue, nausea, depression, dizziness, and abdominal pain." *Id.* at ¶ 128. Valdez asserts he feels "fatigue, ... pain on his right side, easy bruising, persistent itching, periodic nausea, and depression." *Id.* at ¶ 143. Plaintiffs' ADA/RA cause of action contains exactly one sentence that purports to explain how Plaintiffs have a qualifying disability under the ADA/RA. *See* Dkt. No. 35 at ¶ 161. The complaint states that Plaintiffs and "numerous other Hepatitis C patients" can be impaired in the "operation of [their] digestive, endocrine, circulatory, reproductive and immune [systems] and the liver..."[11] *Id.* While this is certainly a list of major life activities, Plaintiffs never expound on how those major life activities, as applied to them, have been substantially limited. [12]

The Fifth Circuit has previously affirmed dismissal of a complaint for failure to state a claim based on the same generalized allegations Plaintiffs make. In *Hale v. King*, 642 F.3d 492 (5th Cir. 2011), the plaintiff, Hale, had also alleged violations of the ADA and RA for the failure to reasonably accommodate his Hepatitis C, among other ailments. Like in this case, Hale's "complaint argued that Hale's conditions require that he receive *certain prescriptions* and treatments that the various defendants named in the complaint were not providing." *Id.* at 500 (emphasis added). While Hale's complaint contained allegations that his digestive system and his liver had been severely compromised by the disease, his complaint was, nonetheless, insufficient as it "contained little to expound on the impact of these conditions on *Hale's* health." *Id.* (emphasis

---

[11] This assertion is in contrast to the symptoms that the Centers for Disease Control lists as symptoms attributable to Hepatitis C, which are only fatigue and depression. *Hepatitis C Questions and Answers for the Public*, Centers for Disease Control and Prevention, https://www.cdc.gov/hepatitis/hcv/cfaq.htm#D4 (last visited Feb. 3, 2020).

[12] A similar sort of generalized assertions regarding what conditions and effects on the body Hepatitis C *can* have are found elsewhere in Plaintiffs' complaint as well. *See* Dkt. No. 35 at ¶¶ 23-41. As this prong of the ADA/RA requires an individualized analysis of how the impairment has specifically limited the plaintiff in question, this Court should decline to consider these statements when determining whether Plaintiffs have a qualifying disability. *See, e.g., Ball v. LeBlanc*, 792 F.3d 584, 597 (5th Cir. 2015) (noting that "the medical testimony focused generally on the risks to individuals with the same ailments as these prisoners, not on any limitations *the prisoners presently experience.*").

added). Hale's motion for injunctive relief filed concurrently with his complaint also "failed to *detail* the impact of these conditions on Hale's ability to perform major life activities." *Id*. (emphasis added). Thus, the first ADA prong had not been met where Hale had established he "suffered" from Hepatitis C during the time of his incarceration, but never detailed how that suffering specifically limited his life activities. *Id*.

Despite *Hale*'s requirement of "detail" to survive a 12(b)(6) motion to dismiss, there is none in Plaintiffs' single, two-sentence paragraph on the subject. Dkt. No. 35 at ¶ 161. For example, Plaintiffs state their digestive systems are impaired, but that conclusion lacks facts indicating whether they are gaining or losing weight. *See id*. Plaintiffs also claim their circulatory systems are impaired, but there are no facts to suggest they are having problems with, for instance, blood flow, portal hypertension or anemia. *See id*. For each "major life activity" Plaintiffs list, the factual allegations end there. Plaintiffs may mention common ways in which Hepatitis C could substantially limit a major life activity but, as in *Hale*, they do not provide any detail to this Court to find those generalizations specifically apply to them—much less that their impact was substantial. *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 195 (2002) (a claimant "*must* further show that the limitation on the major life activity is *substantial*") (emphasis added). Because Plaintiffs fail to establish they have a qualifying disability under the ADA/RA, their complaint should be dismissed.

### 2. Mandating a preferred treatment regime is not a reasonable accommodation.

In order to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege that he required, and was denied, a reasonable accommodation, or modification, in order to access a public entity's "services, programs, or activities." 42 U.S.C. § 12132, 28 C.F.R. §35.130. Defendants are

not required to accommodate a plaintiff's disability, however. "Title II only imposes an obligation to provide reasonable accommodations for specific limitations [on one's substantial life activities] imposed by the claimant's disability." *Garza v. City of Donna*, CV 7:16-CV-00558, 2017 WL 2861456, at *7 (S.D. Tex. July 5, 2017). In other words, "the ADA requires [entities] to reasonably accommodate *limitations*, not disabilities." *Jin Choi v. Univ. of Texas Health Sci. Ctr. at San Antonio*, 633 Fed. Appx. 214, 216 (5th Cir. 2015) (emphasis added); 42 U.S.C. § 12112(b)(5)(A).

