UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MATTHEW ROPPOLO, et al., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | Civil Action No. |
| v. | § | 2:19-cv-262 |
| | § | |
| LANNETTE LINTHICUM, et al., | § | |
| | § | |
| *Defendants.* | § | |

**PLAINTIFFS' MOTION TO APPROVE SETTLEMENT**

# Exhibit 1

# Settlement Agreement

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | |
|---|---|
| **MATTHEW ROPPOLO, ET AL.,** <br> *Plaintiffs,* <br><br> **v.** <br><br> **DR. LANNETTE LINTHICUM, ET AL.,** <br> *Defendants*. | **C.A. No. 2:19-CV-00262** |

**AMENDED PRIVATE COMPROMISE AND SETTLEMENT AGREEMENT**

Subject to Final Approval, the following is a Compromise and Settlement Agreement ("Agreement") between Plaintiffs Matthew Roppolo, Victor Valdez, Da-Na Allen, and Johnny Cook, individually, (collectively referred to as "Plaintiffs"), and the Texas Department of Criminal Justice, including employees in their official capacities, ("TDCJ"), The University of Texas Medical Branch at Galveston, including employees in their official capacities, ("UTMB"), and members of the Correctional Managed Health Care Committee in their official capacities ("CMHCC") (collectively referred to as "Defendants") set forth below. If, for any reason, the Court does not provide Final Approval, then this Agreement and all terms and provisions are void, and neither this Agreement nor any term or provision of this Agreement may be enforced against the Parties or used in any subsequent pleading, motion, hearing, trial, or legal proceeding as evidence, an exhibit, or for precedential value of any kind.

**RECITALS**

WHEREAS, Plaintiffs originally filed suit on September 11, 2019, and filed a motion for class certification in this case on October 4, 2019. Dkt. Nos. 1, 6. Plaintiffs brought suit (hereafter referred to as the "Lawsuit") against Defendants under 42 U.S.C. § 1983, the Americans with

Disabilities Act, and the Rehabilitation Act. Plaintiffs sought injunctive relief requiring all Texas inmates diagnosed with Chronic Hepatitis C Virus (HCV) to be treated with Direct Acting Antiviral (DAA) medications;

WHEREAS, Defendants filed a motion to dismiss Plaintiffs' claims on February 10, 2020 and responded to Plaintiffs' motion for class certification on March 4, 2020. Dkt. Nos. 48, 58. Briefing is completed, and these motions are pending before the Court. Dkt. Nos. 69, 71, 81;

WHEREAS, discovery has been ongoing since the filing of this Lawsuit with both Parties conducting depositions and written discovery. *See* Dkt. No. 82 (Defendants' motion to stay detailing discovery efforts);

WHEREAS, Defendants deny the allegations of the Lawsuit, deny all allegations of wrongdoing and liability, and deny any causation of harm or damage to the Settlement Class, as defined below;

WHEREAS, Plaintiffs and Defendants recognize the outcome of the Lawsuit is uncertain, and pursuing the Lawsuit to judgment would entail significant risk, cost, and delay, and Defendants contend their resources are limited by legislative appropriations;

WHEREAS, mediation occurred on September 2-3, 2020, with former Texas Supreme Court Chief Justice Thomas Phillips as mediator. Dkt. No. 102. The Parties successfully reached an agreement in principle at the conclusion of mediation;

WHEREAS, the Parties have now agreed to a full settlement of the claims asserted by Plaintiffs on behalf of the putative Settlement Class, including an agreement to resolve Plaintiffs' claim for attorneys' fees and costs and all other terms necessary for a settlement of the Lawsuit, subject to Court approval;

2

WHEREAS, the Parties desire to compromise all claims for injunctive, equitable, or declaratory relief that were asserted or could have been asserted based upon the facts alleged in the Lawsuit by Plaintiffs on their own behalf and on behalf of all members of the putative Settlement Class, including all claims addressed in Plaintiffs' complaint;

WHEREAS, Plaintiffs, by and through Class Counsel, have made a thorough investigation of the facts and circumstances surrounding the allegations asserted in the Lawsuit, engaged in discovery and investigation of the Plaintiffs' claims, and considered the law applicable to the claims asserted in the Lawsuit, including the defenses that Defendants would likely assert, and concluded after carefully considering the facts and applicable law, that it is in the best interest of the Settlement Class, as defined below in paragraph 1, to enter into this Agreement to avoid the uncertainties of continued litigation and to ensure a benefit to Plaintiffs and to the Members of the Settlement Class;

WHEREAS, Defendants, by and through their counsel, have concluded that settlement is desirable to avoid the time, expense, and inherent uncertainties of defending protracted litigation; to avoid further disruption of Defendants' duties due to the pendency and defense of the Lawsuit;

WHEREAS, Plaintiffs' counsel recognize the risks and costs of prosecution of this Action, and believe that it is in Plaintiffs' interest, and the interest of all Settlement Class Members, to resolve this Action, and that the proposed Settlement is adequate, fair, and reasonable, and provides significant benefits and is in the best interests of the Settlement Class;

WHEREAS, significant arm's length settlement negotiations have taken place between the Parties, and, as a result, this Agreement has been reached in good faith by all Parties, without collusion, and subject to the approval of the Court;

WHEREAS, the Parties agree that this Agreement shall not be deemed or construed to be an admission or evidence of any violation of any federal or state statute, rule or regulation, principle of common law or equity, or of any liability or wrongdoing whatsoever by Defendants, or of the truth of any of the claims asserted in the Lawsuit, or elsewhere, but that nothing herein shall prevent Plaintiffs from enforcing the terms of this Agreement; and,

WHEREAS, the Parties agree that the certification of the Settlement Class in connection with this Agreement shall have no bearing on the question whether the claims asserted by Plaintiffs are or were appropriate for class treatment in the absence of settlement.

NOW, THEREFORE, it is hereby stipulated and agreed, by and between the Plaintiffs and the Defendants, in consideration of the agreements, promises, and covenants set forth in this Agreement, acting in good faith and subject to the approval of the Court pursuant to Federal Rule of Civil Procedure 23, that all Settlement Class claims and the Lawsuit alleged against Defendants identified herein be, and hereby are, compromised, settled, released, and discharged in accordance with the terms set forth below.

