## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **MATTHEW ROPPOLO**, *et. al.*, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | |
| | § | |
| **LANNETTE LINTHICUM**, *et. al.*, | § | **2:19-CV-00262** |
| | § | |
| **Defendants.** | § | |

## STATUS REPORT REGARDING CHARLES EMMONS

Plaintiffs respectfully file this status report pursuant to the Court's April 19, 2022 order. *See* Doc. 560, at 2. In summary, Mr. Emmons is receiving DAA treatment and Plaintiffs do not intend to move for contempt as his treatment is timely due to the date of his elevated APRI score. As to retaliation, Mr. Emmons' immediate concerns have been resolved by his transfer to a different prison, so no motion is necessary to seek that relief, but Plaintiffs are investigating his new allegations that retaliation escalated during the interim before his transfer.

## I.     MR. EMMONS' IMMEDIATE COMPLAINTS HAVE BEEN RESOLVED

The Court ordered Plaintiffs to provide an update on the dispute as to Mr. Charles Emmons' complaints. Mr. Emmons raised two species of complaints: one related to timely treatment, while the other related to alleged retaliation. Mr. Emmons has received what he originally asked for on both counts, although investigation is ongoing as he alleges the retaliation escalated.

As to treatment, before the Court's order, Plaintiffs' counsel invoked the settlement's dispute resolution process as to Charles Emmons' complaints about access to treatment and spoke with Mr. Emmons. Defendants provided excerpts from Mr. Emmons' medical records pursuant to the settlement agreement on March 11, 2022. Counsel for the parties conferred about Charles

Emmons' complaints by telephone on March 23, 2022. Defendants then provided updated records on March 25, 2022 reflecting that Mr. Emmons was referred to begin treatment with Direct-Acting Antiviral medications on March 15, 2022. Mr. Emmons' prescription was entered on March 18, 2022, and, after speaking to Mr. Emmons, counsel's understanding is that his treatment is underway.[1]

As to retaliation, Mr. Emmons originally requested that this Court order his transfer to a different prison because he was being moved to different cells within the same prison several times, including in the middle of the night. Doc. 525; Doc. 539. After discussing these movements with Mr. Emmons on several occasions, counsel's understanding is that different TDCJ officials suggested to him that his inconvenient changes in housing assignment were related to his January letters to the Court. *See* Doc. 463. Mr. Emmons generally asserted that he was not safe in one of his filings, Doc. 525, but Plaintiffs' counsel believed that complaint could not be substantiated until May 6, 2022, a Friday. At that time, Plaintiffs' counsel spoke to Mr. Emmons again and he explained details of more recent threats against him which he believed might be related to the settlement, so he asked that the issue be raised with Defendants and the Court if necessary to expedite his transfer.[2] Later that day, Plaintiffs' counsel conferred with counsel for Defendants, who agreed to investigate on an expedited basis and to ensure that nothing about the settlement would slow Mr. Emmons' transfer. On Monday, May 9, 2022, counsel for Defendants confirmed that TDCJ would move Mr. Emmons to a new unit shortly, although explained that TDCJ considers

---

[1] Plaintiffs can file the medical records under seal if the Court prefers to review them firsthand.

[2] To avoid potentially aggravating any prison security concerns, Plaintiffs are omitting the details of Mr. Emmons' allegations as well as of TDCJ's response. The former details were provided to counsel for Defendants, with Mr. Emmons' consent, on May 6, 2022, and the latter were included in defense counsel's reply on May 9, 2022. Plaintiffs can submit greater detail under seal if the Court prefers to be apprised of the specifics.

the threat to Mr. Emmons' safety to be unrelated to this lawsuit. Mr. Emmons was transferred on or about May 10, 2022 and wrote this Court on May 16, 2022 confirming that he had arrived at the new unit. *See* Doc. 609. Plaintiffs' counsel expect to hear back with more detail from Defendants on his new allegations by June 5, 2022. As of counsel's most recent conversation with Mr. Emmons today, Plaintiffs' counsel's understanding is that there is not an ongoing risk of further alleged retaliation at the new prison.

## II.   PLAINTIFFS' COUNSEL DO NOT INTEND TO MOVE FOR CONTEMPT AT THIS TIME.

The Court has also inquired whether Plaintiffs' counsel intend to move for contempt based upon their inquiry in this matter. Plaintiffs' counsel do not intend to do so at this time.

As to treatment, Mr. Emmons' treatment appears to have been timely. Mr. Emmons' APRI first exceeded 1.0 on September 16, 2021, and this immediately elevated his "Fibrosis Score" to F-3 within the meaning of the settlement agreement. Doc. 132-2, p. 9 ("Initially, the Fibrosis Score shall be determined by the inmate's APRI test score, with the following designations: … APRI score of more than 1 – 1.999, F-3…."). The deadlines for class members to begin treatment are based upon their Fibrosis Score as of September 3, 2020, so Mr. Emmons retained the "F-2" treatment deadline of October 1, 2023 under that provision. *See* Doc. 132-2 at 10–11. However, Mr. Emmons' elevated Fibrosis score on September 16, 2021 triggered an earlier, September 1, 2022 deadline under a different part of the settlement agreement: the deadlines for Eligible Inmates. Doc. 132-2 at 13 ("Metavir Fibrosis score of F-3 … will be started on DAA medications no later than September 1, 2022, or 9 months after the date of diagnosis, whichever comes later."). As Mr. Emmons began treatment prior to September 1, 2022, Plaintiffs' counsel do not intend to request a mediation with Defendants or to move for contempt at this time.

As to retaliation, Mr. Emmons' immediate request for relief was effectively granted, whether the underlying threats were related to the settlement or not, by his transfer to a new prison away from the people who allegedly engaged in retaliation. Plaintiffs' counsel will evaluate the Defendants' written response to Mr. Emmons' allegations of escalating retaliation, confer with Mr. Emmons further, and then determine whether pursuing mediation or relief from the Court is in the interests of the class or Mr. Emmons' rights under the settlement.

## III.    CONCLUSION

Defendants began providing Mr. Emmons DAA treatment after the parties engaged in the settlement's informal dispute resolution procedures. Defendants also transferred Mr. Emmons to a different prison after his concerns about retaliation escalated. As his treatment began before the applicable deadline and Mr. Emmons received the prison transfer he requested, Plaintiffs do not intend to pursue a contempt claim on his behalf at this time.

Dated: May 20, 2022.

Respectfully submitted,

By: /s/ Jeff Edwards .
JEFF EDWARDS
State Bar No. 24014406
MICHAEL SINGLEY
State Bar No. 00794642
DAVID JAMES
State Bar No. 24092572
**EDWARDS LAW**
603 W 17th St.
Austin, TX 78701
Tel.  512-623-7727
Fax.  512-623-7729
jeff@edwards-law.com
mike@edwards-law.com
david@edwards-law.com

**ATTORNEYS FOR PLAINTIFFS**

CERTIFICATE OF SERVICE

By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Southern District of Texas.

By      /s/ Jeff Edwards
JEFF EDWARDS