UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **MATTHEW ROPPOLO,** *et. al.*, | § § § | |
| **Plaintiffs,** | § § | **CIVIL ACTION NO.** |
| v. | § § § | |
| **LANNETTE LINTHICUM,** *et. al.*, | § § | **2:19-CV-00262** |
| **Defendants.** | § § | |

### PLAINTIFFS' SECOND STATUS REPORT REGARDING GARY LEE MOUNT

Plaintiffs respectfully file this status report pursuant to the Court's October 3, 2022 order and request a remote hearing for the Court to address an underlying dispute regarding interpretation of the settlement agreement. *See* Doc. 681.

Class counsel has investigated Mr. Mount's renewed complaints of retaliation. In light of Defendants' differing interpretation of the settlement, the parties are at an impasse because additional documents are needed to either refute or substantiate Mr. Mount's allegations. Defendants contend that the settlement does not require them to supply such documents, whereas Plaintiffs contend that it does. The parties agree that mediation would be futile in resolving this underlying dispute about contract interpretation.[1]

Accordingly, Plaintiffs respectfully request a hearing on the issue of the parties' duties under the settlement agreement's dispute resolution process, specifically including the scope of Defendants' duty to provide relevant records supporting their response to allegations of violations of the settlement agreement. *See* Doc. 132-2, pp. 15–16.

---

[1] The parties conferred verbally. *See also* Ex. 1, Email from Defendants' Counsel, p. 1.

**I.     FACTUAL BACKGROUND**

Mr. Mount's pending motion is his second set of allegations of retaliation.

During the first round, Mr. Mount alleged—among other issues—that security officials, rather than medical officials, retaliated against him by placing him in solitary confinement in January 2022. *See* Doc. 464, pp. 2–3. In counsel's experience, relocating Mr. Mount to solitary confinement would be reflected in the unit classification department's rudimentary computer system.[2] Historically, TDCJ policy has required considerable documentation of the reasons for an inmate's placement in solitary confinement (which the agency describes as "administrative segregation").[3] Moreover, relocating an inmate within a prison is the responsibility of officials working at that prison rather than statewide officials.[4]

On January 20, 2022, class counsel requested production of documents about Gary Lee Mount from Defendants pursuant to the settlement's informal dispute resolution process. The settlement in this case provides that the parties should informally attempt to resolve disputes through conference. During that process, Defendants are expected to produce certain medical records as well as a response supported by "factual basis" and "relevant records." *See* Doc. 132-2, pp. 15–16.

Defendants ignored Mr. Mount's allegations about his housing assignment in their response and in their response to Plaintiffs' inquiries during the first round. *See* Doc. 466. Thus,

---

[2] TDCJ security functions are organized on an antiquated "Mainframe" operating system. An example of an inmate's housing history page from Mainframe is attached as Exhibit 2.

[3] *See* Ex. 3, TDCJ Administrative Segregation Plan, pp. 12–17. Counsel does not know if this plan, which the agency disclosed in 2013, is still in effect.

[4] Ex. 4, TDCJ AD-04.17 – Offender Housing Assignment Criteria and Procedures, p. 3. This policy was disclosed in 2014; counsel does not know if this policy is still in effect. The policy appeared to have the same title and some of the same text in 2020 based on a different TDCJ publication. *See* TDCJ Safe Prisons/Prison Rape Elimination Act (PREA) Program Calendar Year 2019, p. 9 *available at* https://www.tdcj.texas.gov/documents/PREA_SPP_Report_2019.pdf.

Plaintiffs do not know what TDCJ's paperwork says about Mr. Mount's alleged solitary confinement in January.

Mr. Mount filed an objection disputing Defendants' allegation that he refused medical treatment on November 29, 2021. Doc. 492, p. 2. Class counsel understands this allegation to be that Mr. Mount denies refusing treatment, but instead asserting that a security official would not let him in to the infirmary—so they must have written the refusal form without consulting him.

In the ensuing dispute, Mr. Mount ultimately told class counsel he did not wish to cooperate further, and class counsel alerted the Court that they would take no further action without his cooperation. *See* Doc. 542. Thereafter, the Court denied Mr. Mount's initial motions. Doc. 564.

On September 9, 2022, Mr. Mount filed a new motion alleging that Defendants had *again* "locked [him] up in 12-Building [solitary confinement] again for asking them to do the blood work." Doc. 675, p. 1. Mr. Mount also indicated a renewed willingness to work with class counsel.