As argued above, Plaintiffs' complaint lacks any facts detailing what limitations they are personally experiencing as a result of having Hepatitis C. As a result, Plaintiffs are unable to succeed under this prong of the ADA because their complaint is necessarily deficient as to how Defendants have failed to provide them a reasonable accommodation under the statute.

Additionally, while state prisons, including TDCJ, are a public entity under Title II, Plaintiffs do not adequately identify any "service, program or activity" within TDCJ that they were denied access to by virtue of the "refusal" to provide DAA medication. The only "service" that Plaintiffs claim is offered, and was denied to them, by Defendants is "medical treatment," which they equate to DAA medication (Dkt. No. 35 at ¶ 155); however, claims of "insufficient or negligent medical care [are] not cognizable under the ADA or Rehabilitation Act." *Guthrie v. Niak*, CV H-12-1761, 2017 U.S. Dist. LEXIS 28181, *38 (S.D. Tex. Feb. 28, 2017). It therefore follows that the provision of one course of medical treatment over another is not a "service, program, or activity." This Court should hold as such because it is well-established that "[t]he ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners.'" *Nottingham*, 499 Fed. Appx. at 377; *see also Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005) (RA and ADA were "never intended to apply to decisions involving the

termination of life support *or medical treatment*"); *see also Fitzgerald v. Corrs. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (prison did not violate ADA and RA by inadequately treating plaintiff's diabetes or denying him surgery for his broken hip); *see also Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (plaintiff "complaining about incompetent treatment of his paraplegia" failed to state claim under ADA). Because there is no right to a particular form of medical treatment under the ADA or RA, it cannot be considered a "program, service, or activity" provided by TDCJ or UTMB.

The other flaw in Plaintiffs' assertion that medical treatment is a service or program under the ADA/RA is that an offender is not being entirely deprived of medical treatment simply because he is not receiving DAA medication. The third amended complaint reflects Plaintiff Roppolo is now being treated with DAA medications. Dkt. No. 35 at ¶ 106. Additionally, Plaintiffs Cook, Valdez, and Allen are being treated in the form of monitoring and associated treatment, along with having their levels regularly tested. Dkt. No. 35 at ¶¶ 113, 115, 123, 125, 135, 139. This Court, among others, has continuously found these methods to constitute sufficient medical treatment for Hepatitis C in spite of the fact that the offenders were not receiving DAA medication. *Rivera v. Lawson*, CV 2:18-CV-19, 2019 WL 4602957 at *7 (S.D. Tex. Apr. 12, 2019), report and recommendation adopted, 2:18-CV-19, 2019 WL 4601721 (S.D. Tex. Sept. 23, 2019) (stating offender failed to establish his Hepatitis C was being left untreated, despite not being given DAAs, where offender received a "course of treatment" in the form of being "closely [sic] monitored and tested ever since he received his diagnosis."); *Roy v. Lawson*, CV 2:17-CV-9, 2018 WL 1054198, at *7 (S.D. Tex. Feb. 26, 2018), aff'd, 739 Fed. Appx. 266 (5th Cir. 2018) (stating offender was not deprived of medical treatment where, although offender did not receive DAA drugs, the

defendants "regularly tested for and monitored his Hepatitis C condition."); *Woods v. TDCJ*, CV CC-06-222, 2008 WL 189562, at *12 (S.D. Tex. Jan. 18, 2008) (stating offender did not have "[ADA] cause of action because he has not demonstrated exclusion from a service, program, or activity; nor has he shown any discrimination, which is required by the ADA. Rather, plaintiff was treated on a regular basis; *he merely disagrees with the treatment provided*.").

This Court should not hold that decisions regarding medical treatment are subject to suit under the ADA/RA simply based on Plaintiffs' allegation that DAA medication is within the standard of care. Such an assertion does not alter the Court's considerations under this prong. The Supreme Court has explicitly declined to hold "that the ADA imposes on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to 'provide a certain level of benefits to individuals with disabilities.'" *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n. 14 (1999). Thus, whether a specific medication is within the standard of care, amongst other forms of accepted treatment[13], is inconsequential. Absent circumstances showing an outright denial of all medical services, mere disagreements with reasoned medical judgments, as Plaintiffs have in this case, do not state a violation of the ADA or RA. *Walls v. Texas Dept. of Criminal Justice*, 270 Fed. Appx. 358, 359 (5th Cir. 2008) ("The ADA does not set out a standard of care for medical treatment."). Plaintiffs have failed to name any actual TDCJ or UTMB service or program for which they are not being reasonably accommodated to participate in as a result of their Hepatitis C; thus, the second prong of the ADA/RA must fail.