### DEFINITIONS

The following terms have the following meanings:

1. "Agreement" refers to this Private Settlement Agreement.

2. "Chronic Hepatitis C" or "HCV" refers to the liver disease caused by the Hepatitis C virus that is not spontaneously resolved within six (6) months of the infection.

3. "Class Administration" includes, but is not limited to, providing notice to Settlement Class Members, any duties associated with securing final approval of the Agreement (including defense of the agreement in any appeals), ongoing future review of Defendants' quarterly and biannual reports and other future associated duties of Class Counsel contemplated by this Agreement (such as receiving and tracking opt out requests and responding to questions from or otherwise providing advice to Settlement Class Members concerning the agreement). This definition shall not be construed to include any aspect of compliance monitoring not contemplated by this Agreement.

4. "Class Representatives" are Plaintiffs Matthew Roppolo, Victor Valdez, Da-Na Allen, and Johnny Cook.

5. "Contraindications" refers to a medical condition or factor of an inmate diagnosed with Chronic Hepatitis C that furnishes a reason to reasonably withhold DAA treatment pursuant to current, nationally-recognized, Evidence-based Guidelines upon which medical providers reasonably rely.

6. "Court" refers to the United States District Court for the Southern District of Texas, Corpus Christi Division, the Honorable Nelva Gonzales Ramos presiding.

7. "DAA" refers to the class of medications known as FDA-approved Direct-Acting Antivirals used to treat Chronic Hepatitis C.

8. "Effective Date" means the date on which the Court gives final approval to this Agreement.

9. "Eligible Inmate" includes inmates who:

5

    a.   enter TDCJ custody after September 3, 2020 and are diagnosed by one of Defendants' medical providers with Chronic Hepatitis C; or

    b.  are in TDCJ custody on September 3, 2020, but are not diagnosed with Chronic Hepatitis C by one of Defendants' medical providers until after September 3, 2020.

The term "Eligible Inmates" includes those inmates in 9(a) or (b) who: have a life expectancy of over one year from the date of diagnosis if they are provided DAA treatment; have a release date from the TDCJ custody at least twenty-five (25) weeks after the virology medical providers determine provision of DAA medication is to begin; are inmates for whom DAA treatment is not medically contraindicated; and who do not affirmatively reject DAA treatment. The term "Eligible Inmate" does not include those individuals no longer in TDCJ physical custody whether by release, conditional release, parole, or any other circumstance.

10. "Evidence-based Guidelines" are guidelines for clinical practice based on well-designed studies upon which medical providers reasonably rely.

11. "Final Approval" refers to this Court's final approval after a fairness hearing, as required by Rule 23(e) of the Federal Rules of Civil Procedure, and the Court's final approval becoming a final judgment after post-hearing motions and/or appeal.

12. "HCV Policy" refers to the current CMHC Hepatitis C Policy B-14.13.3 and Chronic Hepatitis C Evaluation and Treatment Pathway as well as any superseding Policy(ies) or Protocol(s) promulgated by the CMHCC or the Virology Medical Providers.

13. "Inmate" refers to, for the purpose of this Agreement, a person incarcerated in TDCJ custody and does not include those individuals no longer in TDCJ physical custody whether by release, conditional release, parole, or any other circumstance.

14. "Lawsuit" refers to the above-styled case of *Matthew Roppolo, et al. v. Dr. Lannette Linthicum, et al*., Civil Action No. 2:19-CV-00262, in the United States District Court for the Southern District of Texas, Corpus Christi Division.

15. "Parties" refers to the Plaintiffs and Settlement Class Members and Defendants in this Lawsuit. Eligible Inmates, defined above, are not Parties to this Agreement, nor are they third-party beneficiaries to this Agreement.

16. "Preliminary Approval Date" is the date on which the Court gives preliminary approval to this Agreement.

17. "Protective Order" refers to the Protective Order entered in this Lawsuit on January 21, 2020, located at docket entry number 36.

18. "Settlement Class Members" refers to those inmates who qualify under the definition provided in paragraph 1 of this Agreement, *infra,* and includes those inmates specifically identified on the list attached as Exhibit 1.

19. "Virology Medical Providers" refers to the physicians, nurse practitioners, and physician assistants within the HCV team of the UTMB-CMC Section of Clinical Virology, which provides clinical care for TDCJ inmates infected with Hepatitis C.

**TERMS OF THE AGREEMENT**

**1.  Class Definition.**

Solely for purposes of this Agreement, and subject to Court approval, the Parties agree that this Lawsuit may be maintained as a class action on behalf of a Settlement Class Members ("Class") defined as all inmates in TDCJ custody who have been diagnosed with Chronic Hepatitis C as of September 3, 2020, and, as of the date this Agreement was entered into, remain in

custody with a diagnosis of Hepatitis C. The Parties agree Plaintiffs will submit a motion, unopposed by Defendants as to the relief sought, asking the Court to certify the Settlement Class as described herein, and to consist of the specific individuals listed on Exhibit 1, which will be filed under seal.

The Settlement Class Members are specifically listed, by inmate name and identification number, in Exhibit 1 hereto. The Parties agree and warrant that each of them has reviewed and investigated Exhibit 1; made their best efforts using all available resources to verify that the inmates listed on it completely and accurately reflect the identities of all Settlement Class Members, as the Class is defined in this agreement; and brought to the attention of the other Party the identities of any inmates they believe may have been improperly included or excluded from Exhibit 1. This is reflected in the Declaration of Dr. Owen Murray, attached hereto as Exhibit 2, attesting that the list of inmates in Exhibit 1 is a true and correct reflection of all inmates diagnosed with Chronic Hepatitis C as of September 3, 2020, who, as of the date this Agreement was entered into, remain in custody with a diagnosis of Hepatitis C. The Parties agree and warrant that after performing this due diligence, each of them believes, as of the date of the execution of this Agreement, that Exhibit 1 is complete and accurate. Exhibit 1 shall be appended to any preliminary and/or final order concerning settlement approval, but filed under seal.