Later that day, class counsel inquired with Defendants pursuant to the settlement agreement about Mr. Mount's allegations.

On September 22, 2022, Defendants responded by providing a lab test from blood drawn on September 15, 2022 reflecting that Mr. Mount had an APRI below 0.5, and by providing an affidavit with two pages from Mr. Mount's Unit Classification Committee records.[5] Those records only address his more initial classification and his September trip to solitary confinement; the handwritten page claims the latter move was merely due to a lack of room in suitable housing areas. Notably, these records omit Mr. Mount's actual housing assignment history page, despite purporting to reflect unit classification records from the past seven years.[6] Moreover, while

---

[5] *See* Ex. 5, UCC Records.
[6] *Compare* Ex. 5, UCC Records *with* Ex. 2, Example of Housing History Page.

Defendants have never disputed that Mr. Mount was also housed in solitary confinement in January, the records they produced are silent about his housing assignment during that period.

Because the records did not contradict Mr. Mount's newest allegation—which is specifically that TDCJ has twice used the pretense of lack of space to punish Mr. Mount for continuing to complain about delays and question his blood test results—class counsel pressed for other "relevant records" pertaining to Defendants' insistence that Mr. Mount's allegations were false.[7] *See* Doc. 132-2, p. 16. Class counsel suggested that TDCJ provide the aforementioned housing history report as well as procedures for inmate housing (such as policies governing when to relocate an inmate to solitary confinement due to lack of space).[8] If in fact Defendants' asserted reason for housing Mr. Mount in solitary confinement was accurate, then these records would presumably support their position.

Class counsel also requested specific documents such as surveillance video concerning Defendants' dispute with Mr. Mount about his previous allegation that he was refused entry into the infirmary to have his blood drawn on November 29, 2021, and that the ensuing refusal form was false as he never refused treatment.[9]

Defendants refused to supply any other documents, instead accusing class counsel of engaging in a "fishing expedition" and claiming that their apparently selective production of two pages "already exceeded their burden" because, they claim, the settlement only requires Defendants to "produce certain *medical* records." Ex. 1, Email from Defendants' Counsel, p. 1.

---

[7] Ex. 1, Email from Defendants' Counsel, pp. 2–3.
[8] Ex. 1, Email from Defendants' Counsel, p. 3.
[9] Ex. 1, Email from Defendants' Counsel, p. 2.

## II. PLAINTIFFS CANNOT FURTHER INVESTIGATE MR. MOUNT'S CLAIMS WITHOUT COURT INTERVENTION.

Class counsel's access to information about TDCJ housing practices and security activities is extremely limited, so class counsel is reliant on Defendants to supply relevant records to proceed. But Defendants insist that they are not required to provide more documents "unless ordered to do so by the Court."[10] Counsel also conferred by phone and confirmed that Defendants agree that mediation on this issue would be futile. Thus, a hearing with the Court to resolve the issue of contract interpretation is merited for four reasons.

First, due to the nature of Mr. Mount's allegations, the tools available to class counsel do not permit further productive investigation without resolving the parties' dispute about the Defendants' obligations to cooperate during informal dispute resolution. A dispute about Mr. Mount's assignment to solitary confinement certainly cannot be resolved merely by reference to "certain *medical* records," as housing is a security function, not a medical function. Similarly, Mr. Mount's allegation that security personnel engendered a false refusal form cannot be resolved by medical records. Thus, if Defendants' interpretation of the settlement agreement is correct, then class counsel and class members have no recourse but to seek Court involvement for every issue that is not resolved by medical records.

Second, class counsel's position is supported by the text of the agreement, which specifically requires Defendants to respond to informal inquiries with "the factual basis for Defendants' response to the claim and relevant records in support of Defendants' response." Doc. 132-2, p. 16. Opposing counsel plainly disagrees with class counsel about the significance of this requirement. Rather than providing relevant records to support Defendants' assertion that Mr.

---

[10] Ex. 1, Email from Defendants' Counsel, p. 1.