### 3. Plaintiffs do not point to any practical effect of exclusion they are experiencing so as to prove intentional discrimination.

---

[13] For example, the AASLD/IDSA HCV treatment guidelines also note clearly that the standard of care for assessment of fibrosis of those with Hepatitis C treatment includes non-invasive staging. *When and in Whom to Initiate HCV Therapy*, HCV Guidance: Recommendations for Testing, Managing, and Treating Hepatitis C, https://www.hcvguidelines.org/evaluate/when-whom (last visited Feb. 5, 2020).

Under this third and final prong of the ADA/RA analysis, courts are not only concerned with whether or not the plaintiff has been discriminated against but also if that discrimination was intentional. *Back v. Texas Dep't of Criminal Justice Institutional Div.*, 684 Fed. Appx. 356, 358-59 (5th Cir. 2017) (plaintiff who met first two ADA/RA prongs could not overcome TDCJ's evidence that denial of services was based on negligence; plaintiff failed to present evidence showing "intentional discrimination that was based on his physical disability"). While courts have not specifically defined intentional discrimination, the Fifth Circuit requires "something more than 'deliberate indifference' to show intent." *Miraglia v. Bd. of Supervisors of Louisiana State Museum*, 901 F.3d 565, 575 (5th Cir. 2018).

Plaintiffs fail to state a claim for deliberate indifference. *See* Section V, A. Given this, they also necessarily fail the higher burden of stating facts sufficient to prove intentional discrimination.

Moreover, Plaintiffs' sole basis for intentional discrimination is that Defendants allegedly denied them the reasonable accommodation of necessary medical treatment. Dkt. No. 35 at ¶ 155. While courts have recognized "that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion," this Court need not determine whether this "practical effect" occurred in this case. *Tennessee v. Lane*, 541 U.S. 509, 531 (2004). Defendants have explained, immediately above, why the denial of one particular course of medical treatment over another is not a "program or service" that Plaintiffs required reasonable accommodation to access. Defendants have also explained why Plaintiffs have failed to allege a qualifying disability where there are no facts stating how they are personally limited in any major life activities. If Plaintiffs do not have a qualifying disability, they are not being denied any reasonable

accommodation of a limitation from that disability; therefore, Plaintiffs are not experiencing any "practical effect" of exclusion. Thus, Plaintiffs' claims fail this prong of the ADA/RA.

## CONCLUSION

For the above reasons, Defendants request that Plaintiffs' claims against them be dismissed.

**Dated:** February 10, 2020.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

SHANNA E. MOLINARE
Chief, Law Enforcement Defense Division

*/s/ Eric A. Hudson*
ERIC A. HUDSON
Assistant Attorney General
Texas State Bar No. 24059977
Southern District ID No. 1000759
*eric.hudson@oag.texas.gov*

COURTNEY BROOKE CORBELLO*
Assistant Attorney General
Texas State Bar No. 24097533
Southern District ID No. 3089117
*courtney.corbello@oag.texas.gov*

AMY L. PRASAD*
Assistant Attorney General
Texas State Bar No. 24037295
Southern District No. 563045
*Amy.Prasad@oag.texas.gov*

**TRENT PEROYEA\***
Assistant Attorney General
Texas State Bar No. 24098245
Southern District No. 3134657
*trent.peroyea@oag.texas.gov*

**OFFICE OF THE ATTORNEY GENERAL**
Law Enforcement Defense Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080 / (512) 370-9410 (Fax)

**ATTORNEYS FOR DEFENDANTS**

### NOTICE OF ELECTRONIC FILING

I, **ERIC A. HUDSON**, Assistant Attorney General of Texas, certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing in accordance with the Electronic Case Files system of the United States District Court for the Southern District of Texas, on February 10, 2020.

*/s/ Eric A. Hudson*
**ERIC A. HUDSON**
Assistant Attorney General

### CERTIFICATE OF SERVICE

I, **ERIC A. HUDSON**, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing has been served directly to all counsel on record by the Electronic Case Files System of the Southern District of Texas on February 10, 2020.

*/s/ Eric A. Hudson*
**ERIC A. HUDSON**
Assistant Attorney General