Settlement Class Members shall have the ability to voluntarily "opt out" at any time up to and after a final approval of any class settlement. Class Counsel shall assist the Court in administering the opt-out process as discussed below. Once a Settlement Class Member completes the opt out process, that Settlement Class Member shall be removed from the Settlement Class Membership

for all purposes and may not opt back in. While "opting out" will preclude membership in the class, it will not prejudice an inmate's right to seek relief separate and apart from this Agreement.

The Parties agree that a Settlement Class Member who is released or who is no longer in TDCJ custody, regardless of the circumstance, shall be removed from the Settlement Class Membership for all purposes, and his or her claims shall not be released (but their status as a Settlement Class Member cannot be revived as part of this Agreement should they return to TDCJ custody).

**TREATMENT**

2. **Hepatitis C Metavir Fibrosis Scoring and Staging.** Defendants' Virology Medical Providers shall determine the Metavir Fibrosis Score referenced in this Agreement and the HCV Policy using the following tests:

   a. Initially, the Fibrosis Score shall be determined by the inmate's APRI test score, with the following designations: APRI score of 2.0 or above, F-4; APRI score of more than 1 – 1.999, F-3; APRI score of 0.5 – 0.999, F-2; APRI score of less than 0.5, F-0-F1; all subject to the provisions of 3(c) and (d).

   b. Final scoring will be determined by the Virology Medical Providers based upon consideration of biomarkers (FIB-4, FRT, APRI), presence of clinical or radiologic evidence of cirrhosis and Evidence-based Guidelines.

   c. An APRI greater than or equal to 2.0 will be followed by a liver ultrasound to rule out cancer and assist with staging where no other indicators of cirrhosis are present. This procedure must occur within 90 days of provider review and referral.

d.  Evaluations of Settlement Class Members with Metavir scores of F-0 and F-1, shall be made no less than every twelve (12) months.

3.  **Medical Evaluation and Treatment for Settlement Class Members.** Pursuant to this Agreement and Defendants' Virology Medical Providers' reasonable medical judgment as informed by Evidence-based Guidelines, Defendants shall provide DAA medications to Settlement Class Members on the following schedule:

a.  All Settlement Class Members diagnosed by the Virology Medical Providers with a Metavir Fibrosis Score of F-4, as determined by the staging and scoring procedure set forth in paragraph 2(a) and (b) above, known to Defendants as of September 3, 2020, shall be started on DAA medications no later than December 31, 2020. The Parties agree this deadline is subject to, and may be extended because of, the provisions in paragraph 5, *infra*.

b.  All Settlement Class Members diagnosed by the Virology Medical Providers with a Metavir Fibrosis Score of F-3, as determined by the staging and scoring procedure set forth in paragraph 2(a) and (b) above, known to Defendants as of September 3, 2020, shall be started on DAA medications no later than January 1, 2022. The Parties agree this deadline is subject to, and may be extended because of, the provisions in paragraph 5, *infra*, and the treatment prioritization of Settlement Class Members or Eligible Inmates who are diagnosed with a Metavir Fibrosis Score of F-4.

c.  All Settlement Class Members diagnosed by the Virology Medical Providers with a Metavir Fibrosis Score of F-2, as determined by the staging and scoring procedure

set forth in paragraph 2(a) and (b) above, known to Defendants as of September 3, 2020, shall be started on DAA medications no later than October 1, 2023. The Parties agree this deadline is subject to, and may be extended because of, the provisions in paragraph 5, *infra*, and the treatment prioritization of Settlement Class Members or Eligible Inmates diagnosed with a Metavir Fibrosis score of F-3 or F-4.

d.  Defendants shall begin the process of prioritizing treatment of Settlement Class Members with a Metavir Fibrosis Score of F-1 or F-O no later than October 1, 2023, with the expectation of beginning treatment of all Settlement Class Members with DAA medications by January 1, 2028, subject to the exceptions provided in paragraphs 4.b and 5 *infra*, based on the known patient population as of September 3, 2020. The Parties agree this deadline is subject to, and may be extended because of, the provisions in paragraph 5, *infra*, and the treatment prioritization of Settlement Class Members or Eligible Inmates diagnosed with a Metavir Fibrosis score of F-2, F-3, or F-4.

4. **Medical Evaluation and Treatment for Eligible Inmates.**

a.  In recognition of Defendants' ongoing obligation to provide healthcare for all inmates in TDCJ custody, all Eligible Inmates will be prioritized for treatment with DAA medications based on each Eligible Inmate's Metavir Fibrosis score as determined by the Virology Medical Providers based on biomarkers (FIB-4, FRT, APRI), presence of clinical or radiologic evidence of cirrhosis, and Evidence-based Guidelines, in accordance with the following schedule:

i.   Eligible Inmates diagnosed by the Virology Medical Providers with a Metavir Fibrosis score of F-4, as determined by the staging and scoring procedure set forth in paragraph 2(a) and (b) above, will be started on DAA medications no later than 120 days after the date of diagnosis.

ii.   Eligible Inmates diagnosed by the Virology Medical Providers with a Metavir Fibrosis score of F-3, as determined by the staging and scoring procedure set forth in paragraph 2(a) and (b) above, will be started on DAA medications no later than September 1, 2022, or 9 months after the date of diagnosis, whichever comes later.

iii.   Eligible Inmates diagnosed by the Virology Medical Providers with a Metavir Fibrosis score of F-2, as determined by the staging and scoring procedure set forth in paragraph 2(a) and (b) above, will be started on DAA medications no later than October 1, 2023, or 12 months after the date of diagnosis, whichever comes later.

iv.   Eligible Inmates diagnosed by the Virology Medical Providers with a Metavir Fibrosis score of F-1 or F-0, as determined by the staging and scoring procedure set forth in paragraph 2(a) and (b) above, will be prioritized for treatment with DAA medications subject to the provisions in paragraphs 4.a.i-iii, *supra*.

b.   The Parties agree that all of the deadlines in paragraphs 4.a.i-iv, *supra*, are subject to, and may be extended because of, the provisions in paragraph 5, *infra*, and the

treatment prioritization of Settlement Class Members and Eligible Inmates diagnosed with a higher Metavir Fibrosis score.