5

Mount actually refused treatment or that the lack of space was not a pretextual reason to move Mr. Mount into solitary confinement twice in one year, opposing counsel only provided records corroborating Mr. Mount's most recent allegation and insisted that even this cursory production was more than the settlement required.[11]

Third, there is substantial reason to proceed with investigating Mr. Mount's allegations. As class counsel explained to opposing counsel, Defendants' purported reason for relocating Mr. Mount to solitary confinement twice in one year is suspicious on its face because Mr. Mount is assigned to the McConnell Unit. That prison has a maximum capacity of 2,900 male inmates.[12] In 2019, only 504 beds out of the prison's total 2,900 were in solitary confinement cells.[13] Presumably, a significant fraction of the remaining 2,396 beds are suitable for G3 inmates, which begs the question why, out of hundreds or perhaps thousands of other similarly situated inmates, Mr. Mount was twice selected for solitary confinement in the span of just eight months. Further, Mr. Mount has now twice had his blood tests delayed under suspicious circumstances. Last year, he was allegedly refused access to the infirmary by a security official, and then Defendants reported to class counsel and the Court that Mr. Mount himself had refused. In the most recent occasion, he did not receive his requested blood test until after class counsel wrote to Defendants.[14] Those same medical records reflect that his earlier scheduled blood draws "were deleted" without

---

[11] Ex. 1, Email from Defendants' Counsel, p. 1.
[12] Ex. 7, TDCJ Unit Directory – McConnell Unit, *available at* https://www.tdcj.texas.gov/unit_directory/ml.html.
[13] Ex. 8, Prison Rape Elimination Act (PREA) Audit Report – McConnell Unit (Nov. 15, 2019), p. 5 *available at* https://www.tdcj.texas.gov/documents/prea_report/McConnell_Unit_2019-10-04.pdf
[14] *Compare* Ex. 1, Email from Defendants' Counsel, p. 4 (Sep. 9, 2022) *with* Ex. __, Pearl Patient Chart Export, p. 2 ("Drawn: September 15, 2022").

explanation.[15] This confluence of unusual impediments to Mr. Mount's treatment and incarceration merits an actual response from Defendants, rather than their unsupported denial.

Finally, this issue of contract interpretation is a potentially recurring problem beyond the scope of Mr. Mount's specific circumstances. Every allegation relating to information outside the medical record risks a similar impasse if class counsel is unable to refute or substantiate the allegation with information available to the public or to inmates. As this Court has previously held, prison officials violate the settlement if they interfere with treatment under the settlement—including requests for tests and consultations, not merely the actual DAA treatment. Doc. 459, p. 2. The settlement impliedly and expressly requires testing, information from medical providers, and unencumbered access to both the Court and class counsel—all requirements that TDCJ security officials can impede without generating a medical record. Indeed, if Defendants could hypothetically punish vocal inmates to deter them from complaining, whilst simultaneously refusing to provide any contemporaneous records about those activities, then class counsel would not be able to refute or substantiate alleged violations of the right to treatment that followed a pattern like that alleged by Mr. Mount. The medical record is unsurprisingly silent about all of the types of alleged interference Mr. Mount complains of. Thus, without the ability to investigate conduct by security officials, class counsel will be severely hampered in their ability to enforce the settlement for inmates like Mr. Mount.

Accordingly, the parties have a bona fide dispute about interpretation of the settlement agreement which is a predicate to resolving Mr. Mount's claims. In light of Defendants' position that a Court order is required, and that mediation would not change their position, Plaintiffs respectfully request a remote hearing on the narrow question of the Court's interpretation of

---

[15] Ex. 6, Pearl Patient Chart Export, p. 8.

Defendants' obligation to produce relevant records in the dispute resolution process in this and similar circumstances. Doc. 132-2, pp. 15–16.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs request a remote hearing so that the Court may decide the issue of whether and to what degree the settlement agreement requires that Defendants supply relevant records to support their contentions during the dispute resolution process.

Dated: November 1, 2022.

Respectfully submitted,

By: /s/ Jeff Edwards            .
JEFF EDWARDS
State Bar No. 24014406
DAVID JAMES
State Bar No. 24092572
**EDWARDS LAW**
603 W 17th St.
Austin, TX 78701
Tel.  512-623-7727
Fax.  512-623-7729
jeff@edwards-law.com
david@edwards-law.com

**ATTORNEYS FOR PLAINTIFFS**

CERTIFICATE OF SERVICE

By my signature below, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Southern District of Texas.

By     /s/ Jeff Edwards              
JEFF EDWARDS

## CERTIFICATE OF CONFERENCE

By my signature below, I certify that I conferred with counsel for Defendants and they agreed the issue of contract interpretation discussed above is ripe for the Court's resolution (rather than first proceeding to mediation before asking for the Court's involvement).

By  /s/ Jeff Edwards
JEFF EDWARDS