5. **Deadlines for Treatment of Settlement Class Members and Eligible Inmates.**

a. Starting January 1, 2021, and for each of the following years until this Agreement terminates, Defendants agree to treat annually with DAA medications at least 1,200 inmates in total, including Settlement Class Members or Eligible Inmates with a Metavir Fibrosis score between F-0 and F-4. The requirements in this Agreement to treat Settlement Class Members or Eligible Inmates with DAA medications shall be suspended:

i. For Settlement Class Members: As soon as the entire pool of Settlement Class Members listed in Exhibit 1 has: (1) completed treatment with DAA medications, unless medically contraindicated or Defendants are not required under this Agreement to provide DAA medications under paragraph 5(d), *infra*; (2) opted out of this Agreement; (3) refused DAA treatment with DAA medications under the terms of this Agreement , or refused what a reasonable medical provider would agree is a necessary predicate for DAA treatment; or (4) been released from or is no longer in TDCJ custody, regardless of the circumstance; and

ii. For Eligible Inmates: The earlier of January 1, 2028, or the suspension of the requirements of this Agreement pursuant to its terms for the treatment of Settlement Class Members with DAA medications.

13

b. The deadlines for providing treatment with DAA medications to Settlement Class Members or Eligible Inmates in paragraphs 3-4, *supra*, are to be met by Defendants so long as the treatment is not medically contraindicated and the following has occurred:

1. If a Virology Medical Provider determines that an inmate with any Metavir Fibrosis Score requires immediate treatment with DAA medications, nothing in any of Defendants' policies or this Agreement shall be a cause for any delay in treatment.

2. The Settlement Class Members and Eligible Inmates subject to the deadlines provided in paragraphs 3-4, *supra*, must attend and participate in all necessary diagnostic appointments and testing required prior to the provision of DAA medications. Should a Settlement Class Member or an Eligible Inmate refuse treatment or refuse to attend or participate in one or more of the required diagnostic appointments or tests, that inmate's deadline to receive DAA medications as provided in paragraphs 3-4, *supra*, will no longer apply, and the inmate will not be eligible to receive DAA medications until the missed diagnostic appointment or test and any other required diagnostic appointments or tests are finally attended and completed. Defendants will make best efforts to reschedule missed diagnostic appointments or tests.

3. The Settlement Class Member or Eligible Inmate has not: opted out of this Agreement; refused what a reasonable medical provider would agree is a necessary predicate for DAA treatment, or refused DAA treatment for Chronic

14

Hepatitis C; or been released from or is no longer in TDCJ's custody, regardless of the circumstance.

c.  All named class representatives who have not previously received DAA medications will be provided with DAA medications no later than March 1, 2021.

d.  Defendants shall not be required to treat any Settlement Class Member who: (1) has a scheduled release date from TDCJ custody within twenty-five (25) weeks of the initiation of DAA medication treatment; (2) has a life expectancy of less than one year from the date of diagnosis if they are provided DAA treatment; or (3) for whom DAA treatment is otherwise medically contraindicated.

6.  **Dispute Resolution:** If Plaintiffs' counsel believe that Defendants have improperly denied a Settlement Class Member medically necessary DAA treatment, failed to comply with the terms of this Agreement, or enacted revisions or changes to the HCV Policy that are inconsistent with this Agreement, Plaintiffs' counsel will provide Defendants' counsel with written notice of potential noncompliance. The written notice is not effective unless it is delivered to the Office of the Attorney General at PO Box 12548, Austin, Texas, 78711-2548, via First-Class U.S. Mail, with a return receipt requested or via electronic mail to the Assistant Attorney General designated as the Director of the Law Enforcement Defense Division, or other person designated by the Office of the Attorney General. This notice will identify the factual basis of the claim that Defendants are not complying with a provision of the Agreement or HCV Policy implicated.

Within thirty (30) days of receipt of the notification by Defendants, Defendants shall provide a good-faith written response to the Plaintiffs' notification, which shall

include the factual basis for Defendants' response to the claim and relevant records in support of Defendants' response to the Plaintiffs' claim. If compliance remains in question after Plaintiffs receive Defendants' response, Plaintiffs' counsel and Defendants' counsel shall confer in a good-faith attempt to resolve the issues.

After receiving Defendants' response, Class Counsel may request the following components of a Settlement Class Member's medical records created in the two years preceding the request for the Settlement Class Member whose treatment is in dispute: medical records from the HCV Clinic and/or Chronic Care Clinic, and medical records reflecting alleged refusals of treatment. Defendants agree to provide the preceding records at no cost, within 15 days of the request. Such medical records shall be subject to the terms of the protective order entered in this Lawsuit (Doc. 36), and shall be requested only for the sole purpose of Class Administration and may not be used for any other purpose outside the scope of this Lawsuit or Agreement.

If an issue remains unresolved after a good-faith conference, Plaintiffs' counsel and Defendants shall attempt to resolve the dispute with a mutually-agreeable mediator at a mutually-agreeable date and time. Any costs for the mediator will be paid equally by the Parties. The Parties agree to use best efforts to timely mediate with the magistrate judge for the Southern District of Texas, Corpus Christi Division.

If mediation does not resolve the dispute, the Parties may seek a resolution from this Court.

Nothing about this provision precludes any Settlement Class Member from seeking relief independently on his or her own in Court without the assistance of Class Counsel.

Nothing in this Agreement shall preclude the Parties from attempting to resolve potential problems without invoking the dispute resolution process.

7. **Preservation of Medical Judgment.** Notwithstanding anything to the contrary in this Agreement, no term or provision contained in this Agreement requires or is intended to require the use and prescription of any specific DAA medication or the use and prescription of a DAA medication for any inmate diagnosed with Chronic Hepatitis C to mandate the use of DAA medications for inmates when it is medically contraindicated. Instead, the use and prescription of DAA medications is within the Virology Medical Providers' reasonable medical judgment in conjunction with current Evidence-based Guidelines.

**NOTICE**

8. **Notification of DAA Medication Eligibility**: Starting sixty (60) days before a final approval hearing for this agreement is scheduled, the Plaintiffs will provide Notice drafted by Plaintiffs' counsel and agreed upon by Defendants' counsel to Settlement Class Members as to the availability of DAA medication under this Agreement. Plaintiffs' obligation to provide Notice to the Settlement Class Members will be satisfied by providing TDCJ with lists of the Settlement Class Members housed at each TDCJ unit so that TDCJ may print and deliver a copy of the agreed upon Notice using the procedures for delivering "Legal Mail" to inmates in TDCJ custody. TDCJ agrees to print and deliver the agreed-upon Notice

to each Settlement Class Members as if it were "Legal Mail," and provide logs demonstrating this delivery to Plaintiffs' counsel for their review. By their review of the logs provided by TDCJ, Plaintiffs' counsel will verify that Notice has been provided to all Settlement Class Members, and report that Notice has been accomplished to the Court.

9.  . The Notice shall include, among other things, contact information for Class Counsel and a statement that a Settlement Class Member or Eligible Inmate may contact Class Counsel, Edwards Law, regarding any dispute about the terms of this Agreement. The Defendants agree to:

   a. Post a copy of the Notice in each medical clinic accessible to inmates until January 1, 2028, or until the Agreement is terminated pursuant to the terms set out in paragraph 31.

   b. Post a copy of the Notice and this Agreement in each unit law library accessible to Settlement Class Members beginning on the date of preliminary approval by the court and continuing until January 1, 2028, or until the Agreement is terminated pursuant to the terms set out in paragraph 31.

   c. Provide a list of all Settlement Class members' current units of assignment, TDCJ identification number, and address of current unit of assignment (including street address, city, state, and zip code). This list shall be provided to Plaintiffs' counsel on the date of the execution of this agreement. The list shall be provided in an Excel spreadsheet, or other format agreed upon by the Parties.

**RELEASE**

10. **No Admission of Liability.** Defendants expressly reaffirm their position that their current policies, protocols, and procedures do not violate and have not violated the constitutional or statutory rights of the Plaintiffs and Class as a whole or any individual Class Members. Defendants maintain and continue to maintain that they have consistently acted in accordance with applicable law and continue to vigorously deny all allegations asserted by Plaintiffs and Class in the Lawsuit. Defendants believe this Agreement is part of a compromise and, therefore, involves activities and changes to policies and procedures that are not mandated by, and which go beyond, the requirements of any substantive and procedural components of the United States Constitution. Neither this Agreement, nor any of its terms or provisions, nor the Final Approval, shall be construed as an admission by Defendants of any liability or wrongdoing whatsoever (other than pursuant to 18 U.S.C. § 3626 to enforce, construe, or finalize the terms of this Agreement), nor is this Agreement or the Final Approval a finding of the validity of any claim asserted or relief sought in this Lawsuit or of any wrongdoing by Defendants. Neither this Agreement nor the Final Approval shall be used or construed as an admission, concession, or presumption or inference of any fault, liability, or wrongdoing by any person, business entity, or governmental entity, including Defendants. Neither this Agreement, the Final Approval, the fact of settlement and the settlement proceedings, the settlement negotiations, nor any related statement or document shall be offered or received in evidence as an admission, concession, or presumption or inference against Defendants in the Lawsuit or any other legal proceeding, except in any subsequent proceeding pursuant to 18 U.S.C. § 3626 to enforce this Agreement after the Court enters Final Approval, or in any

19

subsequent action by or against a Named Defendant, and each of them, to support a defense of *res judicata*, collateral estoppel, release, or other theory of claim preclusion, issue preclusion, or similar defense. In addition, nothing about this Agreement shall be offered or construed as an admission or evidence of the propriety or feasibility of certifying a class in the Lawsuit or any other legal proceeding for adversarial, rather than settlement purposes, other than as necessary for the purposes of certifying the Settlement Class or seeking Approval of this Agreement.

11. **Release.** Subject to Final Approval and except as expressly stated in this Agreement, Plaintiffs and the Settlement Class, for themselves and their spouses, heirs, executors, administrators, agents, representatives, successors, and assigns, unconditionally and forever release, acquit, and discharge Defendants, in their official capacities, and their past, present, and future agents, affiliates, attorneys, contractors, employees, insurers, managers, members, parents, predecessors, servants, subsidiaries, successors, and vendors of and from any and all actions, causes of action, claims, complaints, demands, liabilities, relief, and rights, whatsoever, whether now known or unknown, suspected or claimed, matured or unmatured, contingent or non-contingent, which Plaintiffs and the Settlement Class now have, or which may hereafter accrue, against the Released Parties for injunctive relief, based on, arising out of, or relating to any matter that was or could have been raised or asserted in the Lawsuit including, but not limited to the Defendants' past HCV Policy, or the HCV Policy referenced in this Agreement, except insofar as Defendants are not complying with the Agreement. This release specifically does not

apply to claims for damages – it is specifically agreed that no claims for money damages by any Plaintiffs or Class Members are being released by this Agreement.

12. **Plaintiffs' Authority to Settle.** Class Representatives and Class Counsel, who are signatories hereto, represent and warrant that they have the authority, on behalf of Plaintiffs, to execute, deliver, and perform this Agreement, and to consummate all transactions contemplated thereby. This Agreement has been duly and validly executed and delivered by Class Counsel and Plaintiffs and constitutes their legal, valid, and binding obligation.

13. **Defendants' Authority to Settle.** Defendants represent and warrant that they have the authority to execute, deliver, and perform this Agreement and to consummate the transactions contemplated thereby; except that, the Agreement, and all its terms, are expressly conditioned upon approval by the Attorney General of Texas, the Comptroller of Texas, and the Governor of Texas.

**PRELIMINARY APPROVAL**

14. **Approval of Settlement.**

   a. **Approval Motion.**  Promptly upon execution of this Settlement Agreement, Plaintiffs, acting as Class Representatives, through Class Counsel, shall file an Approval Motion. The Approval Motion shall request that the Court approve the Settlement and enter an Approval Order including provisions:

   i. Certifying the Settlement Class for the sole purpose of effectuating this Agreement;

21

    ii.   Appointing Matthew Roppolo, Da-Na Allen, Victor Valdez, and Johnny Cook as representatives of the Class;

    iii.   Appointing Edwards Law Group as Class Counsel;

    iv.   Granting preliminary approval to this Agreement by order substantially in the form attached as Exhibit 3 (the Approval Order), and finding this Agreement sufficiently fair, reasonable, and adequate to allow Notice to be disseminated to the Settlement Class;

    v.   Approving a Settlement Notice and Request for Exclusion/Opt-Out notice substantially in the form attached hereto as Exhibit 4 (the Notice and Exclusion/Opt-Out Notice);

    vi.   Setting a schedule for proceedings with respect to final approval of this Agreement; and,

    vii.   Providing that, pending entry of a Final Approval Order and Judgment, no Settlement Class Member (either directly, in a representative capacity, or in any other capacity) shall commence any action against the Released Parties asserting any claims released in this Agreement.

b. **Defendants' review and approval.** Defendants and Defendants' Counsel shall have an opportunity to review and confirm their lack of opposition to the Approval Motion and Approval Order before such motion and order are filed with the Court.

15. **Prison Litigation Reform Act.** This is a private settlement agreement in accordance with the Prison Litigation Reform Act, 18 U.S.C. § 3626(c).

16. **Entire Agreement**. This Agreement (including any and all exhibits) contains the entire agreement of the Parties with respect to its subject matter and supersedes any and all other prior written agreements and all negotiations leading up to the execution of this Agreement, whether oral or written, regarding the subject covered in this Agreement. The Parties acknowledge that no representations, inducements, promises, or statements related to this settlement or the subjects covered in this Agreement, oral or written, have been made by any of the Parties or by anyone acting on behalf of the Parties that are not embodied or incorporated by reference in this Agreement, and further agree that no other agreement, covenant, representation, inducement, promise, or statement relating to this settlement or the subjects covered in this Agreement not set forth in writing in this Agreement have been made by any Party. A commitment, obligation, or right not expressly stated in this Agreement shall not be created by implication. The Parties and their counsel mutually contributed to the preparation of this Agreement and, therefore, neither this Agreement nor any term or provision of this Agreement shall be construed against any Party on the grounds that one of the Parties or its counsel drafted it.

17. **Payment of Attorneys' Fees and Costs**.

Plaintiffs contend that they are the prevailing parties in the Lawsuit, at least in part, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12205. Defendants disagree with Plaintiffs' contention that Plaintiffs are prevailing parties with respect to any claim asserted or relief sought in the Lawsuit. However, this Agreement is part of a compromise, and to resolve the Parties' dispute, and for complete satisfaction and release of the claims asserted and relief sought in the Lawsuit (including any claim for attorneys' fees and costs under 42

23

U.S.C. § 1988 and 42 U.S.C. § 12205), Defendants agree to pay Plaintiffs' counsel as follows:

a. Attorneys' Fees to Date: For work performed to date, and through final approval of this class action settlement, the Parties agree that $750,000 are reasonable and necessary attorneys' fees, costs and expenses expended up to the date of the Court's approval of the Agreement. TDCJ agrees to pay Class Counsel's attorneys' fees and expenses in the amount of $750,000, and Defendants further agree to submit the paperwork required to obtain the necessary approvals from the Attorney General of Texas, the Comptroller of Texas, and the Governor of Texas no later than 30 days after the date that the Court approves the Agreement.

b. Future Attorneys' Fees: TDCJ further agrees to pay an additional lump sum of $200,000 to Class Counsel for attorneys' fees and expenses that will be incurred for ongoing, future Class Administration. The Parties agree that this amount is a reasonable estimate of future attorneys' fees that Class Counsel will likely incur while fulfilling the duties contemplated by this Agreement. Defendants further agree to submit the paperwork required to obtain the necessary approvals from the Attorney General of Texas, the Comptroller of Texas, and the Governor of Texas no later than 30 days after the date the Court approves the Agreement.

c. Defendants agree they shall not object or appeal any aspect of Plaintiffs' request for attorneys' fees or expenses as part of this Agreement, except insofar as the Court's order is inconsistent with the attorneys' fees or expenses agreed upon between the Parties as set forth in paragraphs 17.a and 17.b, *supra*.

d. Class Counsel understands and agrees by his signature below that this Agreement is subject to the State of Texas settlement approval process, which requires approval by the Attorney General of Texas, the Comptroller of Texas, and the Governor of Texas. Class Counsel further acknowledges that he has been informed and understands that no one has made any promises or guarantees as to how long the State of Texas settlement approval process will take or whether this Agreement ultimately will be approved by the Attorney General of Texas, the Comptroller of Texas, and the Governor of Texas. The Parties agree, however, that payment of attorneys' fees is a material term of this agreement, and if attorneys' fees are not paid, Defendants will be in breach and Plaintiffs may seek appropriate remedies.

e. If the terms and provisions of this Agreement are approved by the Attorney General of Texas, the Comptroller of Texas, and the Governor of Texas, then the verification and treasury warrant(s) issued shall be delivered to the Law Enforcement Defense Division of the Attorney General of Texas c/o Courtney Corbello, Assistant Attorney General, MC-012, PO Box 12548, Austin, TX 78711. Assistant Attorney General Corbello or her designee shall then promptly deliver the treasury warrant(s) to Class Counsel.

## 18. Reporting

a. **Quarterly Reports.** Defendants shall provide quarterly reports for Settlement Class Members listed in Exhibit 1 indicating: the names of all Settlement Class Members; each Settlement Class Member's current TDCJ number; each

Settlement Class Member's current TDCJ unit of assignment; each Settlement Class Member's most recent APRI scores and date of score; if applicable, most recent Metavir Fibrosis Score; DAA treatment start date; DAA treatment end date; DAA treatment response; next scheduled HCV evaluation; if the inmate refused care related to HCV after the date of this Agreement, all dates of the refusals; date of diagnosis; if treatment is determined to be medically contraindicated, the date and reason; if date of release will exclude the individual from treatment, the date of release; and if a Settlement Class Member has been released from custody without treatment, the date of release. This data shall be provided in an Excel spreadsheet, or other format agreed upon by the parties. The reports shall be provided to Plaintiffs' counsel no later than the 45th day after the end of each calendar quarter, e.g., by May 15th, for the calendar quarter including January, February, and March.  The first quarterly report containing information from September 3, 2020 through December 31, 2020 will be produced on the later of ten (10) business days following the entry of the Approval Order or March 15, 2021.

b. **Bi-annual Reports.** Defendants shall provide, every six months, a written report, explaining the following for the six month period at issue and the cumulative totals for the life of the agreement: a) the number of Eligible Inmates who started treatment with DAA medications; b) the number of Settlement Class Members who started treatment with DAA medications; c) the number of Eligible Inmates who completed treatment with DAA medications; d) the number of Settlement

Class Members who completed treatment with DAA medications; e) Settlement Class Members DAA treatment response; f) the number of Eligible Inmates diagnosed with HCV since the date of the last report (whether newly diagnosed while in TDCJ custody, or newly received). These bi-annual reports shall be in a Microsoft Excel spreadsheet and shall be provided to Plaintiffs' counsel twice a year on February 15th and August 15th.  The first bi-annual report will be due on August 15, 2021 and will contain information from September 3, 2020 through June 30, 2021.

c. If Defendants anticipate being unable to comply with any deadlines contemplated in this Agreement, Defendants agree to provide, in these bi-annual reports, an explanation for why they were unable to comply with the deadlines in this Agreement.

19. **Written Modification**. Except as provided in Federal Rule of Civil Procedure 60, this Agreement may be modified only by a written instrument signed by all the Parties. Additionally, during the process resulting in Final Approval, any modification of the terms or provisions of this Agreement voids this Agreement.

20. **Severability**. If any section, subsection, or portion of this Agreement is held to be invalid by a court of law after the Effective Date, the remaining portions of this Agreement shall continue to be in full force and effect.

21. **Advice of Counsel**. The Parties acknowledge that each has carefully read the entire Agreement, has been given the opportunity to consult with and be advised by their attorney, and knows and understands the contents of this Agreement.

27

22. **No Monetary Compensation**. The Parties acknowledge that, excluding the payment of attorneys' fees and costs to Plaintiffs' counsel pursuant to paragraph 17 of this Agreement, nothing in this Agreement creates, mandates, or constitutes any obligation on Defendants or the State of Texas to compensate, pay, or otherwise provide any monetary payment of any kind to any past, present, or future inmate in the TDCJ's custody. Moreover, nothing in this Agreement creates any basis for any purported or actual Plaintiff or Class Member to seek any financial recovery or monetary benefit of any kind from any Defendant or the State of Texas. This Agreement, however, does not bar any class member or individual inmate, or his/her heirs and beneficiaries, from filing a suit for damages to seek monetary compensation for injuries allegedly caused by delayed treatment or failure to treat the inmate's Hepatitis C.

23. **Waiver of Appeal.** Any Class Member who does not submit an objection to the Agreement within sixty (60) days of preliminary approval of the Agreement by the Court hereby unconditionally and forever waives any and all rights to appeal from the Final Approval and/or any final judgment, including, without limitation, all rights to any post-judgment proceeding and appellate proceeding such as a motion to vacate judgment, motion for new trial, and extraordinary writs; provided, however, that this waiver does not include a waiver of the right to oppose any appeals, appellate proceedings, or post-judgment proceedings, if any. Defendants agree they shall not appeal any aspect of the Court's order approving this Agreement, except insofar as the Court's order is inconsistent with the Agreement.

24. **Conditions of a Binding Agreement.** This Agreement is expressly conditioned upon approval by the Attorney General of Texas, the Comptroller of Texas, and the Governor of the State of Texas.

25. **Governing Law.** The substantive laws of the State of Texas shall govern the validity, construction, performance and enforcement of this Agreement, without regard to the principles thereof regarding conflicts of laws.

26. **Signatures.** In order to amicably settle the Lawsuit, we, Plaintiffs Matthew Roppolo, Victor Valdez, Da-Na Allen, and Johnny Cook, individually, and on behalf of all Class Members, have freely and voluntarily agreed upon a full and final settlement and compromise of our Lawsuit in accordance with the terms of this Agreement. We each individually understand that by each of our signatures below, we expressly agree to and understand all of the terms and provisions in this Agreement. We further acknowledge by our signatures below that: (a) our attorney has had sufficient time to investigate the relevant facts and legal issues in order to make an informed decision about the merits and weaknesses of the Parties' respective positions, claims and defenses; (b) we enter into this Agreement upon the legal advice of our attorney; (c) our attorney has explained to each of us, to our satisfaction, the terms, effect, and legal consequences of this Agreement; and (d) in deciding to sign, accept the terms of, and be bound by this Agreement, we are not relying upon any statement, representation or promise that is not expressly set out in this Agreement.

27. **Settlement Class Member Signatures.** The Parties agree that, because the Settlement Class Members are so numerous, it is impractical to have each Settlement Class Member

29

execute the Settlement Agreement. The Notice will advise all Settlement Class Members of the binding nature of the Releases and of the remainder of the Settlement Agreement, and in the absence of a valid Request for Exclusion, such Notice shall have the same force and effect as if each Settlement Class Member executed this Settlement Agreement.

28. **Captions and Headings**. The captions and headings of this Agreement are for convenience of reference only and in no way define, limit, or describe the scope or intent of this Agreement.

29. **Continuing Jurisdiction and Enforcement.** The Parties agree to jointly submit this Agreement to the Court, accompanied by an unopposed request from Plaintiffs that the Court (1) provide for appropriate notice to the class, submissions of objections, and hearing, pursuant to Federal Rule of Civil Procedure 23(e); (2) following a hearing, approve this Agreement, if the Court deems it fair and adequate; and (3) retain continuing jurisdiction to enforce the terms of this Agreement. The Parties agree that for the purposes of settlement only, the measures provided by this Agreement are narrowly drawn, extend no further than necessary to correct the alleged violations of the federal rights of the Plaintiffs and the Settlement Class Members, and are the least intrusive means necessary to correct these alleged violations of the Plaintiffs and the Settlement Class Members' federal rights. The Parties further agree that the measures provided by this Agreement will not cause any adverse impact on public safety or operation of the criminal justice system. *See* 18 U.S.C. § 3626(a)(1). The Parties agree that the scope of all the remedies included in this Agreement are proportional to cure the alleged violations. It is the express intent of the Parties for this provision to comply in all respects with 18

30

U.S.C. § 3626(a) for purposes of enforcing this Agreement in the U.S. District Court for the Southern District of Texas, Corpus Christi Division, the Hon. Nelva Gonzales Ramos presiding. The Parties represent, and will ask the Court to find, that this Agreement complies in all respects with 18 U.S.C. § 3626(a). The Parties agree that the provisions of this section, and of this Agreement, do not constitute, and shall not be construed to constitute, any admission or acknowledgement by Defendants that any federal rights of Class Members have been violated, or respecting any alleged liability, fault, omission, or wrongdoing of any kind, without prejudice or limitation, however, to the ability of Class Counsel to enforce the terms of this Agreement pursuant to 18 U.S.C. § 3626(a).

30. **Cessation of Jurisdiction and Dismissal**. The Parties agree this Court's jurisdiction shall end once the requirements in this Agreement to treat Settlement Class Members or Eligible Inmates with DAA medications are suspended subject to the terms of this Agreement. Specifically, this Court's jurisdiction to enforce the terms of this Agreement shall terminate on the earlier of the date on which the entire pool of Settlement Class Members listed in Exhibit 1 has: 1) completed treatment with DAA medications, unless medically contraindicated or Defendants have no obligation to treat an inmate pursuant to paragraph 5, *supra*; 2) opted out of this Agreement; 3) refused what a reasonable medical provider would agree is a necessary predicate for DAA treatment, or refused DAA treatment with DAA medications under the terms of this Agreement; or 4) been released from or is no longer in TDCJ custody, regardless of the circumstance. The Parties further agree that a stipulated dismissal of all claims will be jointly filed in *Matthew Roppolo, et al. v. Dr. Lannette Linthicum, et al*., Civil Action No. 2:19-CV-00262, pending in the United

31

States District Court for the Southern District of Texas, Corpus Christi Division, within 30 days after the date on which this court's jurisdiction to enforce the terms of this Agreement ends.

31. **Construction and Interpretation**. This Agreement is entered into only for purposes of settlement. In the event the Final Approval Order is not entered or is subsequently reversed by an appeal, the Parties agree to use their best efforts to cure any defect(s) identified by the Court(s).

32. **Agreement Execution.** This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute the same instrument. Signed signature pages may be transmitted via facsimile or electronic mail, and any such signature shall have the same legal effect as an original.

33. **No Third Party Beneficiaries**.  This Agreement is for the sole benefit of the Parties and nothing herein, express or implied, shall confer any right or benefit, legal or equitable, or remedy of any nature, upon any person other than the Parties.

34. **Impossibility Clause**. No Party shall be liable for failing to comply with the terms of this Agreement if it would be impossible to do so.

IN WITNESS WHEREOF, the Parties executed this Agreement as of the Effective Date.

[SIGNATURES ON FOLLOWING PAGES.]

**AGREED:**

_____          _____
Matthew Roppolo, individually and on behalf            Date
of all class members
Plaintiff


_____          _____
Victor Valdez, individually and on behalf            Date
of all class members
Plaintiff


_____          _____
Johnny Cook, individually and on behalf            Date
of all class members
Plaintiff

_____          2-26-2021
Da-Na Allen, individually and on behalf            Date
of all class members
Plaintiff

_____          2-26-2021
Jeff Edwards                                                    Date
Attorney for Plaintiffs

_Courtney Corbello_                          Feb. 26, 2021
Courtney Corbello                                         Date
Attorney for Defendants

_____          2/26/21
Carolee A. King                                             Date
Senior Vice President & General Counsel
The University of Texas Medical Branch at Galveston

_____          2/26/21
Daniel H. Sharphorn                                     Date
General Counsel and Vice Chancellor
The University of Texas System

_____          2-26-2021
Kristen Worman                                           Date
General Counsel
Texas Department of Criminal Justice

33

**AGREED:**

_____                    _____
**Matthew Roppolo,** individually and on behalf                    Date
of all class members
Plaintiff


_____                    _____
**Victor Valdez,** individually and on behalf                    Date
of all class members
Plaintiff

*[signature]*                                          2/26/21
_____                    _____
**Johnny Cook,** individually and on behalf                    Date
of all class members
Plaintiff


_____                    _____
**Da-Na Allen,** individually and on behalf                    Date
of all class members
Plaintiff


_____                    _____
**Jeff Edwards**                                          Date
Attorney for Plaintiffs


_____                    _____
**Courtney Corbello**                                          Date
Attorney for Defendants


_____                    _____
**Carolee A. King**                                          Date
Senior Vice President & General Counsel
The University of Texas Medical Branch at Galveston


_____                    _____
**Daniel H. Sharphorn**                                          Date
General Counsel and Vice Chancellor
The University of Texas System


_____                    _____
**Kristen Worman**                                          Date
General Counsel
Texas Department of Criminal Justice

33

**037**

**AGREED:**

_____
**Matthew Roppolo**, individually and on behalf
of all class members
Plaintiff

_____
Date

_____
**Victor Valdez**, individually and on behalf
of all class members
Plaintiff

**2-26-21**
_____
Date

_____
**Johnny Cook**, individually and on behalf
of all class members
Plaintiff

_____
Date

_____
**Da-Na Allen**, individually and on behalf
of all class members
Plaintiff

_____
Date

_____
**Jeff Edwards**
Attorney for Plaintiffs

_____
Date

_____
**Courtney Corbello**
Attorney for Defendants

_____
Date

_____
**Carolee A. King**
Senior Vice President & General Counsel
The University of Texas Medical Branch at Galveston

_____
Date

_____
**Daniel H. Sharphorn**
General Counsel and Vice Chancellor
The University of Texas System

_____
Date

_____
**Kristen Worman**
General Counsel
Texas Department of Criminal Justice

_____
Date